FILED
OCT 31 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
Dr. James T. Walker,              )
136 West Quail Ln.                )
La Plata, Maryland 20646          )
301.654.6376                      )
                                  )
    PLAINTIFF                     )
                                  )   CASE NUMBER  1:05CV02118
                                  )
        v.                        )   JUDGE: Ellen Segal Huvelle
                                  )
                                  )   DECK TYPE: Employment Discrimination
                                  )
                                  )   DATE STAMP: 10/31/2005
Stephen L. Johnson, Administrator )
US Environmental Protection Agency)
1200 Pennsylvania Avenue          )
Washington, DC 20460              )
                                  ) A DEMAND FOR JURY TRIAL
                                  )
    DEFENDANT                     )
                                  )
```

## Complainant
(Employment Discrimination)

### I. Nature of Action

1.   Plaintiff, Dr. James T. Walker, ("Dr. Walker") a Black African-American male employee of the United States Environmental Protection Agency ("the Agency"), on his behalf brings this action to address a continuous pattern of discrimination on the accounts of race, sex, and retaliation, in violation of the Civil Rights Act of 1964, as amended, Equal Employment Opportunity Act

of 1992, 42 U.S.C. §2000e-16, and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. Dr. Walker alleges that, since the beginning of his employment at EPA, he has experienced a continuous pattern of employment discrimination by the Defendant ("EPA Administrator") and his personnel policies, procedures, and practices in the following areas: promotion and retaliation for engaging in EEO activity.

3. Dr. Walker is a citizen of the United States and a resident of the State of Maryland. He is currently and, at all times relevant to the allegations in this Complaint, was employed by the Agency as a Senior Environmental Scientist in the Office of Research and Development ("ORD").

4. The Defendant, Stephen L. Johnson, is a citizen of the United States and is the Administrator for the Agency, which is an independent Agency within the Executive Branch of the Federal Government and has more than 500 employees. As the Administrator, he is responsible for the personnel actions, omissions and practices within EPA.

## II. Jurisdiction

5. This Court has subject matter jurisdiction over Dr. Walker's claims in this case pursuant to Title VII of the Civil Rights Act of 1964, as amended, under 42 U.S.C. §2000e -16(c).

2

Venue is proper in the District of Columbia, as the action arose here. Dr. Walker works for the Agency in this judicial district, and Dr. Walker's personnel records regarding his Agency work are maintained here. Furthermore, Dr. Walker exhausted all of his administrative remedies with regards to his claims, and is hereby filing this Complaint in this Court for monetary and injunctive relief.

### III.    Exhaustion of Administrative Remedies

6.    It was as earlier as 1998 when Dr. Walker first realized that his office maintained a discriminatory system against him for his involvement in protected EEO activity. As a result, Dr. Walker filed many individual complaints and a class complaint against the Agency, alleging discrimination based on race, sex, and retaliation.

7.    All of these complaints were processed pursuant to Equal Employment Opportunity Commission ("EEOC") regulations, but were delayed for close to seven years by EEOC and the Agency, until a final decision was made this year in July, 2005, which favored the Defendant.

8.    It was on June 15, 2005, when Dr. Walker filed his most recent complaint based on race, sex, and retaliation (EPA# 2005-0065-HQ), resulting in an unfavorable July 29, 2005 decision and right to sue letter from the Agency (Attachment #1). Dr. Walker

is now filing these claims in this Court.

## IV. Statement of Claims

### a. Count I: There was a Continuous Pattern of Retaliation Against Dr. Walker for Participating in EEO Activity.

9. On or about August 27, 1998, Ms. Reed ("Reed"), a summer intern from the University of Maryland ("U of M"), while working for Dr. Walker, who, in his **"official"** capacity as a Senior Environmental Scientist with the Agency was Reed's supervisor and project leader, asked Dr. Walker to include her and her advisor's name, Dr. Whitehead, and their publications in a research proposal that was submitted by Dr. Fatimah Jackson, another researcher from the university. Reed also asked Dr. Walker to include her name on the proposal as a principle investigator and a recipient of funds. Dr. Walker refused and told her that it was against federal law for her to make such a request to a government official and, because she had done nothing to finish her project, she had to leave the Agency. Reed responded loudly by saying that he had "raped" her and that she was not going to leave. Dr. Walker left her cubicle and returned to his office and called his supervisor, Dr. Sonawane, about the incident. He later found out that Reed had told his managers that during the

discussion "....*Dr. Walker had turned towards her in a threatening manner.*" Dr. Walker, because he was a **"Black African-American Male,"** was immediately questioned by a panel of White managers, put on "forced" administrative leave or suspension, and a "Violence in the Workplace" file was created on him, which still remains a part of his records at the Agency. This was done despite the fact that Reed told these managers that Dr. Walker did not verbally threaten or physically touch her and there was no evidence or facts to support Reed's allegation. Reed was not put on administrative leave or suspended, and was not questioned by a panel of White managers. In addition, no "Violence in the Workplace" file was created on her. Furthermore, NCEA managers did not contact anyone at the University of Maryland about Reed and did nothing to address Dr. Walker's concerns that she violated federal law, made false allegations about him, and defamed his name by spurting out among his coworkers that **"he raped her."** Furthermore, there have been a number of verbal disagreements between similarly situated white male and female scientists within Dr. Walker's office, which were brought to the attention of NCEA managers, but were ignored. In one instance, for example, a white scientist, Dr. Jim Holder, during a **heated and loud altercation**, got in the face of a white branch chief, Mr. Joe De Santis, to intimidate him over a contract related issue. Dr. Holder was close enough to the manager to push him

5

backward with his "large" stomach, as they were arguing. This altercation was loud enough to be heard through out the office. Although this was a clear example of "violence in the workspace," nothing was done to either Dr. Holder or the manager, no "Violence in the Workplace" file was created on either person, and both were not "forced" to take administrative leave. In addition to being questioned by a panel of White managers, put on "forced" administrative leave or suspension, and creating a "Violence in the Workplace" file, NCEA managers, and took away his supervisory responsibilities under the program. Furthermore, the program was eliminated. Because of the differences in how NCEA managers treated Dr. Walker compared to Reed and similarly situated white scientists in NCEA, Dr. Walker contacted an EEO counselor and filed a discrimination complaint on the basis of race and sex. As evidenced below, since this complaint was filed, NCEA managers have continuously retaliated against Dr. Walker.

10. Within days after contacting the EEO counselor regarding the complaint addressed in paragraph 8 above, Dr. Walker, in his official capacity as an Agency employee, followed up on the matter regarding Reed's request to be included in Dr. Jackson's research proposal He sent a letter of inquiry ("L of I") to the "U of M", under an EPA letterhead, requesting information about Reed and her scientific and research credentials. The primary

6

purpose of the letter was to determine if there was sufficient evidence to cause him to contact EPA's Office of the Inspector General. This letter was sent, pursuant to normal Agency procedures and rules and based on the advice of Richard Drummond, an attorney from EPA's Office of General Counsel. On December 3, 1998, Dr. Walker received a Letter of Reprimand (" L of R") from Michael Callahan, Director, National Center for Environmental Assessment-Washington Office ("NCEA-Wash") for sending that letter. Callahan reprimanded Dr. Walker for allegedly refusing to comply with instructions, for misrepresenting his status as an official representative of the Agency conducting official business, and for misuse of Agency letterhead for unauthorized business. Because there was no evidence to support any of these charges, Dr. Walker alleges that Mr. Callahan issued the "L of R" and put it into his personnel file to retaliate against him for filing previous complaints against him and his managers.

11. The reprisal continued after the letter of reprimand was issued. On or about June, 2000 Dr. Walker approached his then first line supervisor, Charles Ris, and asked him why the letter of reprimand was still in his files, since the issuing managers told him that it could be taken out before the recommended two year period ended. Ris made the following statement: " **I do not know. You are still filing all of those EEO complaints,**" implying that the reprimand remained in Dr. Walker's files because of his

EEO activity. As a follow-up, on September 15, 2000, Dr. Walker asked Mike Callahan, his ex-supervisor, to remove the letter of reprimand from his files. Callahan's answer implied that the letter would remain in his files until December, 2000, because of the previous complaints that he filed against him and other NCEA managers. This is clearly reprisal and a violation of the Civil Right Act.

12. On or about December, 21, 2000, Dr. Walker filed a class complaint against the Defendant alleging discrimination based on race, sex, and retaliation, which included similar issues that were alleged in the complaints outlined in the above.

13. As the class complaint was being processed administratively through EEOC, on or about August 20, 2001, Dr. Walker learned that his second line supervisor, Mr. Charles Ris told Mr. Starr, who was an attorney from the Agency's Office of General Counsel, the December 3, 1998 "L of R" that Dr. Walker received. Ris subsequently sent Mr. Starr a copy of the reprimand. Mr. Starr was the attorney representing the Agency on a class action suit that was filed by Dr. Walker. According to Agency rules, the "L of R" should have been removed from Dr. Walker's files close to 8 months earlier, by December 8, 2000, and not have been used or referred to by his managers, **unless** they were taking subsequent adverse **personnel actions** against him. Mr. Ris, however, violated

those rules by referring to it in a conversation with Starr and by sending a copy to him for the purpose of discrediting Dr. Walker and his role as a class agent. Ris sent the "L of R" to Starr to retaliate against Dr. Walker and to adversely affect his ability to participate in the class action lawsuit against the Agency. Mr. Starr could have received all information related to Dr. Walker's previous EEO activity from files contained in EPA's Office of Civil Rights. He, in his brief to the Equal Employment Opportunity Commission (EEOC), stated the charges, contained in the letter of reprimand, as facts, not allegations, and, without any supporting evidence, defamed Dr. Walker's name and reputation and negatively impacted his role as class agent. As a result, the class complaint was not certified.

14. While the previously mentioned complaints in the above paragraphs were still being considered by EEOC, on or about June, 2004 the Office of Research and Development published a list containing names of individuals who received cash awards, as a result of the ORD's STAA competition. Dr. Walker, who submitted a scientific paper for the competition, was a bit suspicious, because the list primarily contained names of individuals who were either program directors/managers or persons who controlled the research "purse strings" in NCEA/ORD, or personal friends of those individuals. On its face, it appeared to Dr. Walker that this was a clear conflict of interest situation appeared to be

discriminatory, because the awards were given to only white scientists and those who were in position to control EPA funds and actually benefit from the distribution of those funds or those individuals who were personal friends of the decision makers in NCEA (For example, Dr. Jean Parker was one of the recipients, who most NCEA scientists believe lives with Mr. Ris, who is the Deputy Director of NCEA-W Office and Dr. Sonawane, who was also a recipient, was a program manager who was in charge of managing NCEA funds). On or about June, 2004, Dr. Walker sent a "global" email to NCEA, ORD mangers, and scientists, expressing his concerns and asking management to look into this matter by asking the Office of the Inspector General to provide a reading on the issue, because on its face, it appeared to be discriminatory and an apparent conflict of interest. In response to the "global" e-mail, on June 25, 2004, under the direction of Drs. Preuss and Alapas, Mr. Charles Ris sent Dr. Walker an e-mail message admonishing, reprimanding, and threatening him for sending it. This e-mail of admonishment and reprimand from Dr. Alapas and Mr. Ris has been and is still being maintained in Dr. Walker's file in NCEA, despite the fact that there is **no** EPA policy that specifically addresses the proper use of e-mails. Dr. Walker alleges that Drs. Preuss and Alapas, and Mr. Ris issued the e-mail and have maintained it in his file because of retaliation for his participation in previous EEO activity and

discrimination because of his race. In contrast to Dr. Walker's e-mail which addressed official office business, other similarly situated employees within Dr. Walker's Office have sent and are still sending out "global" e-mails of personal and non-business nature, but have not received admonishments, reprimands, or threats from NCEA managers. Ris' e-mail has adversely impacted Dr. Walker's ability to directly communicate with other managers and scientists within and outside NCEA's office.

**b. Count II: Dr. Walker was not selected for a GS-13/14 Environmental Scientist Position in the Office of Child Health Protection because of His Race, Sex, and Retaliation.**

15. On or about December 1997, Dr. Walker applied for a position as a GS-13/14 Environmental Scientist in the Office of Child Health Protection (OCHP) at the Agency. Ms. Kelley, a white female, was the Subject Matter Expert responsible for rating and ranking the applicants and Ms. Romano Trovato, a white female, who was the Director of OCHP, was the selecting official. Ms. Kelley, after having received and reviewed the applications for this position, under the direction of Ms. Trovato, changed the selection criteria by eliminating the "health physics" requirement. After removing that criterion, and without sending out a new job announcement and receiving new applications, Ms. Kelley rated and ranked the applicants, and Ms. Trovato selected

11

Ms. Goode, a white female, for the position. In doing so, these individuals violated both Agency and OPM personnel regulations. This was done to prevent Dr. Walker from being the most highly ranked applicant and the most qualified for the position. Dr. Walker had the most experience and expertise in the health physics area, than the entire applicant pool. He has previously worked at the GS-13 level, since 1984, in EPA's Office of Air and Radiation as an Environmental Scientist, in the health physics field and has a doctorate in radiation biophysics. Dr. Walker alleges that Ms. Trovato and Ms. Kelley discriminated against him because of his race and sex, by eliminating the "health physics" criterion for the position, after finding out that he had more experience than any of the candidates. He also alleges that, because Ms. Trovato was aware of his prior EEO activity in the Office of Air and Radiation, she retaliated against him when she circumvented rules to ensure he was not selected for the position.

## V.  Adverse Effects

16. Because of Dr. Walker's EEO activity, his employment conditions in NCEA/ORD/OCHP have continuously been adversely impacted by NCEA/ORD managers such as, Dr. William Farland, Dr. Peter Preuss, Dr. George Alapas, Dr. Bob Sonawane, Mr. Michael Callahan, Mr. David Bussard, Mr. Charles Ris, and Mr. Paul White

and Mrs. Romana Trovato. Under the advice and control of Drs. Preuss and Alapas, there has been a pervasive retaliatory policy against Dr. Walker, in that these managers, in attempt to *put him in his place and violate his civil rights*, have:

    a. taken away his supervisory responsibilities over summer interns;

    b. eliminated the summer interns program for minorities;

    c. taken away his ability to use EPA letterheads to communicate with individuals outside the Agency about EPA related matters;

    d. prevented him from participating in functions or activities within the Office (scientific workgroups, priority projects, etc.,) that would allow him to advance or be promoted to a GS 15 or above;

    e. prevented him from participating in functions or activities within the Office/Agency that are commensurate with his skill, background and expertise (scientific workgroups, priority projects, etc,);

    f. prevented him from using the Office email system to communicate with other line managers and scientists within NCEA/ORD on issues related to Office matters;

    g. prevented him from being selected to a higher grade level position that he was the most qualified for;

    h. used the "L of R" for preventing him from being certified as a class agent; and

    i. prevented him from contacting EPA's Office of Inspector General on matters related to misuse of government funds and other related issues.

## VI. A Trial By Jury Demand

Dr. Walker herby demands a trial by jury as to all issues of conflict, including the measure and awarding of damages.

## VII. Prayer for Relief

**WHEREFORE,** Dr. Walker prays that this Court order the following relief:

17. Award compensatory and punitive damages against the EPA Administrator in the amount of $1,000,000.00, plus interest there of;

18. Compel Defendant to promote Dr. Walker to a GS-15/10 Environmental Scientist Position retroactively to 1998 and provide him with back pay, including all pay increases, step increases and bonuses as he would have received had he actually been promoted to that level on that date, and had he served in that job with distinction since that time;

19. Issue an injunctive order demanding Defendant to cease and desist from all illegal discriminatory actions against Dr. Walker;

20. Award Dr. Walker the cost of this action including reasonable attorney's fees; and

21. Award Dr. Walker such other and further relief as, in the opinion of the Court, are in the interests of justice.

Respectfully Submitted,

*/s/ James T. Walker*

James T. Walker, *Pro Se*
136 West Quail Lane
La Plata, Maryland 20646

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

JUL 2 9 2005

OFFICE OF
CIVIL RIGHTS

**In Response Refer To:**

Dr. James T. Walker
136 Quail Lane
La Plata, MD 20646

Discrimination Complaint Number:
2005-0065-HQ

Dear Dr. Walker:

On June 15, 2005, you filed the above-referenced discrimination complaint against the U.S. Environmental Protection Agency (Agency). In your discrimination complaint, you alleged that:

STATEMENT OF CLAIM

You were discriminated against based on race (African American), color (black) and retaliation (filing previous EEO complaints) when on June 25, 2004, you received an email from your management calling your attention to your behavior regarding an email message you sent to others outside your office. You contend the June 25, 2004, message was a "reprimand" and "put into my [your] file".

DISMISSAL OF CLAIM

The Equal Employment Opportunity Commission's (EEOC or Commission) regulations found at 29 C.F.R. § 1614.105(a)(1) requires that complaints of discrimination be brought to the attention of the Equal Employment Opportunity Counselor within 45 calendar days of the discriminatory event or within 45 days of the effective date of the personnel action. In your complaint, you alleged that on June 25, 2004, you received an e-mail from management addressing your behavior regarding an email message you sent. You raised this matter with a counselor on May 3, 2005, more than the 45-day time frame after the alleged discriminatory act occurred. Therefore, your complaint is dismissed for failure to contact an EEO counselor within the 45-day time frame.

05 2118

FILED

OCT 3 1 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Internet Address (URL) • http://www.epa.gov
Recycled/Recyclable • Printed with Vegetable Oil Based Inks on Recycled Paper (Minimum 20% Postconsumer)

Further, the Equal Employment Opportunity Commission (EEOC) regulations state at 29 C. F. R. section 1614.107(a)(1) that an agency must dismiss a complaint, or portion thereof, which fails to state a claim that, if proven true, would constitute an unlawful employment practice under the EEO statutes. EEOC administrative decisions have long held that in order to state a claim, a complainant must have suffered a present harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy. You identified no harm you suffered as a result of receiving the June 25, 2004, email. Your complaint is dismissed for the additional reason that you suffered no harm cognizant to a term, condition, or privilege of employment.

APPEAL RIGHTS

This is the Agency's final decision concerning your complaint. If you are dissatisfied with the Agency decision, you have the right to appeal, within 30 calendar days of your receipt of this final agency decision, to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> P.O. Box 19848
> Washington, DC 20036

EEOC Form 573, "Notice of Appeal/Petition to the Equal Employment Opportunity Commission," is enclosed.

You may file a statement brief in support of your appeal within thirty (30) calendar days of filing the Notice of Appeal. The EEOC, Office of Federal Operations accepts statements or briefs in support of appeals by facsimile transmittal (Fax No.: (202) 663-7022), provided that they are no longer than ten (10) pages.

At the same time that the appeal and statement or brief in support of the appeal are filed with the EEOC, you must furnish copies to:

> U.S. Environmental Protection Agency
> Karen D. Higginbotham, Director
> Office of Civil Rights - (MC 1201A)
> 1200 Pennsylvania Avenue, NW
> Washington, D.C. 20460

and

Stephen Pressman, Associate General Counsel
Civil Rights Law Office - (MC 2399A)
Office of General Counsel
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

In or attached to the appeal and statement or brief in support of the appeal, you must certify the date and method by which service was made to the Agency.

You also have the right to file a civil action in an appropriate United States District Court. If you choose to file a civil action, you may do so:

— within 90 days of receipt of this final agency decision, if no appeal to EEOC has been filed;

— within 90 days after receipt of the EEOC's final decision on appeal; or

— after 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC.

If you file a civil action in a United States District Court, you must name Stephen L. Johnson, Administrator, U.S. Environmental Protection Agency, as the defendant. Failure to provide Mr. Johnson's name or official title may result in the dismissal of your case.

If you decide to file a civil action under Title VII or under the Rehabilitation Act and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs or other security. The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS of the date you received the EEOC's decision.

If a civil action is filed, we request that you mail a copy of the civil complaint on the date of its filing to:

U.S. Environmental Protection Agency
General Counsel - (MC 2311A)
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

and

Page 3 of 4

Karen D. Higginbotham, Director
Office of Civil Rights - (MC 1201A)
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

If you have any questions concerning this matter, please contact Betty Harderman at (202) 564-7268.

Sincerely,

Karen D. Higginbotham
Director

Enclosure

cc:   Stephen Pressman, Associate General Counsel
      Civil Rights Law Office - (MC 2399A)
      Office of General Counsel
      1200 Pennsylvania Avenue, NW
      Washington, D.C. 20460