RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2006 MAR 22 PM 8: 50

NANCY M.
MAYER-WHITTINGTON
CLERK

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Dr. James T. Walker, | ) |
|  | ) |
| **PLAINTIFF** | ) |
|  | ) |
| v. | ) |
|  | ) Civil Action |
|  | ) No.05-2118 |
|  | ) (ESH) |
|  | ) |
| Stephen L. Johnson, Administrator | ) |
| US Environmental Protection Agency | ) |
|  | ) |
|  | ) |
| **DEFENDANT** | ) |

## PLAINTIFF'S MOTION FOR A CONTINUANCE TO CONDUCT DISCOVERY

Pursuant to Rule 56 (f), Fed. R. Civ. P., Plaintiff files this Motion to allow him to conduct discovery to support his opposition to Defendant's motion to dismiss or in the alternative for summary judgment. Plaintiff also asks this Court to reconsider its original Order and allow for a continuance in order to conduct discovery and 30 more days, after the conclusion of the discovery period, within which to file a response to Defendant's previous Motion.

Plaintiff needs time to conduct discovery, so that he is
can properly rebut or oppose Defendant's assertions and
allegations and show that there are genuine issues of
material facts in dispute.

Respectfully Submitted,

James T. Walker, *Pro Se*
136 West Quail Lane
La Plata, Maryland 20646
(301) 654-6376

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Dr. James T. Walker,<br><br>**PLAINTIFF**<br><br>v.<br><br><br><br>Stephen L. Johnson, Administrator<br>US Environmental Protection Agency<br><br><br><br><br>**DEFENDANT** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action
No.05-2118
(ESH)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## FOR A CONTINUANCE TO CONDUCT DISCOVERY

Plaintiff takes notice of the assertions contained in
the Defendant's memorandum and exhibits in support of its
motion to dismiss or, in the alternative for summary
judgment. He also takes notice of Defendant's statement of
material fact that was attached to that motion. Because
this Court will accept Defendant's assertions and facts as
true, Plaintiff needs to submit his own affidavits or other
evidence contradicting those that were put forth by the

Defendant. Plaintiff, at this time, is unable to submit such evidence. He needs to conduct discovery, so that he is able to properly rebut or oppose all of Defendant's assertions and allegations, affidavits, and exhibits and show that there are genuine issues of material facts that are in dispute. In support of Plaintiff's Motion, he states the following:

I.    **THIS COURT HAS PREVIOUSLY DEFERED A RULING ON A SUMMARY JUDGMENT MOTION AND ALLOWED THE NON-MOVING PARTY AN OPPORTUNITY THROUGH DISCOVERY TO OBTAIN INFORMATION RELEVANT TO ISSUES OF MATERIAL FACTS.**

In Richardson v. National Rifle Association, 871 F. Supp.499, 501-502 (D.D.C. 1994), this Court stated:

> Under Rule 56(f), the Court upon request may defer ruling on a summary judgment motion and allow the non-moving party an opportunity through limited discovery to obtain information relevant to an issue of material fact he maintains is in dispute. The party opposing summary judgment and seeking deferral, usually but not invariably by motion and affidavit, must (i) alert the Court to the need for further discovery and (ii) demonstrate, ………..how additional discovery will enable it to rebut the movant's allegations of no genuine issue of fact. A Rule 56(f) affidavit or other material supporting the motion must provide reasons why the non-moving party cannot present facts in opposition and how additional discovery will provide those facts, not simply assert that "certain information" and" other evidence" may exist and may be obtained through discovery.

2

Because of the above ruling, Plaintiff is hereby alerting this Court to the need for discovery and, as the non-moving party, is asking for a discovery period to obtain sufficient information to oppose Defendant's Motion.

**II.   DISCOVERY WILL ENABLE PLAINTIFF TO OBTAIN COPIES OF HIS COMPLAINT FILES/RECORDS THAT WERE LOST DUE TO THE TORNADO THAT DESTROYED HIS HOME ON APRIL 28, 2002.**

Since 1998, Plaintiff has filed many individual complaints against the Agency, in addition to a class-action complaint, alleging discrimination based on race, sex, and retaliation. As a result of those complaints, many files and records consisting of documentation that he received from the Agency and EEOC were stored at his home. However, on April 28, 2002, Plaintiff's home was hit and destroyed by a F4/F5 tornado (See Exhibits #I,II,III, and IV), causing him to lose everything, including those files/records.  Discovery is needed to obtain a copy of those files.  He will request a copy from the Agency and EEOC.

**III. DISCOVERY WILL ENABLE PLAINTIFF TO PROPERPLY REBUT AND RESPOND ALLEGED STATEMENT OF MATERIAL FACT, AND ALL AFFIDAVITS AND EXHIBITS THAT WERE INTRODUCED INTO THE RECORDY BY THE DEFENDANT.**

Plaintiff disputes Defendant's statement of fact and asserts that there remain genuine issues in dispute with respect to all of the allegations that were brought forth in the original complaint.  Because Plaintiff currently

3

does not have or have access to any records that contain
information sufficient enough for Plaintiff to rebut and
properly respond to Defendant's affidavits, exhibits, and
assertions, he is requesting discovery.  Below are some
examples of the kind of information Plaintiff needs with
regards to the Defendant's statement of facts:

Defendant's Statement of Fact at ¶3:

Plaintiff challenges this statement and additional
discovery will show and prove that Kelly informed Trovato
after she received application packages from the
applicants.  To do so, Plaintiff will ask the Defendant to
produce the following documents that were associated with
this announcement:

| | |
|---|---|
| i. | Staffing Requisition |
| ii. | Merit promotion announcement |
| ii. | Basic Qualification Determination Worksheet |
| iii. | Job Analysis Record |
| iv. | Merit Promotion Applicant Rating Sheet |
| v. | Cummulative Merit Promotion Evaluation Sheet |
| vi. | Summary Rating and Ranking Sheet |
| vii. | Merit Promotion Certificate |
| viii. | Merit Promotion Information Record |
| ix. | Position Description coversheet |
| x. | Position Description |
| xi. | A Copy of the SF 50 (Request for Personnel Action) form that was submitted for the promotion of Paula Goode to the GS-14 position announced for this position. |

Defendant's Statement of Fact at ¶5:

Plaintiff challenges this statement and additional discovery will provide evidence and prove that all applicants were not evaluated on the same basis and Trovato and Kelly removed the "health physics" factor and did not reissued the announcement, because they had already pre-selected Goode for the position, thereby discriminating against Plaintiff because of his race, gender, and retaliation. Furthermore, the statement in the footnote indicating that " **Mrs. Kelley was not aware of any of the applicants' races at the time she ranked them"** is also disputed by the Plaintiff. He will request discovery to show that there was enough information included in the application packages for Kelly to determine the race of each applicant. For example, in Plaintiff's, application, he indicated that he obtained B.S. and M.S in Physics from Howard University, which is well known Black university. He also indicated that he was a member of the National Society of Black Physicist and Blacks in Government. As another example, one could infer from Denny Cruz's name alone that he was Hispanic. But, when his application indicated that he obtained a B.S. in Chemical Engineering from the University of Puerto Rico, and that he was Physics

5

Instructor at the University of Puerto Rico, and worked on
Puerto Rico Environmental Quality Board, this is sufficient
information for one to conclude that Cruz was Hispanic.
Furthermore, with regards to Robin Anderson's race, when
the application showed that she obtained a B.S. in
Electrical Engineering from North Carolina A&T and M.S in
Electrical Engineering from Howard University, and included
the statement **"I am an active member in the National
Association for the Advancement of Colored People (NAACP),"**
this should be sufficient information for one to infer that
Anderson was a Black AA female.  This information will
prove that Kelly essentially perjured herself, when she
made the above statement.

Defendant's Statement Fact at ¶4:

Plaintiff challenges this statement and requests
discovery so that he can show that both Trovato and Kelly
knew who the applicants were when this decision was made.
More specifically, to prove this point, Plaintiff will
request discovery to determine the exact date and time
Kelley received the application packages, when Kelly
decided to modify the first criterion by removing the
"health physics" factor, when Butler sent the application
packages to Kelly, when Kelly contacted Trovato with
regards to this matter, etc.,.  In addition, discovery is

needed to show or provide evidence that Trovato knew five

of the applicants, before the vacancy announcement was

advertised, because they worked for her during her tenure

as the Office of Radiation and Indoor Air (ORIA) Director.

In addition, discovery is needed to provide evidence to

show that, at the time the vacancy announcement for the GS-

14 position was created and advertised by Kelly, Paula

Goode, the selectee, was already working on detail directly

under Trovato and Kelley in the Office of Child Health

Protection (OCHP).  Furthermore, discovery is needed to

determine what Paula Goode's duties and responsibilities

were while she was on detail in that Office, so that they

can be compared with those on the vacancy announcement.

Defendant's Statement Fact at ¶7:

Plaintiff challenges this statement and requests

discovery so that he can prove that, for the GS-14 position

for which he applied, Robin Anderson, the black AA female,

was not listed as one of the "highly qualified"

individuals.  Plaintiff asserts that discovery will show

that no AA males or females turned up on the GS-14 cert,

although as many as three submitted applications for the

position. Discovery will also show that Kelly and Trovato

did not select any Blacks to work in her office, while she

was Director.

7

Defendant's Statement Fact at ¶6:

Plaintiff challenges this statement and discovery will prove that Plaintiff was not evaluated based on the same criteria and that the final rating received by him was not based on his qualifications but his race, sex, and reprisal.

Defendant's Statement Fact at ¶10:

Plaintiff challenges this statement and discovery will prove that Plaintiff did actually raise this issue with the EEO counselor.

Defendant's Statement Fact at ¶11:

Plaintiff challenges this statement and discovery is needed to provide evidence to show that EEOC erred in granting the agency's motion for summary judgment.

Defendant's Statement Fact at ¶9:

Plaintiff challenges the score that he received for the first factor and all of other factors, and discovery is needed to prove that, because of his superior qualifications relative to the other applicants, that he should have been ranked "highly qualified" for the position and that Kelly discriminated against him. More specifically, discovery is needed to prove that Kelly violated EPA and OPM rules by using subjective instead of objective bases in rating the applicants. Plaintiff's know

8

ledges, skills, abilities, and other characteristics were not used by Kelly to justify the scores given to Plaintiff and Paula Goode and other less qualified applicants received relatively higher scores for all of the factors. Discovery will prove that Plaintiff veteran's preference status was not applied, although he stated in his application that was a veteran of the United States Air Force.  Discover is needed to determine why the extra points, he was suppose to receive for veteran's preference, was not applied. Discovery is needed to provide documents showing Ramona Trovato's employment history, since beginning her tenure with the Environmental Protection Agency.  This information will prove that Trovato perjured herself, when she signed the affidavit indicating that she did not supervise Plaintiff and was unaware of his EEO activity.  Discovery is needed to provide documents showing all discrimination complaints that were filed against Ramona Trovato, since beginning her tenure with the Agency and against the Office of Child Health Protection during Ramona Trovato's tenure as that Office's Director and documents showing Mrs. Margaret Kelley's employment history at the Environmental Protection Agency and showing her selection pattern with regards to Blacks and other minorities in that office.

Defendant's Statement Fact at ¶17:

Plaintiff challenges this statement and discovery is needed to prove that he was not issued the reprimand for failing to follow his managers instructions, but, he was issued the reprimand because of discrimination and reprisal for his involvement in previous EEO and other protected activity. Discovery is needed to determine the real reasons why NCEA managers reprimanded him for allegedly pursuing the "conflict" between him and Reed, when, in his "letter of inquiry" to the University of Maryland, there was no mention of the conflict or altercation. The letter focused only on those issues, of which he was entitled to address in his official capacity as an EPA employee, project manager, and Reed's supervisor that related to Reed's alleged violation of federal ethics laws. Discovery is also needed to determine what NCEA managers and [the representative] meant by the expression "had no authority to look into", when the matter he raised in his letter of inquiry is consistent with his authority as a EPA employee, project manager, and with his rights provided under the Whistle Blower's and the No Fear Acts.

Defendant's Statement Fact at ¶18:

Plaintiff challenges this statement and discovery is needed to show that Plaintiff did receive oral clearance or

permission from EPA to send a letter to the University of
Maryland to address the ethics issues. Plaintiff lost
documentation in the tornado showing that he talked to NCEA
managers about the issues and received advice and
permission to send a letter from a lawyer in EPA's Office
of General Counsel. Discovery is also needed to show that
under the Whistle Blower's and the No Fears Acts, Plaintiff
did not need clearance or permission from EPA management to
address ethics violation issues and any attempt to force an
employee to obtain such permission is a violation of those
Acts.

Defendant's Statement Fact at ¶19:

Plaintiff challenges this statement and discovery is
needed to support his assertion that the reason for sending
the letter of inquiry to the University of Maryland was to
address ethics violation issues. Reed's files were
retained/taken over by Plaintiff's supervisor, Dr. Bob
Sonawane, after the alleged altercation. He needs a copy
of all files in the Agency's possession related to Reed,
including those files that were maintained by EPA's Office
of Environmental Justice on all of those students that
worked with Plaintiff under Environmental Career
Organization Program. Since NCEA management indicated that
the ethics issue that he raised regarding Reed would be

11

addressed and investigated, Plaintiff will request
documentation showing that this issued was indeed
investigated and addressed by NCEA management.

Defendant's Statement Fact at ¶20:

Plaintiff challenges this statement and discovery is
needed to provide evidence to question its credibility.  If
the letter of reprimand did not show up in Plaintiff's
official personnel file, then discovery is needed to
determine why, especially when Plaintiff's managers and the
initial letter indicated that it would be filed there.
Discovery is also needed to show or provide evidence
establishing whether or not NCEA managers maintained more
than one file on Plaintiff or maintained files on other
similarly situated scientists within this office.
Discovery is also needed to determine the contents of those
files.  Furthermore, discovery is needed to determine which
NCEA managers were involved in the decision to give
Plaintiff the reprimand.

Defendant's Statement Fact at ¶22:

Plaintiff challenges this statement and discovery is
needed to provide evidence to show that EEOC erred in not
finding discrimination against Plaintiff on the basis of
race, sex, color, and reprisal, when he was issued the
December 8, 1998 letter of reprimand.

<u>Defendant's Statement Fact at ¶23</u>:

Plaintiff challenges this statement and requests discovery to support his assertion that he did and is still suffering harm as a result of the June 25, 2004 e-mail from management reprimanding him for sending out a "global" e-mail.

<u>Defendant's Statement Fact at ¶24</u>:

Plaintiff disputes this statement.  An official complaint was filed and responded to by the Agency and EEOC regarding these issues, but Plaintiff lost the files in the tornado.   Discovery is needed to recover copies of those files and to rebut Defendant's assertion that Plaintiff had not sought EEO counseling and filed administrative complaints regarding these issues.

Below are some examples of Plaintiff discovery needs with regards to the affidavit that was submitted by Tonya Hamlet:

<u>Hamlet's Statement ¶4</u>:

Plaintiff challenges this statement and requests discovery of documentation showing the exact date Hamlet left OHROS to go to OSWER.

Hamlet's Statement ¶5:

Plaintiff challenges this statement and requests discovery to determine why a "violence in the workplace" file was created and is still maintained at EPA on Plaintiff, when Hamlet's investigation *"concluded that there was insufficient evidence to sustain a finding that anyone had acted violently."*

Hamlet's Statement ¶8:

Plaintiff challenges this statement and requests discovery to determine, who made the request, when OHROS received the request and was it an oral or written request.

Hamlet's Statement ¶9:

Plaintiff challenges this statement and requests discovery to determine if Hamlet was actually *"tasked with the responsibility of physically removing the document from"* Plaintiff's OPF and why, who tasked her with that responsibility, and under what authority did she have for visiting and removing any documents from his OPF without him being notified, when she was not one of his line managers. Discovery is also necessary to determine whether or not Hamlet followed EPA guidelines/rules when she allegedly visited and attempted to remove documents from Plaintiff's OPF. In addition, discovery is needed to obtain a copy of Plaintiff's OPF and all documents showing the

14

activity log associated with his file.

Hamlet's Statement ¶10:

Plaintiff challenges this statement and requests discovery of documentation to determine when Hamlet allegedly advised NCEA management and the Plaintiff that the Letter of Reprimand was not in Plaintiff's file.

Hamlet's Statement ¶11:

Plaintiff challenges this statement and requests discovery to determine what role Scott had with respect to the issuance of the letter of Reprimand and why that letter was put in a LERS file. Furthermore, discovery is needed to determine if the letter is still in that file and for what reason. Discovery is also needed to determine why Hamlet in this affidavit stated that she "played no role in that process" of issuance of the reprimand, when in another signed affidavit she indicated that she worked with NCEA management in its issuance.

Hamlet's Statement ¶13:

Plaintiff challenges this statement and requests discovery to obtain documentation from EPA, indicating the procedures that are in place at the agency for ensuring that official documents get placed in employees' OPF. Discovery is also needed to obtain documentation indicating procedures for ensuring the proper removal of documents

15

from employees' OPF.  Furthermore, discovery is needed from

the agency to determine why and where EPA's process "broke

down" in connection with Plaintiff's Letter of Reprimand.

WHEREFORE, because this Court will accept Defendant's

assertions, affidavits, exhibits and as true, Plaintiff

respectfully asks this Court to allow discovery so that he

can submit his own affidavits or other evidence

contradicting those that were put forth by the Defendant.

He needs to conduct discovery, so that he is able to

properly rebut or oppose all of Defendant's assertions and

allegations and show that there are genuine issues of

material facts that are in dispute.

Respectfully Submitted,

James T. Walker, *Pro Se*
136 West Quail Lane
La Plata, Maryland 20646
(301) 654-6376

16

Exhibit #I

WALKER'S HOME LOCATED AT
136 West Quail Lane
La Plata, Maryland

# BEFORE THE APRIL 28, 2002 TORNADO



Exhibit #II

WALKER'S HOME LOCATED AT

136 West Quail Lane
La Plata, Maryland

# AFTER THE APRIL 28, 2002 TORNADO



Exhibit #III



TONY W. ROSE, CHIEF
911 FIRE/EMS COMMUNICATIONS
(301) 934-2214

DAVID A. JENKINS, CHIEF
EMERGENCY MEDICAL SERVICES
(301) 396-5829

DONALD P. MCGUIRE, DIRECTOR
(301) 645-0630
CHARLES COUNTY GOVERNMENT
P.O. BOX 2150, 200 BALTIMORE ST.
LA PLATA, MARYLAND 20646
FAX: (301) 645-0510

C. EDWARD TUCKER, CHIEF
ANIMAL CONTROL SERVICES
(301) 645-0631

ADMINISTRATOR
FALSE ALARM REDUCTION UNIT
(301) 638-0808

# *Department of Emergency Services*

October 29, 2002

Mr. Daryl L. Brown
Chief of Work Force Relations Division
US-UHS
4301 Jones Bridge Road - Room A1022
Bethesda, Maryland 20814

Dear Mr. Brown:

I am writing this letter on behalf of Ms. Olivia Walker. It is my understanding that there is a question regarding the possible work days lost by employee Ms. Walker as a result of the tornado that effected Charles County and LaPlata Township.

Mr. and Mrs. Walkers' home was destroyed by the tornado that went through their community on April 28, 2002.

As the County's Director of Emergency Services, we are trying to help the lives of the Walkers to some normalcy. For days immediately following the tornado the County was reluctant to allow people access to this area until we were assured the homes destroyed and the surrounding area was secured.

Mr. and Mrs. Walker have had a number of problems with their attempts to resolve the issues of their destroyed home and property by the tornado of April 28, 2002.

This tornado was declared a Presidential Disaster for both Public Assistance, as well as Individual Assistance. The Walkers' home was one of over 600 homes that were severely damaged or destroyed and they are still experiencing problems with the situation.

If you have any questions regarding any assistance I may be able to provide you with, please feel free to contact me.

Sincerely,

Donald P. McGuire

cc: Ms. Olivia Walker

SAY NO TO DRUGS
EQUAL OPPORTUNITY COUNTY

DATE: 6-5-03
DEP.: Walker
# 5
REP MCK

Exhibit #IV

Damage Assessment Update Master as of  May 9, 2002 Thu 9:19:16 AM

| Street Name | ADDRESS | Damage Description | Family Name | DamCat | Date Assessed | Condemed? | Owner Name from Tax Record | Prop TaxID | USE |
|---|---|---|---|---|---|---|---|---|---|
| | 201 MORGAN RIDGE CT | SHINGLES | BERTUCCI | 1 | 4/29/02 | ☐ | BERTUCCI, NICHOLAS & THERES | 1048066 | S |
| | 202 MORGAN RIDGE CT | SHINGLES | SCHMIDT | 1 | 4/29/02 | ☐ | SCHMIDT, LOUIS & JOYCE | 1048031 | S |
| | 203 MORGAN RIDGE CT | CONDEMNED | Mc Collum | 3 | 4/29/02 | ☑ | | | S |
| | 204 MORGAN RIDGE CT | SHINGLES | GLESSNER | 1 | 4/29/02 | ☐ | GLESSNER, DAVID & MARY | 1048023 | S |
| | 205 MORGAN RIDGE CT | CONDEMNED | LAWTON | 3 | 4/29/02 | ☑ | LAWTON, EDWIN & ELAINE | 1048082 | S |
| | 206 MORGAN RIDGE CT | GLASS, SIDING,ROOF, PORCH | LONG | 2 | 4/29/02 | ☐ | | | S |
| | 208 MORGAN RIDGE CT | SHINGLES | HAFT | 1 | 4/29/02 | ☐ | HAFT, HOWARD & BECKEY | 1048007 | S |
| | 210 MORGAN RIDGE CT | BROKEN GLASS, SIDING, ROOF | TZAFAROGLOU | 1 | 4/29/02 | ☐ | TZAFAROGLOU CHRISTOPHER & | 1047981 | S |
| | 212 MORGAN RIDGE CT | SHINGLES, GUTTER | | 1 | 4/29/02 | ☐ | | | S |
| | 214 MORGAN RIDGE CT | SIDING, ROOF | MERRYMAN | 1 | 4/29/02 | ☐ | MERRYMAN, JOSPEH r & ELAINE | 1047965 | S |
| MORGANS RIDGE | 134 MORGANS RIDGE ROAD | TOTAL LOSS CONDEMNED | ARBIN | 3 | 4/29/02 | ☑ | | | S |
| | 136 MORGANS RIDGE ROAD | TOTAL LOSS - CONDEMNED | WALKER | 3 | 4/29/02 | ☑ | | | S |
| | 138 MORGANS RIDGE ROAD | TOTAL LOSS - CONDEMNED | KALAHA | 3 | 4/29/02 | ☑ | KALAHA, ROGER  L & SHARON L | 1048112 | S |
| | 140 MORGANS RIDGE ROAD | TOTAL LOSS - CONDEMNED | FREDA | 3 | 4/29/02 | ☑ | FREDA, ERNEST & Michele R | 1048139 | S |

May 9, 2002 Thu 9:19:16 AM

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Dr. James T. Walker,<br><br>**PLAINTIFF**<br><br>v.<br><br>Stephen L. Johnson, Administrator<br>US EPA<br><br>**DEFENDANT** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action
No.1:05CV02118
Judge: ESH

## AFFIDAVIT OF SERVICE

I,   James T. Walker, hereby state that on the <u>22</u> day of

<u>March</u> 2006, I mailed a copy of this "Motion for a Continuance to

Conduct Discovery" to the following:


Kathleen Konopka
Assistant United States Attorney
555 Fourth Street, N.W. Room E4412
Washington, DC 2009


James T. Walker
136 West Quail Ln
La Plata, MD 20646
(301) 654-6376

16