UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES WALKER | ) |
| | ) |
| Plaintiffs, | ) Civil Action No.: 05-2118 (ESH/DAR) |
| | ) |
| v. | ) |
| | ) |
| STEPHEN JOHNSON, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY**

Comes now defendant Stephen Johnson, Administrator, United States Environmental Protection Agency, and for his opposition to Defendant's motion to compel discovery states as follows.

**I.     Procedural Background.**

In this Complaint filed on October 31, 2005, Defendant alleges employment discrimination based on race, sex and retaliation. (Complaint, docket #1). Defendant filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on February 21, 2006 (Motion to Dismiss, docket #7), and in response to Defendant's Motion to Dismiss, Plaintiff moved to continue discovery (Motion to Continue Discovery, docket #9). Following an April 18, 2006 hearing on Plaintiff's Motion to Continue Discovery, this Court entered a minute order denying Defendant's Motion to Dismiss and Defendant's Motion for Summary Judgment without prejudice, and granting Plaintiff's Motion to Continue Discovery. This Court at the same time scheduled an initial Scheduling Conference for June 29, 2006 (Order for Initial Scheduling Conference, docket #12).

At the July 29, 2006 Scheduling Conference, this Court entered a scheduling order setting a discovery deadline of December 1, 2006 and a status conference for December 7, 2006. (Scheduling Order, docket #15).

On August 28, 2006, Defendant provided complete responses including objections to Plaintiff's discovery requests.

In November of 2006, Plaintiff, for the first time since receiving discovery responses in August of 2006, contacted defense counsel regarding these discovery requests. The communication between plaintiff and defense counsel was by e-mail. Plaintiff informed defense counsel that he was not satisfied with the discovery responses provided. Defense counsel asked Plaintiff to explain his problems with the discovery responses, and indicated that she would be happy to discuss them with Plaintiff either over the telephone or in person. Plaintiff responded that he was entitled to "everything I had asked for" and that Defendant was responsible to provide a legal basis for "denying my discovery requests." Defense counsel, on November 13, 2006, informed Plaintiff that a legal basis for each objection had been provided, but that she was still happy to discuss with Plaintiff any issues regarding discovery. Defense counsel did not hear back from Plaintiff.

At the December 1, 2006 status conference, this Court, making no comment or ruling on whether Defendant had properly complied with Plaintiff's discovery requests, entered a scheduling order allowing Plaintiff to file a Motion to Compel Discovery. This opposition contains Defendant's response to Plaintiff's Motion to Compel.

**II. Plaintiff's Claims against Defendant**

Plaintiff claims that he was discriminated and retaliated against when (1) he was not chosen for a position in the EPA's Office of Children's Health Protection (OCHP); (2) he was placed on ten hours of paid administrative leave incident to a verbal altercation with a co-worker; (3) he was given a letter of reprimand for sending, on agency letterhead, an accusatory and unauthorized correspondence to the President of the University of Maryland; (4) the EPA attorney defending a class action EEO complaint in which Plaintiff sought to serve as the class agent included the letter of reprimand in a filing the agency made to the EEOC; and (5) he was given an informal written warning for disseminating broadly within his office an e-mail that identified by name an individual whom Plaintiff alleged had acted unethically in connection with the Office of Research and Development's (ORD) award process.

At the time that Plaintiff suffered the adverse actions that he alleges, he was serving as a research scientist in ORD's National Center for Environmental Assessment (NCEA), in a position that he has occupied since his transfer in 1995 from the Office of Air and Radiation (OAR).

**III.     Defendant Takes Exception to Plaintiff's Characterization of His Complaint and of the Procedural Posture of the Instant Litigation**

Plaintiff has not filed the broad continuous-pattern-of-discrimination case that he alleges in his motion to compel. Instead, Plaintiff's lawsuit involves five discrete claimed adverse actions, the first of which occurred in 1998, when he was not chosen for a position in OCHP, and the last of which occurred in 2005, when EPA's Office of General Counsel (OGC) attached a copy of his 1999 letter of reprimand to a filing submitted to the Equal Employment Opportunity Commission (EEOC), challenging Plaintiff's class action discrimination complaint.

### IV. Defendant Complied Fully with His Discovery Obligations with Respect to Plaintiff's First Discovery Request

#### A. Plaintiff's Request for Defendant's Records of His EEO Actions Is Irrelevant and Overbroad as to Time

Plaintiff's case is confined to a period long post-dating his transfer in 1995 to the Office of Research and Development (ORD) from the Office of Air and Radiation (OAR).  Thus, any materials that Plaintiff has requested in discovery that relate to his OAR tenure are not relevant insofar as they would not be reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff filed a multiplicity of EEO actions during his OAR tenure, but not a single such complaint implicated any EPA employee whom Plaintiff alleges was responsible for any of the five adverse actions at issue in the instant litigation.   Plaintiff, therefore, has failed to demonstrate why Office of Civil Right's (OCR) records that pre-date his transfer to ORD have any relevance to his instant complaint.

#### B. Defendant Has Produced All Records in His Possession that Are Responsive to Plaintiff's First Discovery Request

Incident to Plaintiff's request for *all* OCR records reflecting his EEO history dating almost from the inception of his EPA employment, Defendant examined his files and produced all existing Reports of Investigation (ROI).  OCR has a record retention policy, however, under which all records are destroyed four years after the disposition of an EEO complaint.  Thus, there are EEO actions which once were brought by Plaintiff for which Defendant no longer has any records.  Obviously, Defendant cannot and did not produce materials that he does not possess.

Plaintiff states that he asked for more than just ROIs, but the reality of the EEO process in EPA is that each case which the Agency accepts for investigation generates a case file and an ROI. The case file contains correspondence between a complainant and EPA and materials related to the informal resolution phase of the EEO process. Such materials as are contained in a case file invariably are incorporated into the ROI. Thus, with respect to any of Plaintiff's EEO complaints that evolved into investigations, Defendant's production of the ROI did represent the entirety of the record inventory.

With respect to the only one of Plaintiff's EEO complaints which is before this court and for which EPA did not conduct an investigation, his informal letter of warning for misuse of ORD's e-mail system, every document in that case file is one that Plaintiff himself either generated or received contemporaneously with the processing of that complaint. Defendant has already produced to Plaintiff all documents in OCR's possession that relate to this matter.

Finally, Defendant denies Plaintiff's assertion that Defendant has not produced every ROI, which he possesses that relates to any EEO complaint filed by Plaintiff throughout his entire tenure as an EPA employee. Defendant has produced every such ROI in his possession.

V.  **Defendant Complied Fully with His Discovery Obligations with Respect to Plaintiff's Second Discovery Request**

   A.  **Defendant Offered to Serve as a Liaison with the Department of Defense, which Possesses Paula Goode's Official Personnel File (OPF), in Order to Facilitate the Production of Relevant Materials from that File**

Paula Goode was the selectee for the position in OCHP for which Plaintiff applied and whose non-selection he has challenged in the instant litigation as discriminatory/retaliatory. Ms. Goode resigned from EPA some years ago and accepted a position in the private sector. She is

currently employed by the Department of Defense (DOD), who, as her federal employer, maintains her OPF. Defendant advised Plaintiff that, despite having no legal obligation to facilitate Plaintiff's request for a record outside of Defendant's custody and control, he would act as a liaison with DOD, arranging to examine Ms. Goode's OPF and then producing all records until her selection for the OCHP position that were germane to the issue of her qualifications for that job.

In addition, the OPF contains a wealth of material that is irrelevant to the issue of Ms. Goode's qualifications and is of a protected personal nature, such as investment and insurance information. Plaintiff is not entitled to such material, and Defendant has complied with his discovery obligations in response to Plaintiff's request for Ms. Goode's OPF.

### B. Defendant Properly Objected to Plaintiff's Requests for the OPFs of Ramona Trovato's and Margaret Kelley

#### 1. Ramona Trovato OPF

Plaintiff claims that he is entitled to the OPF of Ramona Trovato, who served as the selecting official with respect to the position in OCHP for which Plaintiff was not chosen. Approximately four to five years prior to the non-selection matter at issue, Ramona Trovato was appointed in OAR to a high level managerial position in Plaintiff's supervisory chain. Such appointment, however, came at a time when Plaintiff was serving on an extended detail to ORD from which he segued into a full-time permanent position with ORD, in the office to which he is still assigned.

Thus, Ms. Trovato never actually served in any supervisory capacity vis-a-vis Plaintiff during his tenure in OAR. Ms. Trovato also has never served in a supervisory capacity in ORD,

nor has she even been employed in that office during Plaintiff's tenure there.  In fact, Ms. Trovato's sole familiarity with Plaintiff arose out of her execution of his permanent transfer to ORD, pursuant to an agreement in which she had played no part and which had been endorsed by her predecessor.  Ms. Trovato did nothing more than perform the ministerial function of signing off on Plaintiff's transfer to ORD, a matter which had been decided before Ms. Trovato ever assumed her position in OAR.

Not only did Ms. Trovato have no contact with Plaintiff, her OPF contains information of a highly private nature, and Plaintiff should not be given license to examine such information, absent any colorable claim that doing so would be reasonably calculated to lead to the discovery of admissible evidence.

Normally, OPFs of the applicants rated more favorably than a non-selectee contain discoverable information, insofar as such individuals qualify as "comparables" with respect to whom it is incumbent upon a complainant to show that he is demonstrably better qualified.  Ms. Trovato, however was not in the applicant pool, rather she served as the selecting official, whose qualifications to serve in such capacity are not at issue in the instant litigation.

**2. Margaret Kelley OPF**

Plaintiff claims that he is entitled to the OPF of Margaret Kelley, who served as the subject matter expert (SME) with respect to the position in OCHP for which Plaintiff was not chosen.  Prior to acting in such capacity Ms. Kelley had a non-existent history with Plaintiff.

Ms. Kelley was not an applicant for the position for which Plaintiff was not selected; her qualifications for her job as SME are not at issue in the instant litigation.  Ms. Kelly's OPF, like

Ms. Trovato's OPF, is unlikely to contain any material relevant to Plaintiff's instant litigation.[1]

## C. Kathleen Reed Never Served as an EPA Employee and EPA Has No Knowledge of Her Ever Serving as a Federal Employee and Having an OPF

Ms. Reed was the summer intern from the University of Maryland with whom Plaintiff had a verbal altercation which led to his management's decision to place each of them on 10-hours paid administrative leave. Ms. Reed, who has never been an EPA employee, played no role in the decision concerning administrative leave. To EPA's knowledge, there does not exist an OPF for Ms. Reed. Based on Defendant's lack of responsive records, Defendant submits that Plaintiff's motion to compel the production of Ms. Reed's OPF should be denied.

## D. Margo Oge Has No Connection to the Instant Litigation Whatsoever

Ms. Oge served in a supervisory capacity in Plaintiff's OAR chain of command predating any alleged actions by defendant; Plaintiff has not identified her as playing any role in the alleged adverse actions of which he complains; and he has failed to identify what possible relevance she might have to this case. Defendant submits that there exists no rationale basis for Plaintiff's motion to compel regarding Ms. Oge's OPF and that such motion should be denied.

## E. The OPFs of Plaintiff's Supervisory Chain of Command During Matters Alleged in the Instant Litigation, Messrs. Sonawane, Ris, and Callahan Would Not Possess Relevant Information

The type of information contained in an OPF addresses either performance matters or financial/personal issues, such as, for example, life and medical insurance coverage and investment options. Defendant submits that such information would not shed light on what might

---

[1] Ms. Kelley has been deceased for a number of years, and her OPF, to the extent that it still exists, in light of her death, would be in permanent storage in a Federal Records Center facility.

have motivated Plaintiff's supervisors to take the alleged adverse actions at issue in the instant litigation. And, it is such motivation which is the critical issue, not such individuals' qualifications for their management jobs, as reflected by their performance evaluations and other OPF information.

Because production of the OPFs of these three individuals is not reasonably calculated to lead to the discovery of admissible evidence, Plaintiff's motion to compel the production of these materials should be denied.

### VI. Defendant Complied Fully with His Discovery Obligations with Respect to Plaintiff's Third Discovery Request

#### A. Office of Civil Rights (OCR) Files Related to Paula Goode, Margo Oge and Karen Higginbotham Are Irrelevant

With respect to Plaintiff's requests for EEO records for Ms. Goode, Ms. Oge and Ms. Higginbotham, Defendant submits that such requests are not reasonably calculated to lead to the discovery of admissible evidence. Ms. Oge served in a supervisory capacity in Plaintiff's OAR chain of command; Plaintiff has not identified her as playing any role in the adverse actions of which he complains in this action; and he has failed to identify what possible relevance she might have to this case. Defendant submits that there exists no rationale basis for Plaintiff's motion to compel regarding EEO documents related to Ms. Oge.

Ms. Higginbotham has never served in any supervisory capacity vis-a-vis Plaintiff; she has spent the last several years as Director of OCR; and Plaintiff has not produced any justification, cogent or otherwise, as to why her EEO history has any relevance to the instant litigation. Defendant submits that there exists no rationale basis for Plaintiff's motion to compel regarding documents related to Ms. Higginbotham.

Ms. Goode was the selectee, and as such she obviously played no role in the decision-making process that led to her selection. That is, she did not choose herself nor did she fail to choose Plaintiff for the OCHP position. Thus, whether she has an EEO history or not is irrelevant. Ms. Goode was simply never in a position from which she could affect Plaintiff. Thus, Defendant submits that there exists no rationale basis for Plaintiff's motion to compel regarding EEO documents related to Ms. Goode.

### B. Searching for EEO Records Responsive to Plaintiff's Third Request Would Be Unduly Burdensome

Owing to the manner in which EPA's OCR maintains its hardcopy case files and electronic database, records of EEO complaints are retrievable only by reference to a *complainant's* name or an associated case number. Thus, in order to identify cases in which a specific person has been named as an alleged discriminating official, Defendant would have to manually review each of the hardcopy case files in its inventory, searching each such file for the individual at issue. Because OCR's electronic data base does not allow for a search by word, there would be no other means of locating cases that name a particular person as the alleged discriminating official.

### C. OCR Records of Ramona Trovato's EEO History Would Not Be Reasonably Calculated to Lead to the Discovery of Admissible Evidence

Defendant has queried Ms. Trovato concerning her prior EEO history, and she is confident that she was never named as an alleged discriminating official at any time during her tenure with the Agency.[2] Second, the record is clear (1) that Plaintiff was not one of the three candidates

---

[2] Ms. Trovato has been retired from EPA for approximately two years. Her last position with the Agency was as the Director of OCHP.

whom Ms. Kelley even referred to Ms. Trovato for consideration and (2) that Ms. Trovato was not aware of Plaintiff's status as an applicant when she made her selection decision. In light of these facts, Defendant submits that Ms. Trovato's EEO history is irrelevant and would not be reasonably calculated to lead to the discovery of admissible evidence, even if it were not unduly onerous for Defendant to conduct a search for any such history.

        D.        **OCR Records of Margaret Kelley's EEO History Would Not Be Reasonably Calculated to Lead to the Discovery of Admissible Evidence**

Ms. Kelley, the other individual who, as the SME, played an integral role in the challenged selection process, unfortunately has been deceased for many years. It is undisputed, however, that she had no knowledge of Plaintiff independent of his application for the position in the OCHP. Ms. Kelley did not predecease the completion of the EEO investigation, though, and whatever information she possessed concerning the challenged selection process she provided to the investigator, and it is incorporated in the Report of Investigation (ROI), which EPA has twice produced to Plaintiff.

Furthermore, Plaintiff's original EEO complaint to EPA alleged that Ms. Kelley, as her discriminatory act, revised the evaluation criteria to his disadvantage, eliminating the requirement for a background in the discipline of health physics. There is no evidence whatsoever, though, that Ms. Kelley knew who had applied for the OCHP position when she recommended the removal of the health physics criteria.

Additionally, while Ms. Kelley is certainly in no position to assert that she was never accused of discrimination during her EPA tenure, Defendant has made inquiries among persons likely to be familiar with Ms. Kelley's employment history, and he is satisfied that such was the

11

case. Thus, a search of OCR records, in addition to being unduly burdensome, would undoubtedly prove unproductive as well.

Defendant submits that Plaintiff's request for Ms. Kelley's OCR files identifying her as an alleged discriminating official is not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome.

> **E. Plaintiff's Request for OCR Records Relating to Every Manager in His ORD Supervisory Chain Throughout Plaintiff's Tenure in that ORD Is Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence**

In lieu of conducting the unduly burdensome type of manual records search that might permit Defendant to locate EEO cases in which persons in Plaintiff's supervisory chain had been named as alleged discriminating officials, Defendant queried each such individual for whom Plaintiff requested records, with the exception of Arthur Payne, who is retired. Defendant's inquiries concerning the specific EEO histories at issue yielded the following results:

(1) Peter Preuss was named as an alleged discriminating official a half decade or more prior to ever assuming any supervisory role vis-a-vis Plaintiff, and a federal district court judge recently granted the Government's summary judgment motion vindicating EPA and Mr. Preuss in that matter. Defendant submits that the records germane to Mr. Preuss' case are unrelated in any way to Plaintiff's administrative leave complaint and are not reasonably calculated to lead to the discovery of admissible evidence.

(2) Messrs. Ris, Bussard, and Alapas were named as alleged discriminating officials in a 2005 complaint that the EEOC recently concluded lacked merit and dismissed without a hearing. Defendant submits that producing OCR materials related to such a matter would invade the privacy of the complainant, as well as of the exonerated managers and would not be reasonably

likely to lead to the discovery of admissible evidence.

(3) Michael Callahan was named as an alleged discriminating official in the early 1990's in connection with his non-selection of an individual for an ORD Branch Chief position. Defendant has no knowledge of the complainant's identity in that case, but understands that this matter was dismissed without any finding of discrimination.

(4) During his tenure in ORD, Plaintiff has named as an alleged discriminating official every manager in his ORD chain of command. To defendant's knowledge, with the exception of the information noted in paragraphs (1) - (3), above, none of these supervisors has ever been identified as an alleged discriminating official by any other person.

For the reasons noted above, Defendant submits that Plaintiff's requests for the EEO records of every manager in his supervisory chain are objectionable because they are unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

### VII. Defendant Complied Fully with His Discovery Obligations with Respect to Plaintiff's Fourth Discovery Request

Defendant objects to Plaintiff's request as comprising an ill-defined, albeit vast, universe of e-mail records, whose retrieval would be unduly burdensome, if even possible. Assumedly, Plaintiff intends to review a decade's worth of "global" e-mail messages, contrast such traffic with his message, and derive some conclusion about his unequal treatment. Plaintiff makes light of Defendant's objection that producing what Plaintiff has asked for would be unduly onerous, essentially requiring a search over an extensive period of time of the "*To*" designation in hundreds of employees' e-mail accounts.

Defendant further submits that, given the vagueness and undue burdensomeness of

Plaintiff's request with respect to the e-mail, compelling Defendant's production when the underlying complaint is time-barred (Plaintiff received his warning letter approximately one year prior to ever contacting an Agency EEO counselor, and OCR rejected Plaintiff's complaint as untimely) would be a grave injustice. Furthermore, Defendant already has produced documents that address e-mail system use policies that apply to Plaintiff.

For the reasons noted above, Defendant submits that Plaintiff's fourth request for discovery is objectionable on multiple bases and his motion to compel the production of the e-mail records at issue should be denied.

**VIII.  Defendant Complied Fully with His Discovery Obligations with Respect to Plaintiff's Fifth Discovery Request**

Plaintiff has requested EEO files related to cases filed by three woman having either no connection (Coleman-Adebayo) or the most tenuous connection (Caldwell and Marsh) to him. Dr. Coleman-Adebayo has successfully sued EPA for discrimination, but she has never identified as an alleged discriminating official any person whom Plaintiff purports to hold responsible for his alleged victimization. Furthermore, Dr. Coleman-Adebayo has never worked in either OAR or ORD, and her experiences for which she has sought redress under the EEO process have occurred in offices to which Plaintiff has never been assigned and under managers to whom he has never answered, in any capacity.

Drs. Caldwell and Marsh, while in ORD, work out of EPA's Research Triangle Park (RTP) facility in Durham, North Carolina. To the extent that they have raised any complaints of discrimination, such complaints have been leveled at managers at RTP, who are decidedly not those whom Plaintiff blames for his alleged unjust treatment. Thus, Defendant submits that Drs.

Caldwell's and Marsh's EEO records are irrelevant to Plaintiff's case and are not reasonably calculated to lead to the discovery of admissible evidence.

### IX. Defendant Complied Fully with His Discovery Obligations with Respect to Plaintiff's Sixth, Seventh, and Eighth Discovery Requests

In his motion to compel, Plaintiff does nothing but state "that he is entitled" to the documents requested in requests six, seven and eight. Defendant raised appropriate objections to Plaintiff's final three requests, and as noted in Defendant's responses, has already produced all documents Plaintiff requested in connection with (1) EPA's investigation of his administrative EEO complaints and (2) the dispositive motion process before both the EEOC and this court.

### X. Conclusion

For all the reasons articulated above, Defendant submits that he has fully complied with his discovery obligations and has raised valid objections to Plaintiff's requests. Defendant, therefore, respectfully asks the court to deny, in its entirety, Plaintiff's motion to compel and to sustain Defendant's objections as stated in this filing and in his earlier discovery responses.

Respectfully submitted,

\_\_\_/s\_/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

\_\_/s/_____
ALEXANDER D. SHOAIBI, D.C. BAR #423587
Assistant United States Attorney
5O1 Third Street, N.W., Rm E-4818
Washington, D.C. 20530
(202) 514-7236

## CERTIFICATE OF SERVICE

I hereby certify that on this  12th   day of January, 2007, I caused the foregoing **Defendant's Opposition to Defendant's Motion to Compel Discovery** to be served on plaintiff, postage prepaid, addressed as follows:

> James T. Walker
> 136 West Quail Lane
> La Plata, Maryland 20646

>  /s/
> ALEXANDER D. SHOAIBI
> Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES WALKER ) | |
| ) | |
| Plaintiffs, ) | Civil Action No.: 05-2118 (ESH/DAR) |
| ) | |
| v. ) | |
| ) | |
| STEPHEN JOHNSON, ) | |
| Administrator, U.S. Equal Protection Agency ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER

**UPON CONSIDERATION** of Plaintiff's motion to compel discovery, Defendant's opposition and Plaintiff's reply, it is hereby **ORDERED** that the motion is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE

Dated: _____, 2007.

Case 1:05-cv-02118-RMC    Document 22    Filed 01/12/2007    Page 18 of 19

Case 1:05-cv-02118-RMC    Document 22    Filed 01/12/2007    Page 19 of 19