IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————————————————

JAMES T. WALKER,                )
                                )
        Plaintiff,              )
                                )
        v.                      )
                                )        Civil Action No. 05-2118 (ESH/DAR)
STEPHEN JOHNSON, Administrator, )
U.S. Environmental Protection Agency, )
                                )
        Defendant.             )
————————————————————)

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant Stephen Johnson, Administrator, United States Environmental Protection Agency, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 12 (b)(6), to dismiss the complaint in the above-captioned action. In the alternative, Defendant moves pursuant to Rule 56 for an order granting summary judgment on the grounds that no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law. In support of this Motion, Defendant submits the attached memorandum of points and authorities with exhibits, a statement of material facts not in dispute, and a proposed order.

Plaintiff should take notice that any factual assertions contained in the attached memorandum and exhibits in support of this motion will be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions therein. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992). Furthermore, should this Court treat Defendant's motion as one for summary judgment, the Federal Rules of Civil Procedure provide:

Supporting and opposing affidavits shall be made on personal knowledge, shall

set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); See Fox v. Strickland, 837 F.2d 507 (D.C. Cir. 1988) (dispositive motion may be granted if pro se party fails to respond); Local Rule 56.1 ("the court may assume that facts identified by the moving party in its statement of facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion").

Respectfully submitted,

____/s_/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

___/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

___/s/_____
ALEXANDER D. SHOAIBI, D.C. BAR #423587
Assistant United States Attorney
5O1 Third Street, N.W., Rm E-4818
Washington, D.C.  20530
(202) 514-7236

\

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JAMES T. WALKER,                    )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )
                                    )        Civil Action No. 05-2118 (ESH)
STEPHEN JOHNSON, Administrator,     )
U.S. Environmental Protection Agency, )
                                    )
        Defendant.                  )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT**

Plaintiff alleges that his employer, the United States Environmental Protection Agency

("EPA") discriminated against him on the basis of his race, sex, and his filing of prior

administrative discrimination complaints by: 1) questioning and placing him on ten hours paid

administrative leave when Plaintiff and a female student intern engaged in an altercation (see

Complaint "Compl." at 4-5); 2) issuing Plaintiff a written reprimand for failing to follow

management direction and for use of EPA letterhead for unauthorized business when Plaintiff

sent a "letter of inquiry" to the University of Maryland, the student intern's university, accusing

the intern and a University official of criminal acts (see Compl. at 6-7) ; 3) allowing that letter of

reprimand to allegedly remain in Plaintiff's personnel file for the full recommended two-year

period rather than removing it earlier (Compl. at 7-8); 4) making an EPA agency counsel aware

of the letter of reprimand (Compl. at 8-9); 5) sending an admonishing email to Plaintiff in

response to Plaintiff's "global" email accusing certain EPA management of "conflicts of interest" in the issuance of cash awards (Compl. at 9-10); and by 6) eliminating an evaluation factor from a particular vacancy announcement that Plaintiff applied for where all the applicants were evaluated absent this criterium, and Plaintiff failed to make the "best qualified" list.  (Compl. at 11-12).

Dismissal of Plaintiff's claims is appropriate because, even if his allegations are taken as true, they fail to rise to the level of adverse personnel actions or create an inference of discrimination or retaliation. Specifically, neither Plaintiff's supervisors' attempt to diffuse the tension between Plaintiff and a student intern by sending both home for one day and two hours, (time for which Plaintiff was fully compensated), nor the informal admonishment letter addressing Plaintiff's misuse of the Agency's e-mail system, affect a term or condition of his employment or constitute the type of action that would deter an individual from engaging in Title VII protected activity. [1]

Finally, the removal of a qualification in a particular vacancy announcement, where the deciding officials were unaware of the applicants' identities at the time the criterium was eliminated, and where all applicants, including Plaintiff, were consistently rated under the new rubric, cannot give rise to an inference of discrimination.  Moreover, it is apparent from the record facts that, even if the evaluation factors were unaltered from the original vacancy announcement, Plaintiff would not have made the merit certification or "best qualified" list, and

---

[1]     In addition to failing to state a cognizable adverse action under either a discrimination or retaliation theory, Plaintiff did not contact an EEO counselor with respect to the e-mail matter until approximately one year after his receipt of the informal admonishment letter, leading  EPA's Office of Civil Rights to reject Plaintiff's complaint as untimely.

thus, cannot show that he was adversely affected by the change or that he was qualified for the position.

Additionally, Plaintiff failed to raise several of the claims that he asserts before this Court with the agency in a timely formal complaint of discrimination. Thus, those claims must be dismissed pursuant to Rule 12(b)(6), for failure to exhaust administrative remedies.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant hereby incorporates and relies on the record facts as provided in Defendant's statement of fact as to which there is no genuine dispute.

## II.    ARGUMENT

### A.    Legal Standards for Dismissal and Summary Judgment

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. See Sullivan-Obst v. Powell, 300 F. Supp. 2d 85, 91 (D.D.C. 2004). The Court may grant such a motion if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C. Cir. 2003). Thus, in resolving a Rule 12(b)(6) motion, the Court must treat the complaint's factual allegations -- including mixed questions of law and fact -- as true and draw all reasonable inferences therefrom in the plaintiff's favor. See Macharia v.United States, 334 F.3d 61, 64, 67 (D.C. Cir. 2003), cert. denied, 540 U.S. 1149 (2004); Holy Land Foundation v. Ashcroft, 333 F.3d 156, 165 (D.C. Cir. 2003), cert. denied, 540 U.S. 1218 (2004). On the other hand, the Court need not accept as true

3

inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  See Warren v. District of Columbia, 353 F.3d 36, 37 (D.C. Cir. 2004); Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 1993).

Federal Rule of Civil Procedure 12(c) specifies that when "matters outside the pleadings are presented to and not excluded by the court,  the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Therefore, when materials outside the complaint are considered, the proper course of action is to convert the motion to dismiss into a motion for summary judgment.  See Air Line Pilots Ass'n v. PBGC, 193 F.Supp.2d 209, 215 (D.D.C. 2002), aff'd, 334 F.3d 93 (D.C. Cir. 2003).

Summary judgment is appropriate when the pleadings together with affidavits, if any, establish that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R.Civ. P. 56.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," the Court must look to the substantive law on which each claim rests. Anderson v. Liberty Lobby,Inc., 477 U.S. 242, 248 (1986).  Material factual disputes are genuine only if a reasonable fact finder could render a verdict for the nonmovant.  Id. at 248-249.

In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. Anderson, 477 U.S. at 255.  However, a nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. Id. at 252.  Indeed,  the moving party may prevail by pointing to the absence of evidence proffered by the nonmovant.  Celotex, 477 U.S. at 322.

Factual assertions contained in affidavits and other evidence submitted in support of a
motion for summary judgment may be accepted as true unless specifically controverted by the
nonmoving party with competent evidence.  See Fed. R. Civ. P. 56(e). The nonmoving party may
not rely solely on allegations or conclusory statements.  See Greene v. Dalton, 164 F.3d 671, 675
(D.C. Cir. 1999); Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993).  Indeed, if the nonmoving
party's evidence "is merely colorable, or is not significantly probative, summary judgment may
be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted).  Applying these
standards demonstrates that Plaintiff's Complaint should be dismissed.[2]

**B.   Plaintiff's Complaint Fails to State a Claim for Which Relief Can
Be Granted Because the Alleged Wrongs Complained of Are Not Adverse
Personnel Actions and Do Not Give Rise to an Inference of Discrimination.**

Courts have made clear that they "cannot be wheeled into action for every workplace
slight, even one that was possibly based on protected conduct."  Taylor v. Fed. Deposit Ins.
Corp., 132 F.3d 753, 765 (D.C. Cir. 1997).  See Smart v. Ball State University, 89 F.3d 437, 441
(7th Cir. 1996) ("not everything that makes an employee unhappy" is actionable under Title VII);
Childers v. Slater, 44 F.Supp.2d 8, 19 (D.D.C. 1999) ("conduct that sporadically wounds or
offends but does not hinder an employee's performance does not rise to the level" of an
actionable claim under Title VII), vacated in part on other grounds, 197 F.R.D. 185 (D.D.C.
2000); Lucas v. Cheney, 821 F.Supp. 374, 376 (D.Md. 1992), aff'd, 991 F.2d 790 (4th Cir. 1993)
(even though the letter of reprimand came after plaintiff's filing with the EEOC, it still does not

---

[2] We also note that Plaintiff seeks relief well in excess of Title VII's $300,000 statutory
cap.  It is settled that Defendant's liability is capped by statute at $300,000, regardless of the
number of claims in Plaintiff's Complaint.  Fogg v. Ashcroft, 254 F.3d 103 (D.C. Cir. 2001); 42
U.S.C. § 1981a(a)(1), (b)(3).

5

represent an actionable injury within the scope of Title VII).

Thus, in order to establish a prima facie case of race or sex discrimination under Title VII, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).  See also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  To establish a *prima facie* case of retaliation, a Plaintiff must demonstrate that (1) he engaged in a protected activity; (2) the employer took an action against plaintiff with material consequences such that it would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection exists between the action and the protected activity.  See Rochon v. Gonzales, 438 F.3d 1211, 1219-20 (D.C. Cir. 2006); see also Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405 (2006).  If plaintiff is able to establish a prima facie case of retaliation, then the Court should apply the familiar McDonnell Douglas analysis applicable to discrimination claims.  Id.

In the "pure" discrimination context, an employment decision rises to the level of adverse action only if there is "a tangible change in the duties or working conditions [of the employee] constituting a material employment disadvantage."  Childers, 44 F.Supp.2d at 19 ("the actions must engender some negative consequences with respect to the plaintiff's employment").  See Brody, 199 F.3d at 457 (a plaintiff must show "some . . . materially adverse consequences affecting the terms, conditions, or privileges of [his] employment or future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.").  The Supreme Court has defined a "tangible employment action" as

6

"a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Indeed, "[m]arginal distinctions with uncertain consequences are not adverse actions for the purposes of Title VII." Milburn v. West, 854 F.Supp. 1, 14 (D.D.C. 1994), aff'd, 1995 WL 117983 (D.C. Cir. 1995).

Plaintiff's allegations of harm are insufficient to constitute actionable adverse actions under Title VII. Indeed, this Court has specifically held that "[a] reprimand that amounts to a mere scolding, without any disciplinary action which follows, does not rise to the level of an adverse action." Childers, 44 F.Supp.2d at 20. See Brody, 199 F.3d at 455-59 (formal criticism in form of letter of admonishment did not constitute adverse action because it "neither affected the [plaintiff's] grade or salary."); Milburn, 854 F.Supp. at 14 (formally memorialized incident report that resulted in no disciplinary action did not constitute adverse action); Brodetski v. Duffey, 141 F.Supp.2d 35, 47 (D.D.C. 2001) (criticism of an employee unaccompanied by a change in position or status does not constitute adverse employment action); Walker v. Washington Metro. Area Transit Auth., 102 F.Supp.2d 24, 29 (D.D.C. 2000) (disciplinary notice was not an adverse action).

Thus, the December 3, 1998, letter of reprimand issued to Plaintiff following his use of EPA letterhead to accuse a University of Maryland student of criminal violations based on some unexplained "strong evidence" cannot form a basis for a claim of discrimination under Title VII. Plaintiff alleges no material consequence to the conditions of his employment as a result of the

reprimand.[3]  Indeed, while the letter was scheduled to be removed from Plaintiff's personnel file

in any case within two years of its issuance, it became clear, upon management's seeking to

remove the letter, that it had never actually been incorporated in Plaintiff's file.  (Exh. 12 at ¶

13).  Moreover, in light of the written reprimand's failure, as a matter of law, to constitute an

adverse employment action, Defendant's alleged failure to remove the letter from Plaintiff's

personnel file (although it had never actually been placed there) prior to the originally stated two-

year period also cannot form the basis for a Title VII discrimination claim.

Additionally, Plaintiff cannot demonstrate "some . . . materially adverse consequences

affecting the terms, conditions, or privileges of [his] employment or future employment

opportunities," See Brody, 199 F.3d at 457, flowing from his being interviewed and placed on ten

hours of paid administrative leave as a "cooling off" period following his altercation with the

student intern.  The intern was also interviewed and asked to leave work.  (Exh. 14 at 1).

Moreover, Plaintiff was fully compensated for the ten-hour period, (see Exh. 14 at 1), and he

does not dispute that no blame was assigned as a result of the incident, nor was he subjected to

---

[3]        Plaintiff's Complaint includes a lengthy laundry list of alleged "adverse effects"
flowing from Defendant's actions in this case, including "taken away his ability to use EPA
letterheads (sic) to communicate with individuals outside the Agency about EPA related
matters." (Compl. at ¶ 16).  While, even if true, this consequence appears to have little if any
effect on Plaintiff's "title, duty, salary, benefits, or working hours," Walker, 102 F.Supp.2d at 29,
it also is not substantiated by the record evidence in this case.  Plaintiff was reprimanded for
misusing EPA letterhead to accuse an intern, and implicate the complicity of a University
official, in violations of criminal statutes, an act well outside plaintiff's duties and in direct
contravention of instruction he had been provided by EPA management and investigatory
officials.  (See Exh. 14 at 3; 15; 20; 21 at 1-2).  There is no evidence that Plaintiff has been
prohibited from using EPA letterhead for purposes within plaintiff's duties and the approval of
his supervisors.  Similarly, there is no evidence that Plaintiff has been prohibited from using the
EPA email system or reporting "misuse of government funds" to EPA's Office of the Inspector
General.  (See Compl. at ¶ 16).

any disciplinary action.  (Exh. 11 at ¶ 5; <u>see</u> Exh. 12 at ¶ 6; Exh. 14 at 3).[4]  <u>See</u> <u>Milburn</u>, 854

F.Supp. at 9, 14 (a memorandum made a permanent part of plaintiff's file accusing him of

insubordination, but resulting in no disciplinary action did not constitute an adverse action).[5]

     Plaintiff's final claim alleges that he was discriminated and retaliated against when he

was not selected for the position of Environmental Scientist in the EPA's Office of Child Health

Protection.  (Compl. at ¶ 15).  However, it cannot be disputed that Plaintiff was never in a

position to be selected pursuant to this vacancy announcement, because he was ranked sixth of

the nine applicants and did not make the merit promotion certificate.  (Exh. 7; Exh. 17).  <u>See</u>

<u>Morgan v. Fed. Home Loan Mortgage Corp.</u>, 172 F.Supp.2d 98, 108 (D.D.C. 2001) (in order to

establish <u>prima</u> <u>facie</u> case, plaintiff must demonstrate that he was qualified for position he was

denied.  Thus, Plaintiff attempts to substantiate his claim by alleging that the act of

discrimination was not the non-selection itself, but rather the subject matter expert's decision,

made in conjunction with the selecting official, to remove a portion of the first evaluation factor,

which required experience in the field of "health physics."  (Compl. at ¶ 15).  According to

Plaintiff, this decision was made "to prevent [Plaintiff] from being the most highly ranked

---

[4]     Plaintiff alleges in his Complaint that, as a result of this incident, "NCEA managers took away [Plaintiff's] supervisory responsibilities under the program."  (Compl. at ¶ 9).  This specific claim was never raised by the Plaintiff or investigated at the administrative level.  (Exh. 13).  However, it is clear from Plaintiff's own statements that his relationship with student interns was that of a "mentor," (Exh. 11 at ¶ 4), as opposed to a supervisor, and that the intern program itself, as opposed to Plaintiff's role in it (except for the final two weeks of the particular intern's term with whom Plaintiff argued), was eliminated.  (Compl. at ¶ 9).

[5]     Plaintiff failed to exhaust his administrative remedies regarding his claim that Defendant discriminated against him by sending him an admonishing email.  (<u>See</u> Section C. below).  However, based on the precedent cited above, it is clear that that claim is not actionable under Title VII.

applicant and the most qualified for the position."  (Id.).

Plaintiff's claim ignores record facts which preclude this selection process from "giv[ing] rise to an inference of discrimination."  Brown, 199 F.3d at 452.  Specifically, when the decision to eliminate the "health physics" portion of the first evaluation criterium was made, neither the subject matter expert, Margaret Kelly, nor the selecting official, Ramona Trovato, were aware of the applicants' identities.  (Exh. 3 at 2; Exh. 8 at 3; see Exh. 4 at 1-2).  Indeed, this claim is nearly identical to one considered by this Court in Thomas Bennett v. Gale Norton, Civ. Action No. 03-0435 (ESH).  (Memorandum Opinion attached as Exh. 25).  In that case, the Court determined that the plaintiff had failed to establish a prima facie case under Title VII because he had not made the "best qualified" list, and, when the decision was made to eliminate three of five evaluation criteria from the vacancy announcement, the selecting official was unaware of who had applied for the position.  (Exh. 25 at 7-8).  Thus, "it cannot be argued that the selection criteria was changed for the purpose of disadvantaging the plaintiff."  (Id. at 8).[6]

Moreover, Plaintiff has failed to realize that, even if the first evaluation factor had not been altered, he still would not have made the "best qualified" list for this position.  The three individuals whose names were provided to the selecting official, Paula Goode, a white female, Robin Anderson, a black female, and Denny Cruz, an Hispanic male, received scores of 47, 44,

---

[6]       Additionally, Plaintiff does not even allege that Ms. Kelly, who initially suggested excising the qualification, knew of his prior EEO activity.  (Compl. at ¶ 15).  Ms. Kelly made clear before her death that she was not aware of the applicants' races or prior protected activity at the time she ranked them.  (Exh. 5 at 1).

and 44, respectively. (Exh. 7; Exh. 17).[7] Plaintiff received a score of 31. (Id.). For the first criterium, from which the "health physics" portion had been eliminated, Plaintiff received nine out of a possible twelve points. (Exh. 7). Thus, even if he had received a perfect score for the first evaluation factor, he would have a total score of only 34, still well below the scores of the best qualified applicants. Therefore, Plaintiff cannot properly allege that the excising of the "health physics" portion of the first evaluation factor adversely affected him.

### C. **Plaintiff Has Failed to Exhaust His Administrative Remedies**

Plaintiffs seeking to bring claims pursuant to Title VII before the District Court must comply with the statute's administrative exhaustion requirements as a precondition to their suits. See United Airlines, Inc. v. Evans, 431 U.S. 553, 555 (1977); Bayer v. Department of Transportation, 956 F.2d 330, 332 (D.C. Cir. 1992) (citing Brown v. General Services Administration, 425 U.S. 820 (1976)). Indeed, only upon exhaustion of administrative proceedings is a complainant entitled to a trial de novo. Chandler v. Roudebush, 425 U.S. 840 (1976); Saksenasingh v. Department of Education, 126 F.3d 347, 350 (D.C. Cir. 1997).

In the context of federal discrimination claims, "exhaustion" requires the plaintiff to file an administrative complaint. Kizas v. Webster, 707 F.2d 524, 543 (D.C. Cir. 1983), cert. denied, 464 U.S. 1042 (1984). The requirement that an aggrieved employee must first seek relief with the agency that has allegedly engaged in discrimination is "not a mere technicality." Park v. Howard University, 71 F.3d 904, 907 (D.C. Cir. 1995), cert. denied, 519 U.S. 811 (1996).

---

[7]    The fact that an African American individual and a man were two of the three individuals deemed most qualified for this position also undercuts Plaintiff's theory that the evaluation factor was altered to disadvantage blacks and men.

11

Rather, "it is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." <u>Kizas</u>, 707 F.2d at 544. The "sine qua non for civil action is the filing of a complaint [with the agency]." <u>Porter v. Adams</u>, 639 F.2d 273, 276 (5th Cir. 1981); <u>see also Brown</u>, 425 U.S. at 833 (noting that Title VII "provides for a careful blend of administrative and judicial enforcement powers.").

Moreover, the mere act of filing of an administrative complaint, or even several complaints, does not provide license for a plaintiff to bring claims before the District Court that were not raised or considered by the agency. <u>See Park</u>, 71 F.3d at 907 (a Title VII lawsuit is limited in scope to claims "reasonably related" to the allegations of the administrative charge and must arise from the administrative investigation). Thus, claims that a party has failed to raise at the administrative level are properly dismissed pursuant to Rule 12(b)(6). <u>See id.</u> (Court dismisses hostile work environment claim not raised in plaintiff's EEO complaint).

Plaintiffs also must raise their administrative charges in a timely manner. <u>See Kizas</u>, 707 F.2d at 543; <u>Childers</u>, 44 F.Supp.2d at 17. Specifically, a plaintiff must seek EEO counseling within 45 days of the discriminatory event. 29 C.F.R. § 1614.105(a)(1). The Supreme Court has cautioned that congressionally mandated time requirements "for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." <u>Baldwin County Welcome Center v. Brown</u>, 466 U.S. 147, 152 (1984) (per curiam). The Court has also emphasized that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S.101, 110 (2002).

While Plaintiff has filed numerous EEO complaints during his tenure at the EPA, he failed to file complaints alleging that he was discriminated or retaliated against when: supervisory duties were taken away from him as a result of his altercation with a student intern, (see Exh. 13)   Moreover, while Plaintiff did file a complaint regarding the admonishing email that his supervisor sent to him in June 2004, (see Exh. 24), he did not do so until nearly one year after the email was sent.  (Id.).  Thus, in addition to Plaintiff failing to plead harms which rise to the level of actionable claims under Title VII, these specific claims are also properly dismissed due to Plaintiff's failure to properly exhaust his administrative remedies.

## CONCLUSION

Plaintiff's Complaint should be dismissed because his claims fail to allege actions which give rise to an inference of discrimination or of retaliation as required by Title VII.  Moreover, several of Plaintiff's claims have not bee raised or have been raised untimely at the administrative level, and thus, are not exhausted and are properly dismissed on this basis.


                    Respectfully submitted,

                    ___/s_/_____
                    JEFFREY A. TAYLOR, D.C. BAR #498610
                    United States Attorney


                    __/s/_____
                    RUDOLPH CONTRERAS, D.C. BAR #434122
                    Assistant United States Attorney

___/s/_____
ALEXANDER D. SHOAIBI, D.C. BAR #423587
Assistant United States Attorney
5O1 Third Street, N.W., Rm E-4818
Washington, D.C.  20530
(202) 514-7236

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Motion to Dismiss or in the

Alternative for Summary Judgment, the memorandum of points and authorities with exhibits in

support thereof, the Defendant's statement of material facts, and proposed order has been made

by mailing copies thereof to:


James T. Walker
136 West Quail Lane
La Plata, Maryland 20646


on this _____day of February, 2007.


_____
Alexander D. Shoaibi
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.; Room E4218
Washington, D.C.  20001
(202) 514-5864

15