UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES T. WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-2118 (ESH/DAR) |
| ) | |
| STEPHEN JOHNSON, Administrator ) | |
| U.S Environmental Protection Agency, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACT AS TO WHICH THERE IS NO GENUINE DISPUTE

In support of the Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment, and pursuant to Local Rule 7.1(h), Defendant submits the following statement of material fact to which there is no genuine dispute:

1.  In December 1997, Plaintiff applied for the position of Environmental Scientist in EPA's Office of Children's Health Protection pursuant to vacancy announcement 8-OA-9014. (Compl. at ¶ 15; Exhibit "Exh." 1; Exh. 2 at ¶ 2).

2.  The first evaluation criterium for this position was demonstrated "[s]kill in applying the principles, theories and practices of environmental science and health physics." (Exh. 1).

3.  Upon review of vacancy announcement 8-OA-9014, Margaret Kelly, the subject matter expert ("SME") for this position, who was responsible for ranking the applicants for submission to the selecting official, suggested to the selecting official, Ramona Trovato, that the "health physics" portion of the first evaluation criterium was unnecessary to the position and should be

eliminated. (Exh. 3 at 1-2; see Exh. 4 at 1-2).

4.     When the decision to remove this portion of the first evaluation criterium was made, neither Ms. Trovato nor Ms. Kelly were aware of the identities of the applicants for the Environmental Scientist position. (Exh. 3 at 2; Exh. 8 at 3; see Exh. 4 at 1-2).[1]

5.     Ms. Trovato was apprized that she could remove the "health physics" factor from the assessment process as long as all applicants were evaluated on the same basis without revising and reissuing the vacancy announcement. (Exh. 3 at 2). Thus, the announcement was not reissued. (Id.).

6.     All of the applicants for the Environmental Scientist position were evaluated based on the same criteria. (Exh. 6; see Exh. 3 at 2).

7.     The three individuals deemed "highly qualified" for the position were Paula Goode, a white female, Robin Anderson, a black female, and Denny Cruz, an Hispanic male. (Exh. 17; Exh. 5).

8.     Plaintiff was ranked sixth of the nine candidates and was not placed on the merit promotion certificate or "best" qualified list for this vacancy announcement. (Exh. 7; Exh. 17).

9.     Plaintiff received the same score, nine out of a possible twelve points, for the first

---

[1] Because Ms. Kelly is now deceased, she is not able to declare that she was unaware of the applicants' identities at the time she identified the problem with the vacancy announcement. However, prior to her death, Ms. Kelly told the EEO counselor investigating Plaintiff's complaint that the "health physics" portion of the first evaluation factor was removed before she received the package of applications. (Exh. 8 at 3). Additionally, Francine Butler, Lead Personnel Management Specialist has declared her belief that Ms. Kelly examined the vacancy announcement prior to the close of the application period and that Ms. Butler did not make any applications available to Ms. Kelly until after this time. (Exh. 4 at 1). Ms. Butler also made clear that normal procedures would dictate such a sequence of events. (Id. at 2). Moreover, Ms. Kelly was not aware of any of the applicants' races or prior EEO activity at the time she ranked them. (Exh. 5 at 1).

evaluation criterium, from which the "health physics" portion had been eliminated, as Paula Goode, the person selected for the position. (Exh. 7; Exh. 3 at 2). However, Plaintiff scored significantly lower than Ms. Goode, as well as several other applicants, in several of the other four criteria, which had not been altered in any way from the original announcement. (Exh. 7). Thus, even if Plaintiff had been given a perfect score for the first evaluation factor, he would not have made the merit certification, such that he could have been considered for the position. (See id.).

10. On July 14, 1998, Plaintiff filed a formal complaint alleging that his non-selection for the Environmental Scientist position constituted discrimination against him based on his race, color, sex, and reprisal. (Exh. 9; Compl. at ¶ 15). The agency accepted this complaint for investigation on February 2, 1999; however, it dismissed Plaintiff's reference to a "continuous pattern of discrimination" because Plaintiff had failed to address this issue with the EEO counselor. (Exh. 10).

11. On June 22, 2005, the Equal Employment Opportunity Commission (EEOC) found no discrimination in the selection process for this position and granted the agency's motion for summary judgment against the Plaintiff. (Exh. 18).

12. On August 27, 1998, Plaintiff and a student intern that he was mentoring had an altercation that resulted in the student reporting to management that Plaintiff had approached her in a threatening manner. (Exh. 11 at ¶ 2, see Exh. 12 at ¶ 4; Compl. at ¶ 9). Plaintiff in turn alleged that the student had "defam[ed] . . . my personal and professional integrity and character" by alleging that Plaintiff had "raped" her. (Exh. 11 at ¶ 3; see Compl. at ¶ 9).

13. A member of the Labor and Employee Relations Staff interviewed both Plaintiff and the

intern and suggested to management that both be sent home for the remainder of the work week, which constituted ten work hours, as a "cooling off" period. (Exh. 12 at ¶ 4). As a result of this suggestion, Plaintiff was placed on ten hours paid administrative leave. (Exh. 11 at ¶ 2; Exh. 14 at 1). The student intern was also asked to leave work until the following Monday; however, she was not placed on administrative leave because, as an intern, she was not subject to EPA's leave provisions. (Exh. 14 at 1). When Plaintiff and the intern returned to work on August 31, 1998, they were instructed to have no interaction with one another. (Exh. 14 at 2; Exh. 15). Both were also instructed to refrain from any actions which would "antagonize, 'act out' residual anger or frustration, or it will be a disciplinary matter." (Exh. 15 at 1).

14.   No blame was assigned as a result of the altercation between Plaintiff and the student intern, (Exh. 11 at ¶ 5; Exh. 12 at ¶ 5), and no disciplinary action was taken against Plaintiff. (Exh. 12 at ¶ 6; Exh. 14 at 3). Plaintiff was informed that the investigation had been closed without any definitive findings. (Exh. 12 at ¶ 6; see Exh. 20 ("this matter has not and will not be recorded in the official personnel file")).

15.   On July 13, 1999, the agency accepted for investigation Plaintiff's formal complaint that he had been discriminated against based on his race, color, and sex when he was placed on ten hours of administrative leave following the complaint lodged against him by the student intern. (Exh. 13).

16.   On September 25, 2001, the EEOC dismissed Plaintiff's complaint on the basis that he had "failed to identify a harm or loss with respect to a term, condition, or privilege of his employment as a result of the above cited incident." (Exh. 19 at 2).

17.    Plaintiff was instructed by management to "let [the matter of his altercation with the

intern] drop." (Exh. 14 at 3; see Exh. 15). He was also admonished that, should he personally decide to pursue the conflict further, he should take care not to "drag[] EPA into it." (Exh. 20). Indeed, the Labor Employee Relations representative, who investigated the incident, "entreated [Plaintiff] to discontinue his pursuit of the matter because it was no longer an issue for the agency. What is more, [the representative] told [Plaintiff] to refrain from conduct which might imply that he was acting on behalf of EPA in a matter he had no authority to look into." (Exh. 21 at 1-2).

18. Despite these instructions, on October 29, 1998, Plaintiff sent a letter, on official EPA letterhead, to the President of the intern's university. (Compl. at ¶ 10; Exh. 16). Plaintiff did not receive clearance or permission from EPA management to send such a letter. (see Exh. 14 at 3 ("NCEA management found out about this letter only after its receipt by the University and subsequent telephone complaints of harassment by [the student intern].")).

19. In this letter, Plaintiff alleged that "there is strong evidence to suggest" that the intern "violated federal statutes" by making "false statements during her interview and on her application for internship with the EPA" regarding her never having been arrested or convicted of a felony offense. (Exh. 16 at 1). He also claimed that the intern provided information on her resume regarding her contribution to published works that Plaintiff was unable to "substantiate." (Id.) Plaintiff requested that the university provide him with proof regarding the intern's published works and that she had not been previously convicted of a felony. (Id. at 2). Moreover, Plaintiff threatened that, if he did not receive this proof "within thirty working days," he would "forward this matter to EPA's Inspector General's office for investigation." (Id.). Plaintiff further indicated that he would request that the Inspector General "investigate any

possible role Dr. Tony Whitehead may have had in [the intern's] actions and behavior[.]" (Id.).

20.     Upon learning of the university's receipt of Plaintiff's letter, EPA management evaluated several disciplinary options and elected to issue a written reprimand to the Plaintiff on December 3, 1998. (Exh. 21 at 2; Exh. 14 at 3; Exh. 22). This letter was to be placed in Plaintiff's official personnel folder for a period not to exceed two years. (Exh. 22 at 3). However, when management sought to remove the letter from Plaintiff's file a few months prior to the two-year period, it was determined that Plaintiff's file did not contain the letter and, apparently, the letter had never been placed in the file. (Exh. 12 at ¶ 10, 13). Plaintiff was informed of this fact. (Exh. 12 at ¶ 10).

21.     On February 9, 1999, Plaintiff filed a formal complaint alleging that he was discriminated against on the basis of his race, color, and reprisal when he was issued the December 3, 1998, letter of reprimand. (Exh. 23).

22.     On June 22, 2005, the EEOC found that Plaintiff had failed to evidence any discrimination in the issuance of the reprimand and granted summary judgment for the agency. (Exh. 18).

23.     On June 25, 2004, Plaintiff's supervisor sent him an email criticizing Plaintiff's use of a "global" email to allege that the issuance of certain cash awards by management appeared to be discriminatory and a conflict of interest. (Compl. at ¶ 14; Exh. 24 at 6). Plaintiff failed to seek EEO counseling regarding this email until May 3, 2005. (Exh. 24 at 5). Thus, by letter dated July 29, 2005, EPA's Office of Civil Rights rejected Plaintiff's complaint regarding this email as untimely. (Id. at 10). This letter further indicated that dismissal was appropriate because Plaintiff "identified no harm [he] suffered as a result of receiving the June 25, 2004, email." (Id.

at 11).

          Respectfully submitted,

          \_\_\_/s\_/_____
          JEFFREY A. TAYLOR, D.C. BAR #498610
          United States Attorney


          \_\_/s/_____
          RUDOLPH CONTRERAS, D.C. BAR #434122
          Assistant United States Attorney


          \_\_/s/_____
          ALEXANDER D. SHOAIBI, D.C. BAR #423587
          Assistant United States Attorney
          5O1 Third Street, N.W., Rm E-4818
          Washington, D.C.  20530
          (202) 514-7236