# Exhibit 3

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE

|  |  |  |
|---|---|---|
| JAMES WALKER, | ) | |
| Complainant, | ) | |
| | ) | EEOC Case No. 100-A1-7258X |
| v. | ) | Agency Case Nos. 98-0092-HQ; 99-0025-HQ; |
| U.S. ENVIRONMENTAL PROTECTION | ) | 99-0031-HQ |
| AGENCY | ) | |
| Agency. | ) | April 24, 2001 |
| | ) | |

## DECLARATION OF E. RAMONA TROVATO

I, E. Ramona Trovato, make the following statement, with knowledge that any knowing material false representation on my part, would subject me to a charge of perjury.

It is my understanding that Complainant alleges that he was discriminated against on the basis of his race and for reprisal for his prior equal employment opportunity (EEO) advocacy when he was not selected for the position of environmental scientist in the Office of Children's Health Protection (OCHP) under Vacancy Announcement No. 8-OA-9014. At the time of this announcement, I was the Director of OCHP, and, in that capacity, I served as the Selecting Official on Vacancy Announcement No. 8-OA-9014.

I did not personally prepare the evaluation criteria for the environmental scientist position, instead, I communicated to a personnel specialist the nature of the work that the position would demand. The personnel specialist then prepared a position description, including the evaluation criteria, on that basis. After my superiors endorsed my decision to fill the environmental scientist position, the relevant solicitation materials were sent to the Office of Human Resources and Organizational Services. In that office, Francine Butler, a member of the Human Resources Staff for the Office of the Administrator, assembled and published the vacancy announcement.

As part of the selection process, Margaret Kelly, the Regulatory Affairs Team Leader in OCHP, acted as the Subject Matter Expert. During Ms. Kelly's review of Vacancy Announcement No. 8-OA-9014 and the other solicitation materials developed by my office, she identified an evaluation criteria that she did not consider appropriate. Ms. Kelly advised me that she did not regard experience in the field of "health physics" to be a necessary aspect of the

environmental scientist position that I sought to fill. At this time, I know for certain that I was ignorant of who might have applied.[1]

Based on Ms. Kelly's recommendation, my office explored the necessity for revising and reissuing the vacancy announcement. We were advised, however, that as long as all applicants were evaluated on the same basis, we could delete experience in "health physics" as a factor in the assessment process, but would not have to readvertise the position. We chose, therefore, not to issue a revised vacancy announcement.

After the close of the application period under Vacancy Announcement No. 8-OA-9014, it is my understanding that Ms. Butler forwarded to Ms. Kelly the application packages of a number of candidates. As the Subject Matter Expert, Ms. Kelly's responsibility was to rate all of the candidates and forward to me the ones that she considered the most highly qualified. I recall that Ms. Kelly sent three names to me for my consideration, and that the candidate that she had rated the highest was Ms. Goode. I do not recall either of the other highly qualified applicant's names, but I do know that Complainant was not one of them.

I had worked with Ms. Goode and knew personally of the high quality of her work and of her professional excellence. My personal familiarity with this candidate, coupled with Ms. Kelly's assessment that she was the most qualified applicant, persuaded me to offer Ms. Goode the environmental scientist position. I made this decision without interviewing her or either of the other two applicants whose names Ms. Kelly had forwarded to me. Ms. Goode has proven to be a most excellent selection.

With respect to Complainant's allegation that his non-selection was based on his race, only if Ms. Kelly knew of his race and deflated her rating of him on that basis could there be any validity to such an accusation.[2] Since I never even knew that Complainant was an applicant until after the selection process had been completed, it would have been impossible for me to have discriminated against him in any manner.

I also understand that Complainant has alleged that I had knowledge of his prior EEO

---

[1]Other than the selectee, Paula Goode, the two other highly qualified candidates that Ms. Kelly referred to me, and Complainant, I have never had any knowledge as to who else applied for the position. And, I only learned of Complainant's candidacy after the conclusion of the selection process, when he filed his discrimination complaint against me. Prior to the time that I was informed of that complaint, I had no knowledge that Complainant was an applicant on Vacancy Announcement No. 8-OA-9014.

[2]Prior to Ms. Kelly's recent untimely death, I worked closely with her for a number of years, and, on no occasion did I ever observe anything that gave me the slightest reason to question Ms. Kelly's fairness, neutrality, and "color-blindness." Complainant's inference that she discriminated against him on the basis of his race is offensive to me and an insult to her memory.

2

activity and that such knowledge is what prompted me to revise the evaluation criteria to his disadvantage. However, at the time I became the Director of the Office of Radiation and Indoor Air, and, in that capacity, became Complainant's putative supervisor, he was on a detail to the Office of Research and Development (ORD). Complainant never returned from that detail to my office, so I never supervised him during our joint tenures in the Office of Air and Radiation (OAR) nor have I ever supervised him at any other time during our joint tenures in the Agency.

In addition, because I transferred from the Office of Enforcement and Compliance Assurance (OECA) to OAR and, at no prior time, had ever worked in the same office as Complainant, I had no knowledge of his EEO history at the time of my transfer from OECA to OAR. And, during my tenure as the Director of the Office of Radiation and Indoor Air, I only became aware of Complainant when I was advised that my predecessor Office Director had made a commitment to reassign him to ORD and to provide ORD with Complainant's FTE and associated salary and benefits, if, at the conclusion of his one year detail to ORD, that office was interested in permanently retaining him and Complainant wanted to remain in ORD. Although I considered the arrangement unusual, I simply honored my predecessor's commitment when I was advised that ORD wanted to retain Complainant.

I subsequently became aware that Complainant wanted me to promote him to a GS-14 as part of the transfer of his FTE to ORD. Insofar as Complainant had never worked for me and I knew nothing of his capabilities, I refused to effect his promotion. Thus, contrary to Complainant's suggestion that I was familiar with his prior EEO advocacy at the time that I did not select him to fill the environmental scientist position in OCHP, I have never had any familiarity with his EEO history, other than this complaint that he has filed against me.

Furthermore, Complainant suggests that I decided to revise the evaluation criteria to delete experience in the field of "health physics" expressly to disadvantage him. As I previously noted, at the time I made that decision, based on Ms. Kelly's recommendation, I did not know that Complainant was an applicant nor did I know that he had any particular expertise in the field of "health physics." More importantly, however, Complainant's inference is that I subordinated the true needs of my office in order to disadvantage him in the selection process. Based on my discussions with Ms. Kelly, however, it was my sincere conviction that experience in the field of "health physics" was not a prerequisite for successful performance of the environmental scientist position that I sought to fill. Thus, I recognized that maintaining such experience as an evaluation factor could have illegitimately disqualified worthy applicants. Consequently, I was motivated to delete "health physics," not by any nefarious scheme to discriminate against Complainant, but rather by my commitment to ensure the selection of the best qualified applicant.

I regret that Complainant believes that he was victimized by a conspiracy with Ms. Kelly to pervert the fairness of the selection process on Vacancy Announcement No. 8-OA-9014. There is absolutely no truth, however, to such a scurrilous suggestion. To my knowledge, nothing about that selection process was tainted by unfairness or discrimination, and, in the end, I simply chose the candidate that both Ms. Kelly, the Subject Matter Expert, and I honestly believed was the most qualified applicant.

3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on April 24, 2001.

E. Ramona Trovato, Director
Office of Children's Health Protection
Office of the Administrator
US EPA

4