# Exhibit 18



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

1801 L Street, N.W.
Suite 100
Washington, DC 20507
(202) 419-0710
TTY (202) 419-0702
FAX (202) 419-0701
1-800-669-4000

| | |
|---|---|
| James Walker,<br>    Complainant,<br><br>        v.<br><br>Stephen L. Johnson, Acting Administrator,<br>U.S. Environmental Protection Agency,<br>    Agency. | ) EEOC No. 100-2004-00471X<br>) Agency Nos. 98-0092-HQ, 99-0031-HQ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Date:   June 22, 2005 |

## ORDER ENTERING JUDGMENT

    For the reasons set forth in the enclosed **DECISION** dated June 20, 2005, judgment in the above-captioned matter is hereby entered. A Notice To The Parties explaining their appeal rights is attached.

    This office is also enclosing a copy of the hearing record for the Agency. This office will hold the report of investigation and the complaint file for 60 days, during which time the Agency may arrange for their retrieval. If we do not hear from the Agency within 60 days, we will destroy our copy of these materials. The Agency should contact Hearings Clerk Kimberly Byrd at (202) 419-0705 to obtain the investigative record.

It is so ORDERED.

For the Commission:

*[signature]*
Kurt C. Hodges
Administrative Judge
Telephone: (202) 419-0710
Facsimile: (202) 419-0701

1

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing DECISION within five (5) calendar days after the date it was sent *via* first class mail. I certify that on June 24, 2005, I caused the foregoing DECISION to be sent *via* first class mail to the following:

Ronald B. Ballard
Assistant Director
Office Of Civil Rights
EPA
Washington, DC 20460

James L. Walker
9803 Churchill Dr.
Upper Marlboro, MD 20772

Paul Winnick, Attorney-Advisor
Employment Law Practice Group
Finance and Operations Law Office
Office of General Counsel
1200 Pennsylvania Ave., N.W. (Mail Code 2377A)
Washington, DC 20460

Kimberley Byrd
Hearings Clerk

2



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington Field Office          1400 L. Street, N.W., Suite 200
                                                Washington, DC 20005
                                                       (202)419-0710
                                                  TTY (202) 275-7518
                                                  FAX (202) 419-0701

| | |
|---|---|
| James Walker,  ) | EEOC No. 100-2004-00471X |
| Complainant , ) | Agency Nos. 98-0092-HQ,99-0031-HQ |
| v.  ) | |
| Stephen L. Johnson, Acting Administrator, ) | |
| U.S. Environmental Protection Agency, ) | |
| Agency.  ) | |

## DECISION

### I. Procedural History

The Complainant filed formal complaints on or around July 14, 1998, and February 9, 1999, alleging discrimination in violation of Title VII of the 1964 Civil Rights Act, as amended, (hereinafter referred to as "Title VII") when he was involuntarily placed on administrative leave, issued a letter of reprimand and was not selected for the position of Environmental Scientist, Environmental Protection Agency (EPA), Office of Children Health Protection (OCHP) because of his race (black), color (black), gender (male) and in reprisal for prior EEO activity.

On or around December 15, 2000, the Agency requested that an Administrative Judge be assigned to conduct a hearing on the complaints. On or around December 21, 2000, the Complainant filed a class action complaint that included similar issues alleged in his individual complaints. The class complaint was initially assigned to Tonya Ellington Odom, Supervisory Administrative Judge. On or around March 28, 2001, the Agency filed a Motion To Dismiss For Failure To State A Claim/Summary Judgement requesting dismissal of Agency Case No. 99-0025 and that summary judgement be granted in favor of the Agency on Agency Case No.

99-0031-HQ. On April 26, 2001, the Agency filed a Motion For Summary Judgement in Agency Case No. 98-0092-HQ. Judge Odom GRANTED the Agency's motion and dismissed Agency Case No. 99-0025-HQ on the grounds that Complainant failed to state a claim upon which relief could be granted. Judge Odom also remanded the remaining individual complaints to the Agency to be held in abeyance pending the outcome of the class complaint.[1] *See* Decision, Judge Tonya Ellington Odom, September 25, 2001.

During August 2002, the class complaint was reassigned to Administrative Judge Jeanette Walters-Marquez who issued a decision dismissing the class complaint. On or around September 26, 2003, the Agency requested that an Administrative Judge be assigned to conduct a hearing on the two remaining individual complaints. During June 2004, the cases were assigned to Administrative Judge Rebecca L. Dickinson who issued an Acknowledgment & Order authorizing discovery. On or around June 16, 2004, the Agency requested a rescission of the Acknowledgment & Order on the grounds that the parties had already completed discovery on the two remaining individual complaints and that summary judgement motions were pending.[2] The Agency requested that Judge Dickinson rule on the motions, or in the alternative, proceed to a hearing. On June 23, 2004, Judge Dickinson GRANTED the Agency's motion and rescinded her order authorizing discovery. Judge Dickinson informed the parties that the Agency's summary judgement motions were taken under advisement.

On or around January 28, 2005, the two individual complaints (Agency Case Nos. 98-0092-HQ and 99-0031-HQ) were reassigned to Administrative Judge Kurt C. Hodges. Upon initial review, Judge Hodges decided that a hearing needed to be conducted to resolve Agency Case No. 98-0092. However, upon further review of the Report of Investigation, the exhibits and affidavits attached therein, and the pending summary judgement motions, I have determined that summary judgement is appropriate because: 1) the investigative record has been adequately developed; 2) there are no genuine disputes of material fact or genuine issues of credibility that need to be resolved at a hearing; 3) a decision can be rendered without the AJ making findings of fact; and 4) the parties have been afforded ample opportunity to engage in and complete discovery prior to filing their

---

[1]  Judge Odom determined that two of the individual complaints (Agency Case Nos. 98-0092-HQ, 99-0031-HQ) were subsumed by the class complaint and were not ripe for summary disposition.

[2]  The Agency's Summary Judgement Motion in Agency Case Nos. 99-0031-HQ and 98-0092, HQ was received at the WFO on or around March 28, 2001, and April 26, 2001, respectively. The Complainant's Opposition to both motions was received on or around June 22, 2004.

submissions. *See Petty, Jr. v. Department of Defense*, EEOC Appeal No. 01A24206 (July 11, 2003).

Therefore, summary judgement is **GRANTED** in favor of the Agency on the remaining individual complaints.

**II.    Undisputed Facts**

The following material facts are undisputed:

1. The Complainant is a black male, who at all times relevant to the Complaint was employed as a GS-13, step 10, Environmental Scientist in the National Center for Environmental Assessment-Washington Office (NCEA-W) in EPA's Office of Research and Development (ORD). (ROI, Exhibit 14)

2. Prior to being employed in NCES-W, Complainant was employed in the Office of Radiation and Indoor Air in EPA's Office of Air and Radiation (OAR), also as an Environmental Scientist. In January 1995, Complainant was detailed from OAR to ORD, and, effective September 30, 1995, he was permanently reassigned from OAR to ORD. Complainant never returned to work in OAR after his initial detail to ORD and has remained in NCEA-W ever since. (ROI, Exhibit 14 and Summary Judgement Motion, Exhibit 1)

3. On or about December 1997, Complainant applied for a position as a GS-13/14 Environmental Scientist position in OCHP under vacancy announcement number 8-OA-9014. (ROI, Exhibit 6)

4. Ms. Kelly, a white female, was the Subject Matter Expert responsible for rating and ranking the applicants. (ROI, Exhibit 9, Affidavit of Kelly)

5. Subsequent to Vacancy Announcement No. 8-OA-9013's publication, Ms. Kelly reviewed it and advised Ms. Trovato, Director of OCHP of her conclusion that experience in "health physics" should not have been a ranking factor. Ms Trovato concurred with her decision. Ms. Trovato is a white female. (SJ Motion, Exhibit 2, 4)

6. Ms. Kelly gave all of the applicants, including Complainant, a numerical score based on information provided within their application materials. She gave Ms. Paula Goode, a white female, a total score of 47 points, Ms. Robin Anderson, a black female, and Mr. Denny Cruz, a Hispanic male, a total score of 44 points. Complainant was given a total score of 31 points. (ROI, Exhibit 9, Affidavit of Kelly)

7. Ms. Kelly recommended three candidates, including Ms. Goode, to Ms. Trovato for selection. Ms. Kelly did not recommend that Complainant be considered for selection. (ROI, Exhibit 9, Affidavit of Kelly)

8. Ms. Trovato selected Ms. Goode for the Environmental Scientist position. (ROI, Exhibits 9, Affidavit of Trovato)

9. Complainant contacted an EEO counselor to file an informal complaint on or around May 7, 1998. Complainant filed a formal complaint on July 14, 1998.

10. On or around August 27, 1998, Complainant and Kathleen Reed, a summer intern, had a verbal altercation. Management advised both Complainant and Ms. Reed to leave the workplace and not return until the following Monday. Complainant was advised that he would be placed on paid administrative leave. (ROI, Exhibits 42, 43, 44, 49 and 50)

11. On August 31, 1998, both Complainant and Ms. Reed returned to work. Management physically relocated Ms. Reed's office so that she would no longer have to sit near Complainant. In addition, management advised Ms. Reed that she should not have any interactions with Complainant. Complainant was instructed to "keep his distance" from Ms. Reed. (ROI, Exhibits 47, 49)

12. On September 8, 1998, Complainant filed a complaint with EPA's Office of Civil Rights alleging racial discrimination. (Dismissal Motion, March 28, 2001, Attachment 1)

13. Ms. Reed completed her summer internship between September 11 and 21, 1998, and returned to the University of Maryland. Ms. Reed and Complainant had not contact with each other prior to her completion of the internship.

14. On or around September 8, 1998, Complainant sent an e-mail message to Ms. Goode, Director of the EPA Office of Civil Rights, informing her that his summer intern had filed a complaint against him and that he was placed on administrative leave. Complainant indicated that immediately following the "altercation" he sent an e-mail message to Bob Sonawane, his first line supervisor, and Mr. Charles Ris, Deputy Director of the National Center for Environmental Assessment Washington Office, in order to file an official claim against Ms. Reed for defamation of her personal and professional integrity by saying that he raped her in front of his peers and co-workers. Complainant informed Ms. Goode that Mr. Ris informed him that management was not going to investigate it and that he should get over it. (Dismissal Motion, Attachment 1)

15. On October 28, 1998, the Labor Relations and Employment Relations, Office of Human

Resources and Organizational Services (LERS) formally advised management that it was closing its investigation of the Reed altercation and that the investigation had not uncovered evidence that would warrant any disciplinary action against complainant. (ROI, Exhibit 54)

16. On October 29, 1998, on official EPA letterhead, Complainant wrote a letter to the President of the University of Maryland requesting that the university provide him with academic information regarding Ms. Reed. Complainant indicated that she may have violated federal criminal law by misrepresenting her credentials and that her faculty advisor may share culpability. Complainant indicated that he may refer the matter to the Agency's Inspector General. (ROI, Exhibit 70)

17. Management received a copy of the letter and sought advice from the Office of General Counsel (OGC) and LERS as to how to address the matter. (ROI, Exhibit 45)

18. Management issued a formal letter of reprimand on or around December 3, 1998, which would remain in his Official Personnel File (OPF) for two years. (ROI, Exhibit 72)

19. On or around January 14, 1999, Complainant filed an informal complaint. On February 8, 1999, Complainant filed a formal complaint.

Other pertinent facts will be discussed in the decision below.

### III. Analysis

The EEOC's regulations on summary judgment are patterned after Rule 56 of the Federal Rules of Civil Procedure, which provides that a moving party is entitled to summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Where the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. Summary judgment is also appropriate where the party opposing summary judgment fails to establish a genuine issue of fact on an element essential to that party's case and on which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In a discrimination case, an employer can obtain summary judgement in one of two ways. It can demonstrate that the plaintiff's proffered evidence fails to establish a *prima facie* case, or in the alternative, the employer can present evidence that demonstrates a legitimate non-discriminatory reason about which the plaintiff does not create a factual dispute. *Mitchell v. Data General Corp.*, 12 F.3rd 1310, 1316 (4th Cir. 1995). Where the employer then comes forward with a legitimate explanation for its actions, the Complainant must produce specific, substantive evidence of pretext in order to avoid summary judgement.

In the absence of direct evidence of discrimination, the allocation of burdens and order of presentation of proof in a disparate treatment case brought under Title VII is a three-step process. First, the Complainant has the burden of establishing a *prima facie* case of discrimination. If the Complainant meets this burden, then the burden shifts to the Agency to articulate some legitimate non-discriminatory reason for the action that has been challenged. *See McDonnell-Douglass Corp. v. Green*, 411 U.S. 792 (1973). The Complainant must then prove by a preponderance of the evidence that the articulated reason is a pretext for intentional discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

However, if the Agency articulates a legitimate non-discriminatory reason for its actions, the factual inquiry can proceed directly to the third step of the three-step analysis, the ultimate issue of whether Complainant has shown by a preponderance of the evidence that the Agency's actions were motivated by discrimination. *See U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711 (1983); *Padilla v. Dept. Of the Air Force*, EEOC No. 05940634 (June 27, 1995).

1. Non-selection (Agency Case No. 98-0092-HQ)

   a. Agency Burden

Complainant alleges that he was not selected for the Environmental Scientist position because of his race, gender and in reprisal for his prior EEO activity. It is undisputed that Ms. Kelly did not identify Complainant has "highly qualified" for the Environmental Scientist position and did not refer his name to Ms. Trovato for further consideration. Therefore, even though Ms. Trovato was the ultimate selecting official, Ms. Kelly is the individual responsible for Complainant's non-selection. Therefore, the proper focus of the analysis is to determine whether Ms. Kelly had a legitimate non-discriminatory reason for not referring Complainant to Ms.

Trovato for further consideration for the position at issue.

Ms. Trovato indicated in an affidavit she provided to an EEO investigator that she informed a personnel specialist about the nature of the work that the Environment Scientist position would demand and that she prepared the position description, including evaluation criteria. Ms. Trovato also indicated that she contacted Ms. Butler, a member of the Human Resources Staff for the Office of the Administrator, who assembled and published the vacancy announcement.

Ms. Trovato explained that Ms. Kelly acted as a the subject matter expert and reviewed the vacancy announcement and other solicitation materials as part of the selection process. Ms. Kelly identified an evaluation criteria that she did not consider appropriate and advised her that she did not regard experience in the field of "health physics" to be a necessary aspect of the Environment Scientist position. Ms Trovato indicated that during this time period she was unaware of which individuals, including Complainant, applied for the position. Ms. Trovato also indicated that she was advised that as long as all applicants were evaluated on the same basis, she could delete experience in "health physics" as a factor in the assessment process and was not required to re-advertise the position. Ms. Trovato chose not to issue a revised vacancy announcement.

Ms. Trovato also indicated that Ms. Kelly sent her three names of individuals that were "highly qualified" for the position at issue. She explained that Ms. Goode was rated the highest and that she selected her to fill the Environmental Scientist position based on what she knew about the high quality of her work and her professional excellence. She also explained that her selection was based on her personal familiarity with the selectee and Ms. Kelly's assessment that she was the most qualified.

Review of the Merit Promotion Applicant Rating Sheets of the applicants reveals that Ms. Kelly ranked the selectee higher than Complainant on the Merit Promotion Rating Sheet. Specifically, she gave Ms. Goode a higher numerical score in factor numbers two (ability to meet and deal with scientific and non-scientific groups), four (skill in oral communications) and five (ability to perform program management and oversight functions).[3][4]

---

[3] Documentary evidence establishes that Ms. Kelly gave the selectee a score of 3, 4 and 4 for factors 2, 4 and 5, while Complainant was given a score of 1, 2 and 2, respectively.

[4] Documentary evidence establishes that rating factor 2 is ability to meet and deal with scientific and non-scientific groups in other Federal agencies, States, the Congress, and industry on matters pertaining to children's health and environmental threats. Rating factor 4 is skill in oral

Ultimately, Ms. Kelly gave Ms. Goode an overall rating/ranking score of 47 and Complainant an overall rating/ranking score of 31. Record evidence indicates that Ms. Kelly identified Ms. Goode, Mr. Cruz and Ms. Anderson as "highly qualified" on the Merit Promotion Certificate that was forwarded to Ms. Trovato. (ROI, Exhibits 23-33) Finally, Ms. Kelly indicated in her affidavit that she had no knowledge of the applicants' race, color or prior EEO activity when she participated in the selection process. (ROI, Exhibit 9, para. 3) Based upon the foregoing evidence, I find that the Agency has met its burden of articulating legitimate non-discriminatory reason for not referring Complainant for further consideration for the Environmental Scientist position. At this point, in the face of the employers strong justification, the Complainant must provide specific, substantive evidence of pretext in order to defeat summary judgement.

        b.    Pretext (Race, Sex & Reprisal)

In an effort to establish pretext, Complainant alleges that the Agency's articulated reason for his non-selection, *i.e.*, that he was ranked lower than three other candidates by the subject matter expert lacks credibility. Complainant alleges that Ms. Kelly's and Ms. Trovato's assertions that they decided not to assess the candidates based on rating factor one lacks credibility because documentary evidence demonstrates that Ms. Kelly gave all of the applicants a numerical score for rating factor one. (ROI, Exhibits 23-33) However, I find that this evidence does not create a genuine credibility issue because Complainant did not provide documentary or testimonial evidence to support his assertion that Ms. Kelly stated that she decided that rating factor one, in its entirely, should be removed from the selection process. Instead, testimonial evidence establishes that Ms. Kelly asserted she made the decision to excise the phrase "health physics" from the position description for the Environmental Scientist position. Documentary evidence establishes that Ms. Kelly rated and ranked each candidate on rating factor one without consideration for experience in "health physics." I find that Complainant has not provided specific evidence which creates a genuine dispute of material fact or credibility issue regarding the aforementioned documentary or testimonial evidence.

---

communications in both formal and informal settings. Rating factor 5 is ability to perform program management and oversight functions. (ROI Exhibit 25)

Complainant also alleges that the Agency's articulated reason for his non-selection is pretextual for intentional discrimination as reflected by the fact that he is better qualified than the selectee. At this juncture, it is not appropriate for the trier of fact to substitute his/her judgement for the employer's in deciding which individual was the best candidate for selection. Rather, the trier of fact must determine if Complainant provided either direct or circumstantial evidence which creates an inference of intentional discrimination.

Record evidence demonstrates that Ms. Kelly assigned selectee higher scores than Complainant for rating factors 2, 4 and 5 and the same score for rating factors 1 and 3.[5] This means that the selectee was awarded an overall higher score and was referred to Ms. Trovato for selection based on scores Ms. Kelly gave her in rating factors 2, 4 and 5. Complainant alleges that he was better qualified than the selectee and pointed out that he had an advanced degree in radiation biophysics, had worked at the GS-13 level for approximately 13 years and published at least 20 scientific papers. However, I find that this pretextual evidence does not create a genuine dispute of material fact or credibility issue regarding the specific applicable factors that the Agency relied upon in making the selection for the Environmental Scientist position. Specifically, Complainant did not provide citations to he and the selectee's application materials or other relevant documentary or testimonial evidence, which demonstrated that he possessed the same or a superior level of experience than the selectee with respect to rating factors 2, 4 or 5. I further find that he did not provide any additional circumstantial evidence which created a credibility issue regarding the scores Ms. Kelly assigned to him rating factors 2, 4 or 5.

Also, it is undisputed that Ms. Kelly identified Ms. Goode, Ms. Anderson, and Mr. Cruz as "highly qualified" and referred the names of all three individuals to Ms. Trovato for further consideration. It is also undisputed that Ms. Anderson is a black female and Mr. Cruz is a Hispanic male. I find that this undisputed evidence demonstrates that a black individual and a male were both forwarded to Ms. Trovato for consideration for the Environmental Scientist position. I also find that Complainant did not provide additional circumstantial pretextual evidence which demonstrated that Ms. Kelly possessed an animus against either blacks or men. I do not find that a reasonable fact finder, taken the record as a whole, could infer that Complainant's non-selection

---

[5] Documentary evidence establishes that rating factor 1 is skill in applying the principles, theories and practices of environmental science. Rating factor 3 is skill in written communications to produce study proposals, project plans, scientific and technical papers, and reports.

for the Environmental Scientist position was based on either his race or his gender.

Finally, with respect to his reprisal claim, I find that Complainant did provide sufficient evidence to satisfy the elements of a *prima facie* case of discrimination. However, as mentioned previously, I find that the Agency successfully articulated a legitimate non-discriminatory reason for the adverse action and Complainant was unable to provide pretextual evidence which created an inference that Ms. Kelly decided not to identify him as "highly qualified" for the Environmental Scientist position because of his protected activity.

2. Letter of Reprimand (Agency Case No. 99-0031-HQ)

   a. Agency Burden

Complainant also alleges that he was issued a Letter of Reprimand on December 3, 1998, based on his race, sex and in reprisal for protected activity. Documentary evidence establishes that Complainant was issued the Letter of Reprimand for refusing to comply withy instructions, misrepresenting his status as an official representative of the Agency and for misuse of Agency letterhead for unauthorized business. Specifically, Michael A. Callahan, Director, indicated in a memorandum that the letter was issued because on October 29, 1998, Complainant sent a letter on Agency letterhead to Dr. Clayton Mote, President of the University of Maryland, giving the false impression that he was acting in official capacity on behalf of the EPA. He pointed out that Complainant alleged that Ms. Reed might have been a felon and raised suspicion regarding her credentials as presented in her resume. Complainant also demanded certain personnel-related information from the University and threatened them with an investigation by the Inspector General if they failed to comply. Finally, Complainant implied that Dr. Tony Whitehead, a university faculty member, conspired with Ms. Reed in inappropriate behavior and actions during her tenure at the EPA.

Mr. Callahan also indicated that Complainant had been previously warned that failure to comply with Agency instructions of ceasing contact, refraining from doing anything to antagonize the situation and misrepresenting himself as acting on behalf of or involving the Agency would result in disciplinary action. Mr. Callahan indicated that Complainant refused to drop the matter despite his managers being notified that the case was closed and no recommendation for action was forthcoming due to insufficient evidence and despite Complainant's assurances that no action would be taken if the matter was dropped. (ROI, Exhibit 72) Based

upon the foregoing evidence, I find that the Agency has met its burden of articulating legitimate non-discriminatory reason for imposing discipline. Once again, in the face of the employer's strong justification, the Complainant must provide specific, substantive evidence of pretext in order to defeat summary judgement.

    b.   Pretext (Race, Sex & Reprisal)

After careful consideration of Complainant's pretextual evidence, I do not find that he provided circumstantial evidence which created an inference that he was issued the letter because of intentional discrimination. First, no evidence was provided which created a genuine dispute of material fact or genuine credibility issue regarding the Agency's articulated reasons for imposing discipline. It is undisputed that Complainant sent the aforementioned letter on Agency letter head to the President of the University of Maryland. It is also undisputed that Complainant was warned that discipline would be imposed if he did anything to antagonize the situation between Ms. Reed and himself or misrepresented that he was acting on behalf of the Agency.

Second, Complainant did not provide either direct or circumstantial evidence, which if true, demonstrates that the individual(s) responsible for issuing the letter of reprimand possessed an animus against blacks or men. No additional circumstantial evidence was provided which demonstrated that similarly situated persons outside of Complainant's protected groups were treated differently by the Agency. Also, no additional circumstantial evidence was provided which demonstrated that the official(s) responsible for issuing the letter treated non-blacks or women more favorably with respect to any relevant aspect of employment such as work assignments, leave requests, work schedules, salaries, *etc*. Finally, I do not find that Complainant provided either direct or circumstantial evidence to support his conclusion that he was issued the letter of reprimand in reprisal for his protected activity. Other than his allegation that he participated in prior EEO activity and that he was issued the letter subsequent to that activity, no circumstantial evidence was provided, which if true, demonstrates that the he was issued the letter because of his protected activity. Although the evidence Complainant relies upon is sufficient to demonstrate a *prima facie* case, a reasonable fact finder, taken the record as a whole, could not infer that he was issued the letter of reprimand because of his protected activity.

## IV. Conclusion

I conclude that the Agency articulated legitimate non-discriminatory reasons for the adverse actions and that Complainant did not provide circumstantial evidence which demonstrated that a genuine dispute of material fact or credibility issue exists regarding its justifications. I also find that Complainant did not provide additional circumstantial evidence which created an inference that he was subjected to the adverse actions because of his race, sex or prior EEO activity.

Date: June 22, 2005

Kurt C. Hodges
Administrative Judge

## NOTICE TO THE PARTIES

*TO THE AGENCY:*

Within forty (40) days of receiving this decision and the hearing record, you are required to issue a final order notifying the complainant whether or not you will fully implement this decision. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in a federal district court, the name of the proper defendant in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this decision, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. 1614.403, and append a copy of your appeal to your final order. *See* EEOC Management Directive 110, November 9, 1999, Appendix O. You must also comply with the Interim Relief regulation set forth at 29 C.F.R. § 1614.505.

*TO THE COMPLAINANT:*

You may file an appeal with the Commission's Office of Federal Operations when you receive a final order from the agency informing you whether the agency will or will not fully implement this decision. 29 C.F.R. § 1614.110(a). From the time you receive the agency's final order, you will have thirty (30) days to file an appeal. If the agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the agency's (40) day period for issuing a final order. *See* EEO MD-110, 9-3. In either case, please attach a copy of this decision with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the agency at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the agency.

*WHERE TO FILE AN APPEAL:*

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

BY MAIL:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

BY PERSONAL DELIVERY:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
1801 L Street, NW
Washington, D.C. 20507

BY FACSIMILE:

Number: (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

## COMPLIANCE WITH AN AGENCY FINAL ACTION

Pursuant to 29 C.F.R. § 1614.504, an agency's final action that has not been the subject of an appeal to the Commission or a civil action is binding on the agency. If the complainant believes that the agency has failed to comply with the terms of this decision, the complainant shall notify the agency's EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The agency shall resolve the matter and respond to the complainant in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the agency has complied with the terms of its final action. The complainant may file such an appeal 35 days after serving the agency with the allegations of non-compliance, but must file an appeal within 30 days of receiving the agency's determination. A copy of the appeal must be served on the agency, and the agency may submit a response to the Commission within 30 days of receiving the notice of appeal.