# Exhibit 25

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS BENNETT, :
:
    Plaintiff, :
:
v. : Civil Action No. 03-0435 (ESH)
:
GALE NORTON, Secretary, :
Department of the Interior, :
:
    Defendant. :
_____ :

## MEMORANDUM OPINION

Thomas Bennett, a twenty-three year veteran of the Department of Interior, alleges that his employer discriminated against him because of his age (45 years old) and retaliated against him because he engaged in protected activity in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). In particular, Bennett complains that he was denied a series of promotions because of his age and/or in retaliation for engaging in protected activity. Defendant has moved for summary judgment arguing that as to some of the positions and the claim of retaliation, plaintiff cannot make out a prima facie case, or in the alternative, plaintiff has failed to adduce sufficient facts to permit an inference that defendant's reasons for not promoting him were pretextual. For the reasons set forth below, the motion will be granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff Thomas Bennett was employed at the Department of Interior ("DOI") in the

Bureau of Reclamation for over 23 years.[1] During the relevant time period (1998-1999), he was employed by the Bureau of Reclamation's Division of Programs, Budget and Liaison, Commissioner's Office, where he held the title of Budget Analyst, GS-560-13. He previously had held positions as a Civil Engineer, General Engineer, and Program Analyst.

Since 1994 the Chief of the Budget Division was Robert Wolf, and as of April 1997, Katheleen Wheeler served as the Deputy Chief under Wolf. At the time that plaintiff sought the various promotions at issue, he was 44-45 years old. His supervisor (Wheeler) was over 40 years old, and the chief of the division (Wolf) was 49 years old. (Def.'s Stmt. of Facts ¶¶ 3, 41.)

During the 1998-1999 time frame, plaintiff unsuccessfully sought the following promotions:

1.  *Program Analyst GS-343-13/14 (VAN 98-11 and 98-12) ("GPRA" positions):* In August 1998 vacancy announcements were posted for two positions as Program Analyst. According to the announcement (Def. Ex. 4), the electees were to be responsible for preparing strategic annual plans and performance criteria as mandated by the Government Performance and Results Act ("GPRA"). (*Id.*)

Originally the vacancy announcement set forth a list of five separate knowledge, skills and abilities (referred to as "KSAs") as basic requirements for the positions. Pursuant to personnel regulations, all qualified applications were initially reviewed by an independent Ratings Panel of supervisory-level employees. According to one of the panel members,

---

[1] Apparently plaintiff left the DOI in June 2004.

William Gloor, some of the panel members felt that ## 2, 3 and 5 of the KSAs were too "limiting." This was discussed with Wheeler and the Personnel Specialist, Laurie Johnson. Thereafter, those three items were discarded. (Def. Ex. 6 (Gloor Aff.) ¶ 5.)

After the KSAs were reduced in number, the Ratings Panel submitted a list of the best qualified to Wheeler. The panel did not include the plaintiff on the list. (Def. Ex. 8.) In December 1998 Wheeler chose Janine Velasco and Kerry Whitford, both of whom were in their early thirties. (Pl. Ex. 13.)

2.  *Program Analyst Budget Review Committee (VAN 98-15) ("BRC" position)*: In September 1998 a vacancy announcement was posted for the position of Program Analyst to carry out programs through the Budget Review Committee process. (Def. Ex. 10.) Plaintiff applied for this position, and he and Jim Anderson were ranked the highest with plaintiff receiving a ranking of 73 and Anderson receiving a ranking of 72.5. (Pl. Ex. 6.) Wolf, along with Wheeler, were the selecting officials.[2] In November 1998 they selected Anderson, who was in his thirties. (Def. Ex. 14; Pl. Ex. 10.)

3.  *Supervisory Budget Analyst Positions GS-560-14 (VAN 98-17, 99-6, and 99-7)*. In October 1998 a vacancy announcement was posted for two positions as Supervisory Budget Analyst. (Def. Ex. 16.) Plaintiff applied for these positions. (Pl. Ex. 17.) Plaintiff was ranked fourth on the list of best qualified tied with two other candidates. (Def. Ex. 18.) After reviewing the list, Wheeler decided to cancel the vacancy announcement for 98-17, claiming that she wanted a "broader applicant pool." (Def. Ex. 29 (Wheeler Dep.) at 125.)

---

[2] The selecting officials are not informed of the scores which the applicants receive from the panel. (Pl. Ex. 28 (Johnson Dep.) at 26.)

The positions were thereafter re-advertised as vacancy announcements 99-6 and 99-7. (Def. Ex. 19.) In the re-advertised vacancy announcement, the candidate pool was expanded from Bureau-wide to government-wide, and the positions were expanded from GS-14 to GS-13/14. (*Id.*) All original candidates were considered again without having to reapply. (Def. Ex. 29 (Wheeler Dep.) at 125-30.) Bennett was again included on the best qualified list, but in May 1999, Louis Mauney and Shelly Wiser, both of whom were under 40, were chosen for the positions. (Def. Ex. 21.) The selecting officials were Wolf and Wheeler, assisted by Efraim Escalente, Manager, Accounting and Finance Services (Def. Ex. 21; Def.'s Stmt. Facts ¶¶ 34-35.)

In January 1999 plaintiff filed an informal EEO complaint of discrimination against Wolf and Wheeler, and in April 1999, he filed a formal complaint of discrimination. In addition, in March 1998, he signed an affidavit supporting a co-worker's EEO action. (*See* Def. Ex. 2 (Bennett Aff.); Pl. Exs. 24, 25 (Wyevetra Jordan Affs.).)

On February 28, 2003, plaintiff filed this action alleging discrimination and retaliation with respect to the positions he applied for in late 1998 and early 1999.[3] He also alleges that he has been retaliated against because of his EEO activity insofar as he has been publicly humiliated, did not receive a performance award, has been the subject of increased scrutiny and suffered a decrease in responsibilities. (*See* Pl.'s Stmt. Facts ¶¶ 78-82.)

---

[3] In plaintiff's affidavit, he also references the fact that there are many additional positions that he has applied for but was not selected, but that these are currently under investigation and therefore his allegations regarding these openings will not be considered here. (*See* Pl. Ex. 29 (Bennett Aff.).)

-4-

## ANALYSIS

### I. Legal Standard

Under Fed. R. Civ. P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see also Wash. Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).

The nonmovant's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmovant must provide evidence that would permit a reasonable jury to find in her favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [his] obligation to support [his] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v. Johnson*, 1998 WL 164780, at *3 (D.D.C. Mar. 31, 1998), *aff'd*, 1999 WL 825425 (D.C. Cir. Sept. 27, 1999) (citation omitted).

**II.    Discrimination Claim**

Plaintiff alleges that he was not promoted to various positions in violation of the ADEA. The ADEA prohibits an employer from taking adverse actions against an employee "because of such individual's age," 29 U.S.C. § 623(a)(1), but limits the class of persons protected by the statute to those persons 40 years of age and older. *Id.* at § 631(a). To succeed in an ADEA claim, plaintiff "must demonstrate facts sufficient to create a reasonable inference that age discrimination was 'a determining factor' in the employment decision." *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C. Cir. 1982).

To determine whether the plaintiff has met this burden, this Circuit uses the *McDonnell Douglas* framework. *See, e.g., Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999). To establish a prima facie case under the ADEA, plaintiff must show that he (1) belongs to the statutorily protected age group, (2) was qualified for the position, (3) was not promoted despite being qualified, and (4) was disadvantaged in favor of a younger person. *Cuddy*, 694 F.2d at 856-57.

With respect to several of the positions at issue, there is no dispute that plaintiff has made out a prima facie case. In particular, with respect to the BRC position (VAN 98-15), there is no dispute that plaintiff was qualified, he was not promoted and the person who was promoted (Jim Anderson) was nine years younger than plaintiff. Similarly, with respect to the two Supervisory Budget Analyst positions (VAN 99-6 and 99-7), plaintiff has also shown that he was qualified for these positions but that the persons who were promoted were eight years, in the case of Shelly Wiser, and eleven years, in the case of Louis Mauney, younger.

The GPRA positions (VAN 98-11 and 98-12) present a different situation. It is true that the two women who were hired for these positions (Kerry Whitford and Janine Velasco) were younger than the plaintiff, but that is not enough to satisfy plaintiff's burden, since the Ratings Panel did not place him on the best qualified list for either position (Def. Ex. 8), and Wheeler therefore could not have selected him.

As is clear from the affidavits of members of the selecting panel (*see, e.g.*, Pl. Ex. 14 (Mahoney Aff.); Def. Ex. 6 (Gloor Aff.)), the panel ranked the applicants, plaintiff did not make the cut-off score that the panel had established (*see* Pl. Ex. 17 (Madrid Aff.)), and no member of the panel was given any instructions regarding what score plaintiff should receive. (Pl. Ex. 14; Def. Ex. 6.) And, in fact, there is no suggestion that the Ratings Panel discriminated or retaliated in any way against the plaintiff. (Def.'s Stmt. Facts ¶ 15; Pl.'s Reply ¶ 15.)

Plaintiff, nonetheless, argues without support that "while it is true that applicant cannot be selected if he or she is not [on] the Best Qualified List, appearing on a Best Qualified List is *not* a requirement to make out a prima facie case of discrimination. (Pl.'s Opp. at 8.) Plaintiff is, however, mistaken, for where an independent panel decided not to include the plaintiff on the list of the best qualified applicants and that was the list from which the deciding official made her decision, it necessarily follows that plaintiff cannot satisfy the requirement that he was qualified for the position.[4]

---

[4] As explained by the Circuit in *Johnson v. Brock*, 810 F.2d 219, 223 (D.C. Cir. 1987), in a non-promotion case, plaintiff must show as part of his prima facie case that he was qualified for and applied for a promotion and that he was considered and denied the promotion. Here, plaintiff was not considered by Wheeler because he was not put on the list by the Ratings Panel.

-7-

In response, plaintiff attempts to argue that defendant manipulated the selection criteria so as to deprive plaintiff, because of his age, of the opportunity of being chosen by the panel. In particular, plaintiff points to the fact that Wheeler eliminated three KSAs from the selection criteria after the panel had been convened to review the applicants, and based on this event, he argues that it is reasonable to infer a discriminatory motive. (Pl.'s Opp. at 9-10.) The argument collapses because of the undisputed fact that at the time that Wheeler decided to eliminate the three KSAs, she did not know who the applicants for the positions were (Def. Stmt. Facts ¶ 13, Pl.'s Reply ¶ 13), and in the absence of this knowledge, it cannot be argued that the selection criteria was changed for the purpose of disadvantaging the plaintiff.[5/]

Having found that plaintiff cannot make out a prima facie case with respect to the GPRA positions, the Court will grant defendant's motion as to those claims and proceed to consider the remaining positions -- the BRC position filled by Anderson and the two Supervisory Budget Analyst positions filled by Wiser and Mauney -- under the second and third prongs of the *McDonnell Douglas* framework.

As to the second prong, the burden is on the defendant to articulate some legitimate, nondiscriminatory reason for its actions. Its burden is only one of production, and it "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty.*

---

[5/] It is also noteworthy that members of the Ratings Panel were the first to raise with Wheeler the issue that several of the KSAs were too "limiting," and that in response to this concern, Wheeler, in consultation with Laurie Johnson, the Personnel Specialist, decided to eliminate the three KSAs identified by the panel. (Def. Ex. 6 (Gloor Aff.) ¶ 5; Def. Ex. 30 (Johnson Dep.) at 38-40.) In fact, according to Johnson, she advised Wheeler that it was acceptable to exclude particular KSAs and to not re-advertise the positions when Wheeler observed that only two of the five KSAs were most critical to the job. (Def. Ex. 30 (Johnson Dep.) at 38-42.)

*Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) ("[T]he determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment."). Defendant has met this burden here, since Wheeler and Wolf claim that others were chosen for the three positions at issue because they were better qualified than the plaintiff.

The analysis, therefore, must proceed to the final step of the *McDonnell Douglas* test. At this point, plaintiff has the burden of persuasion to show that defendant's proffered nondiscriminatory reason was not the true reason for the employment decision. *Burdine*, 450 U.S. at 256; *see also Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) ("[a]lthough the *McDonnell Douglas* framework shifts intermediate evidentiary burdens between the parties, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff") (internal citations and quotation marks omitted).

"At this stage, if [plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [plaintiff]." *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 27-28 (D.C. Cir. 1997). Pretext may be established "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Pignato v. Am. Trans Air, Inc.*, 14 F.3d

342, 349 (7th Cir. 1994)). "Once the employer has articulated a non-discriminatory explanation for its action, . . . the issue is not 'the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers.'" *Fischbach*, 86 F.3d at 1183. In other words, a district court judge does not sit as a "super-personnel department that reexamines an entity's business decisions." *Id.* (internal citation and quotation marks omitted).

Applying these governing principles, the Court will turn to the remaining promotions at issue. The first such promotion is the BRC position (VAN 98-15) that was filled in December 1998 by Jim Anderson. Three candidates, including Anderson and Bennett, were selected by the Ratings Panel to appear on the "best qualified" list. (Def. Ex. 13.) As argued by defendant (*see* Def.'s Mot. at 16-17), since the position at issue involved the management and implementation of programs through the Budget Review Committee ("BRC") process (*see* Def. Ex. 10), Anderson was the better choice since he had served as a junior staff member to the BRC for two years and had assumed the duties of the prior GS-14 BRC coordinator after he had left (Def. Ex. 29 (Wheeler Dep.) at 163-65), when providing the primary staff work to the BRC for two years, he had interacted with Regional Directors, the Commissioner, the Director of Operations, as well as congressional staff and had more contact with top-level management than plaintiff (*id.* at 90); he had broader experience than plaintiff, having worked with a variety of bureaus within the DOI and the OMB (*id.* at 84-85); and he received a more favorable supervisory evaluation than the plaintiff. (*Compare* Def. Ex. 11 with Def. Ex. 12.)

By contrast, Wolf and Wheeler ranked the plaintiff below Anderson because they felt that he had overstated his experience, he was overly opinionated, and he was less impressive during the interview. (Def. Ex. 29 (Wheeler Dep.) at 88-90; Pl. Ex. 9 (Wolf Aff.) ¶ 12.) Moreover,

-10-

Wheeler believed that Bennett's job duties were less similar to what would be required for the BRC position as compared to Anderson's. (Def. Ex. 29 (Wheeler Dep.) at 162-63.)

While plaintiff acknowledges that Anderson's prior experience with BRC constituted "good experience" for the BRC vacancy (Def. Ex. 27 (Bennett Dep.) at 209), he argues that he was more qualified than Anderson because he had been with the agency for many more years, he scored a half point higher than Anderson on the KSAs, and he had had more relevant experience. (*See* Pl.'s Opp. at 5-7.)

Regarding this debate over qualifications, it is important to note that plaintiff cannot establish pretext simply based on his own subjective assessment of his own performance, for "plaintiff's perception of himself, and of his work performance, is not relevant. It is the perception of the decisionmaker which is relevant." *Smith v. Chamber of Commerce of the United States*, 645 F. Supp. 604, 608 (D.D.C. 1986); *see also Hastie v. Henderson*, 121 F. Supp. 2d 72, 81 (D.D.C. 2000) (finding no genuine issue of material fact where plaintiff provided no evidence "other than her own self-serving and conclusory statement that she completed more work than [her co-worker] --which would permit this Court to conclude that defendant's reason for giving [the co-worker] rather than plaintiff an '[o]utstanding' rating is pretextual"); *Saunders v. DiMario*, 1998 WL 525798, at *4 (D.D.C. August 14, 1998) ("Plaintiff has otherwise offered the type of self-serving allegations that are simply insufficient to establish pretext."); *Amiri v. District of Columbia*, 1989 WL 37155, at *3 (D.D.C. March 21, 1989) ("[Plaintiff] concluded in his own mind that ethnic or national origin discrimination must have been the basis for his failure to be selected and so testified. These self-serving declarations are not credited.").

-11-

Second, and perhaps more importantly, the parties appear to have overlooked the governing precedent for assessing whether plaintiff can show pretext by arguing that he was the better candidate. Even if it were arguable that he was a better candidate, that is simply *not* sufficient. For, as explained by the Circuit in several recent opinions, in a dispute involving relative job qualifications, discrimination will not be inferred absent a showing that plaintiff's qualifications were *far superior* to the successful candidate's. For instance, in *Aka v. Wash. Hosp. Ctr.*, the Circuit noted:

> If a factfinder can conclude that a reasonable employer would have found the plaintiff to be *significantly better qualified* for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate--something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.

156 F.3d 1284, 1294 (D.C. Cir. 1998) (*en banc*) (emphasis added). In that case, Aka's job qualifications were far superior to those of Valenzuela, the candidate selected for a hospital pharmacy technician job. *Id.* at 1299. Aka had nineteen years of experience handling pharmaceutical supplies, compared with Valenzuela's two months of volunteer work at a pharmacy. *Id.* at 1296-97. Aka had a master's degree in business and professional administration with a concentration in health service management, while Valenzuela had no college degree. *Id.* at 1297. Aka's credentials were sufficiently superior to those of the successful candidate to create a jury question as to whether the hospital's proffered reason for its decision was false.

In contrast, in *Stewart v. Ashcroft*, 352 F.3d 422 (D.C. Cir. 2003), there was no such evidence of "*stark superiority of credentials*" between plaintiff and the successful candidate for

the position of Chief at the Department of Justice's Environmental Crimes Section. *Id.* at 429-30 (emphasis added). Stewart had more prosecutorial experience in environmental matters, but Uhlmann -- the successful candidate -- also had signficant prosecutorial experience, with over twenty-five jury trials to his credit. *Id.* at 430. Stewart had two years of service as an Assistant United States Attorney, compared with Uhlmann's six months in that position. *Id.* The Circuit found that these "fine distinctions" were not sufficient to raise a jury question. *Id.*

> Stewart's pointing to differences in qualifications that merely indicate a "close call" does not get him beyond summary judgment. This Court will not reexamine governmental promotion decisions where it appears the Government was faced with a difficult decision between two qualified candidates, particularly when there is no other evidence that race played a part in the decision.

*Id.* at 430; *see also Carter v. George Washington Univ.*, No. 01-7203, slip op. at 2 (D.C. Cir. Oct. 29, 2004); *Edwards v. Principi*, No. 03-50504, 2003 WL 22709001, at *2 (5th Cir. Nov. 18, 2003) (to show pretext, "a plaintiff [must] show a difference in his qualifications superior to that of the person selected so apparent as to virtually jump off the page and slap us in the face") (internal citation and quotation marks omitted). In short, it falls to plaintiff "to address anew the issue of *discrimination*, not to quibble about the candidates' relative qualifications." *Skelton v. ACTION*, 668 F. Supp. 25, 26 (D.D.C. 1987), *aff'd*, No. 87-5353, 1988 WL 156306, at *1 (D.C. Cir. May 12, 1988).

Having carefully reviewed the qualifications of Anderson as compared to those of Bennett, the Court finds no basis for a jury to find that a reasonable employer would have found plaintiff more qualified -- let alone significantly more qualified -- for the BRC position as a Program Analyst. It is simply not sufficient for plaintiff to argue that because of his many years of agency

experience, he should be promoted, since the law does not demand that the employer promote the person with the greatest number of years of experience. Nor can plaintiff point to his consistent failure to be promoted as evidence of discrimination, since there is no evidentiary basis for inferring that defendant was motivated by a discriminatory animus with respect to the many jobs that are not the subject of this suit. (*See supra* note 3.) Finally, it bears noting that Wheeler, Wolf and Bennett are all in their forties, so any claim of discrimination is at best "suspect," *Hardy v. Marriott Corp.*, 670 F. Supp. 385, 392 (D.D.C. 1987), especially given the undisputed fact that Wolf and Wheeler promoted and/or hired individuals who were over forty. (Def.'s Stmt. Facts ¶ 41; Pl.'s Reply ¶ 41; Def. Ex. 29 (Wheeler Dep.) at 180-81.)

In short, none of the supposed disparities cited by plaintiff amounts to a showing that he was significantly more qualified than Mr. Anderson. At most, as in *Stewart*, "[t]his case is about a dispute over job qualifications," and any arguable distinctions cited by plaintiff are simply "too fine" a reed to support an inference of age discrimination. 352 F.3d at 429-30; *see also Fischbach*, 86 F.3d at 1183 ("Title VII liability cannot rest solely upon judge's determination that employer misjudged relative qualifications of admittedly qualified candidates.")

While the analysis set forth in *Aka* and *Stewart* resolves defendant's motion as to the BRC position, it is unclear whether it also disposes of plaintiff's claim regarding the two Supervisory Budget Analyst positions (VAN 99-6 and 99-7) that were filled by Louis Mauney and Shelly Wiser in May 1999. It may well be arguable that plaintiff cannot satisfy the test set forth in these cases, since it appears that the two candidates who were hired had more supervisory experience than plaintiff and had very strong recommendations from their supervisors. (Pl.'s Stmt. of Facts In Dispute ¶¶ 61, 64.) However, a careful review of the record before the Court reveals that the

-14-

facts relating to these positions are so unclear and arguably contradictory as to preclude the granting of summary judgment.

For example, the selecting official (Wheeler) apparently decided to cancel the advertisement after seeing who had applied in response to VAN 98-17 in order to "broaden the pool" of applicants. (Def. Ex. 29 (Wheeler Dep.) at 125.) However, there is at least a suggestion that all of the applicants on the best qualified list (*see* Def. Ex. 18) were over forty (*see* Pl. Ex. 17 (ROI) at 10), and at a minimum, Wheeler was aware that three of the applicants (including Bennett) were in their forties. (Def. Ex. 29 (Wheeler Dep.) at 124.) However, there is confusion in the record regarding the size of the initial best qualified list that was generated in response to VAN 98-17 (*see* Def. Ex. 18, Pl. Ex. 17, and Def. Ex. 29 (Wheeler Dep.) at 121-26); what the age of the applicant pool was and what Wheeler knew about the age of the applicants; and whether Wheeler's decision to re-advertise was motivated by negative evaluations that she received when she called the supervisors of two of the applicants (*id.*), a need to generate more applicants for the two available positions, or a dissatisfaction with the quality of the applicant pool. (*Id.* at 125-30.) It is also unclear why two more positions (VAN 99-8 and 99-9), as well as the ones filled by Wiser and Mauney (VAN 99-6 and 99-7), were posted on February 18, 1999, and whether plaintiff is correct in arguing that the job vacancy at issue was posted multiple times or only twice as argued by defendant. (*See* Pl. Ex. 17 (ROI) at 10; Def.'s Reply at 10.)[6]

---

[6] The positions advertised as VAN 99-8 and 99-9 are not at issue here, since it is undisputed that plaintiff did not apply for these positions. (Def. Stmt. Facts ¶ 38; Pl.'s Reply ¶ 38.) *See Lathram v. Snow*, 336 F.3d 1085, 1089 (D.C. Cir. 2003) (finding that "an element of a prima facie case of discriminatory non-promotion is that the plaintiff *applied for* and was denied an available position for which he/she was qualified") (internal quotation marks and citation omitted). However, the re-advertisement of the Supervisory Budget Analyst positions could be relevant to the issue of whether the employer's proffered explanation is unworthy of belief, *see Reeves*, 530 U.S. at 148-49, although one cannot know given the confused state of the record.

In short, based on this record, the Court cannot conclude, as argued by defendant (Def.'s Reply at 16), that the cancellation of VAN 98-17 affected all applicants equally, for it may be arguable that the only applicants who were affected were members of the protected class and there is no credible reason for not selecting any of them. Whether this argument has merit cannot be determined at this stage, and thus, the motion for summary judgment as to the Supervisory Budget Analyst positions is denied.

### III.  Retaliation Claim

Plaintiff also claims that Wheeler and Wolf retaliated against him because he filed an affidavit in March 1998 in support of a co-worker's EEO claim (*see* Pl. Ex. 2 (Bennett Dep.) at 24), and because he filed an informal EEO complaint against Wolf and Wheeler in January 1999 and a formal complaint on April 19, 1999. (Def. Ex. 1.)

The *McDonnell Douglas* framework is also applicable to claims of retaliation. *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984). In determining whether plaintiff has made out a prima facie case of retaliation, plaintiff must show "1) that [he] engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).

First, with respect to the GPRA positions, plaintiff cannot make out a prima facie case of retaliation, since as previously explained, he cannot show that he was qualified for the position since he was not included on the best qualified list by the Ratings Panel. *See Morgan*, 328 F.3d at 651 (where plaintiff claims retaliation with respect to a failure to hire, he "must also show: (4) that he applied for an available job; and (5) that he was qualified for that position").

-16-

re-advertisement of these positions as VAN 99-7 and 99-7, it follows that a jury could also infer a retaliatory motive on defendant's part with respect to these positions.

## CONCLUSION

For the foregoing reasons, the Court will grant defendant's motion for summary judgment with respect to plaintiff's discrimination and retaliation claims with respect to the GPRA and BRC positions, but will deny the motion as to the claims as to the Supervisory Budget Analyst positions. A separate Order accompanies this Memorandum Opinion.


ELLEN SEGAL HUVELLE
United States District Judge

Date: November 17, 2004