RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 MAR 13 PM 4: 07

NANCY M.
MAYER-WHITTINGTON
CLERK

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RECEIVED

MAR 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| Dr. James T. Walker, | ) | |
|  | ) | |
|  | ) | |
|  | ) | |
| **PLAINTIFF** | ) | |
|  | ) | |
|  | ) | |
| v. | ) | |
|  | ) | Civil Action |
|  | ) | No.05-2118 (ESH) |
|  | ) | |
|  | ) | |
| Stephen L. Johnson, Administrator | ) | |
| US Environmental Protection Agency | ) | |
|  | ) | |
|  | ) | |
|  | ) | |
|  | ) | |
| **DEFENDANT** | ) | |
|  | ) | |

## J.T.W.'S AMENDED MOTION FOR RECONSIDERATION

On March 9, 2007, Plaintiff filed his motion for reconsideration in this

Court, pursuant to LCr 57.18 (b). He now files and amendment to that motion,

because of some typos. He respectfully asks this Court to reconsider Judge

Robinson's decision and correct a clear error of law to prevent a manifest

injustice. The supporting memorandum is attached.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Dr. James T. Walker,<br><br>**PLAINTIFF**<br><br>v.<br><br><br>Stephen L. Johnson, Administrator<br>US Environmental Protection Agency<br><br><br><br>**DEFENDANT** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action
No.05-2118 (ESH)

## MEMORADUM IN SUPPORT OF J.T.W.'s AMENDED MOTION FOR RECONSIDERATION

On February 6, 2007, Judge Robinson issued an order denying Plaintiff's (hereinafter referred to as "J.T.W.") amended motion to compel discovery of material for litigation of the above captioned case. J.T.W. did not receive the Order until February 27, 2007. Pursuant to LCr 57.18 (b), he respectfully asks

this Court to reconsider her decision and correct a clear error of law to prevent a manifest injustice. In support of his request, he states the following:

## PROCEDURAL BACKGROUND

Plaintiff is a Black African-American male who works as a senior environmental scientist at the United States Environmental Protection Agency ("USEPA"). On October 31, 2005, he, on his behalf, filed the above captioned case to address a continuous pattern of discrimination on the accounts of race, sex, and retaliation, in violation of the Civil Rights Act of 1964, as amended, Equal Employment Opportunity Act of 1992, 42 U.S.C. §2000e-16, and the Civil Rights Act of 1991, 42 U.S.C. §1981a.    In the original complaint, J.T.W. alleged that, since the beginning of his employment at EPA, he has experienced a **continuous pattern of employment discrimination by the Defendant**, due to his personnel policies, procedures, and practices in the **areas of promotion and retaliation** for engaging in EEO activity.

On February 2, 2006, Defendant filed a Motion to Dismiss the Complaint or, in the Alternative, Motion for Summary Judgment and on March 22, 2006, in response to that Motion, J.T.W. filed a Motion for Continuance to Conduct Discovery, from which the Defendant filed his response on March 30, 2006. After J.T.W.'s reply and a subsequent hearing, which was held on April 18, 2006, this Court issued a Minute Order denying without prejudice Defendant's Motion to Dismiss and Motion for Summary Judgment and granted J.T.W.'s Motion for Continuance to Conduct Discovery. Pursuant to FRCP 26(b) (1), J.T.W. submitted

3

only six requests for production of documents. Defendant submitted his response

on August 28, 2006. Because Defendant's response did not comply with Rule

26(b) (1), this Court, on December 8, 2006, Ordered J.T.W. to file his Motion to

Compel Discovery by December 22, 2006, from which the Defendant filed his

opposition on or about January 13, 2007.  On February 6, 2007, Judge Robinson

issued an order denying J.T.W.'s amended motion to compel discovery. He was

served a copy of the Judge's Order on February 27, 2007 at a status hearing. He

hereby responds to that Order.

## STANDARDS

The purpose of a motion for reconsideration is "to correct manifest errors of

law or fact or to present newly discovered evidence." arsco v. Zlotnicki, 779 F.2d

906, 909 (3d Cir. 1985) (citations omitted), cert. denied, 476 U.S. 1171, (1986).

Therefore, "a court may properly grant a party's motion for reconsideration in any

of the following circumstances: (1) the development of an intervening change in

the law, (2) the emergence of new evidence not previously available, or (3) the

need to correct a clear error of law or prevent a manifest injustice." In re TMI

Litigation Cases Consolidated II, 922 F. Supp. 997, 1008 (M.D. Pa. 1996)

(Rambo, C.J.; quoting Cohen v. Austin, 869 F. Supp. 320, 321 (E.D. Pa. 1994);

citations omitted in In re TMI).

## ARGUMENT

I.    **Judge Robinson Allowed the Defendant to Prevail Without Him Meeting the Requirements of Showing Lack of Relevance of the Discovery Sought.**

Pursuant to the Federal Rules of Civil Procedures 26(b) (1) and the standards of this Court, discovery may be obtained by "any party if the information sought is "not privileged" and is "relevant to the claim or defense of any party." This information includes the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things that are "reasonably calculated to lead to the discovery of admissible evidence." *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189,194 (D.D.C. 2003); *see also Mitchell v. Amtrak*, 208 F.R.D. 455, 459 (D.D.C. 2002). The court has the authority to "confine discovery to the claims and defenses asserted in the pleadings." Furthermore, "discovery rules "are to be accorded a broad and liberal treatment." Hickman v. Taylor, 329 U.S. 495,507 (1947). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b) (1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of

broad disclosure." Merrill v. Waffle House, Inc., 227 F.R.D. 467, 470-71 (N.D.

Tex.2005) (quoting Scott v. Leavenworth Unified School Dist. No. 453,190

F.R.D. 583, 585 (D. Kan. 1999)). Likewise, a party opposing discovery based on

burden "must make a specific showing, supported by declaration, as to **why** the

production sought would be unreasonably burdensome." Pleasants v. Allbaugh,

208F.R.D. 7, 12 (D.D.C. 2002) (citing Pro-Football, Inc. v. Harjo, 191 F. Supp. 2d

77, 80 (D.D.C.2002).

In the present case, although the discovery rules were to be accorded a

broad and liberal treatment, Judge Robinson abused her discretion by not allowing

J.T.W. the opportunity to obtain the information that he sought that was "not

privileged" but "relevant " to his claims.   As stated in the above, when the

discovery sought appears relevant, this Court normally requires that the party

resisting the discovery establish a lack of relevance by demonstrating that the

requested discovery does not come within the broad scope of relevance as defined

under Fed. R. Civ. P. 26(b) (1). The Defendant failed to meet this requirement.

Judge Robinson abused her discretion by allowing the Defendant to prevail

anyway.

## II.    Judge Robinson's Ruling was Based on a Mischaracterization of J.T.W.s Complaint.

In the Judge's Order, she stated the following:

> "Plaintiff, in this Title VII, alleges that Defendant retailed against
> him for engaging in EEO activity, and discriminated against him by

6

not selecting him for promotion to a position for which he applied in 1997"

She also stated that :

"No construction of such request could be regarded as reasonable in the context of an action in which Plaintiff seeks relief for alleged retaliation for participation in EEO activity and (2) non-selection for a promotion for which he applied in 1997"

Her characterization of J.T.W.s complaint was wrong. The relevant portion of his

complaint reads as follows:

### I.    Nature of Action

1.    Plaintiff, Dr. James T. Walker, ("Dr. Walker") a Black African-American male employee of the United States Environmental Protection Agency ("the Agency"), on his behalf brings this action to address a continuous pattern of discrimination on the accounts of race, sex, and retaliation, in violation of the Civil Rights Act of 1964, as amended, Equal Employment Opportunity Act of 1992, 42 U.S.C. §2000e-16, and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2.    Dr. Walker alleges that, since the beginning of his employment at EPA he has experienced a continuous pattern of employment discrimination by the Defendant ("EPA Administrator") and his personnel policies, procedures, and practices in the following areas: promotion and retaliation for engaging in EEO activity.

....................................

### IV.   Statement of Claims

#### a.    Count I: There was a Continuous Pattern of Retaliation Against Dr. Walker for Participating in EEO Activity.

9.    On or about August 27, 1998, Ms. Reed ("Reed"), a summer intern from the University of Maryland ("U of M"), while working for Dr. Walker, who, in his **"official"** capacity as a Senior Environmental Scientist with the Agency was Reed's supervisor and project leader, asked Dr. Walker to include her and her advisor's name, Dr. Whitehead, and their publications in a research proposal that was submitted by Dr. Fatimah Jackson, another researcher from the university.  Reed also asked Dr. Walker to include her name

7

on the proposal as a principle investigator and a recipient
of funds.  Dr. Walker refused and told her that it was
against federal law for her to make such a request to a
government official and, because she had done nothing to
finish her project, she had to leave the Agency.  Reed
responded loudly by saying that he had "raped" her and that
she was not going to leave.  Dr. Walker left her cubicle and
returned to his office and called his supervisor, Dr.
Sonawane about the incident.  He later found out that Reed
had told his managers that during the discussion "….**Dr.
Walker had turned towards her in a threatening manner.**" Dr.
Walker, because he was a **"Black African-American Male,"** was
immediately questioned by a panel of White managers, put on
"forced" administrative leave or suspension, and a "Violence
in the Workplace" file was created on him, which still
remains a part of his records at the Agency. This was done
despite the fact that Reed told these managers that Dr.
Walker did not verbally threaten or physically touch her and
there was no evidence or facts to support Reed's allegation.
Reed was not put on administrative leave or suspended, and
was not questioned by a panel of White managers.  In
addition, no "Violence in the Workplace" file was created on
her.  Furthermore, NCEA managers did not contact anyone at
the University of Maryland about Reed and did nothing to
address Dr. Walker's concerns that she violated federal law,
made false allegations about him, and defamed his name by
spurting out among his coworkers that **"he raped her."**
Furthermore, there have been a number of verbal
disagreements between similarly situated white male and
female scientists within Dr. Walker's office, which were
brought to the attention of NCEA managers, but were ignored.
In one instance, for example, a white scientist, Dr. Jim
Holder, during a **heated and loud altercation**, got in the
face of a white branch chief, Mr. Joe De Santis, to
intimidate him over a contract related issue. Dr. Holder was
close enough to the manager to push him backward with his
"large" stomach, as they were arguing. This altercation was
loud enough to be heard through out the office.  Although
this was a clear example of "violence in the workspace,"
nothing was done to either Dr. Holder or the manager, no
"Violence in the Workplace" file was created on either
person, and both were not "forced" to take administrative
leave. In addition to being questioned by a panel of White
managers, put on "forced" administrative leave or
suspension, and creating a "Violence in the Workplace" file,
NCEA managers, and took away his supervisory
responsibilities under the program.    Furthermore, the
program was eliminated. Because of the differences in how
NCEA managers treated Dr. Walker compared to Reed and
similarly situated white scientists in NCEA, Dr. Walker
contacted an EEO counselor and filed a discrimination
complaint on the basis of race and sex. As evidenced below,
since this complaint was filed, NCEA managers have
continuously retaliated against Dr. Walker.

10.     Within days after contacting the EEO counselor
regarding the complaint addressed in paragraph 8 above, Dr.

Walker, in his official capacity as an Agency employee, followed up on the matter regarding Reed's request to be included in Dr. Jackson's research proposal He sent a letter of inquiry ("L of I") to the "U of M", under an EPA letterhead, requesting information about Reed and her scientific and research credentials. The primary purpose of the letter was to determine if there was sufficient evidence to cause him to contact EPA's Office of the Inspector General.   This letter was sent, pursuant to normal Agency procedures and rules and based on the advice of Richard Drummond, an attorney from EPA's Office of General Counsel. On December 3, 1998, Dr. Walker received a Letter of Reprimand (" L of R") from Michael Callahan, Director, National Center for Environmental Assessment-Washington Office ("NCEA-Wash") for sending that letter. Callahan reprimanded Dr. Walker for allegedly refusing to comply with instructions, for misrepresenting his status as an official representative of the Agency conducting official business, and for misuse of Agency letterhead for unauthorized business.   Because there was no evidence to support any of these charges, Dr. Walker alleges that Mr. Callahan issued the "L of R" and put it into his personnel file to retaliate against him for filing previous complaints against him and his managers.

11.The reprisal continued after the letter of reprimand was issued.  On or about June, 2000 Dr. Walker approached his then first line supervisor, Charles Ris, and  asked him why the letter of reprimand was still in his files, since the issuing managers told him that it could be taken out before the recommended two year period ended.  Ris made the following statement: " **I do not know. You are still filing all of those EEO complaints,"** implying that the reprimand remained in Dr. Walker's files because of his EEO activity. As a follow-up, on September 15, 2000, Dr. Walker asked Mike Callahan, his ex-supervisor, to remove the letter of reprimand from his files.  Callahan's answer implied that the letter would remain in his files until December,2000, because of the previous complaints that he filed against him and other NCEA managers.  This is clearly reprisal and a violation of the Civil Right Act.

12.   On or about December, 21, 2000, Dr. Walker filed a class complaint against the Defendant alleging discrimination based on race, sex, and retaliation, which included similar issues that were alleged in the complaints outlined in the above.

13.  As the class complaint was being processed administratively through EEOC, on or about August 20, 2001, Dr. Walker learned that his second line supervisor, Mr. Charles Ris told Mr. Starr, who was an attorney from the Agency's Office of General Counsel, the December 3, 1998 "L of R" that Dr. Walker received. Ris subsequently sent Mr. Starr a copy of the reprimand.  Mr. Starr was the attorney representing the Agency on a class action suit that was filed by Dr. Walker.  According to Agency rules, the "L of

R" should have been removed from Dr. Walker's files close
to 8 months earlier, by December 8, 2000, and not have been
used or referred to by his managers, **unless** they were
taking subsequent adverse **personnel actions** against him.
Mr. Ris, however, violated those rules by referring to it
in a conversation with Starr and by sending a copy to him
for the purpose of discrediting Dr. Walker and his role as
a class agent. Ris sent the "L of R" to Starr to retaliate
against Dr. Walker and to adversely affect his ability to
participate in the class action lawsuit against the Agency.
Mr. Starr could have received all information related to
Dr. Walker's previous EEO activity from files contained in
EPA's Office of Civil Rights.  He, in his brief to the
Equal Employment Opportunity Commission (EEOC), stated the
charges, contained in the letter of reprimand, as facts,
not allegations, and, without any supporting evidence,
defamed Dr. Walker's name and reputation and negatively
impacted his role as class agent.  As a result, the class
complaint was not certified.

14.    While the previously mentioned complaints in the
above paragraphs were still being considered by EEOC, on or
about June, 2004 the Office of Research and Development
published a list containing names of individuals who
received cash awards, as a result of the ORD's STAA
competition.  Dr. Walker, who submitted a scientific paper
for the competition, was a bit suspicious, because the list
primarily contained names of individuals who were either
program directors/managers or persons who controlled the
research "purse strings" in NCEA/ORD, or personal friends
of those individuals. On its face, it appeared to Dr.
Walker that this was a clear conflict of interest situation
appeared to be discriminatory, because the awards were
given to only white scientists and those who were in
position to control EPA funds and actually benefit from the
distribution of those funds or those individuals who were
personal friends of the decision makers in NCEA (For
example, Dr. Jean Parker was one of the recipients, who
most NCEA scientists believe lives with Mr. Ris, who is the
Deputy Director of NCEA-W Office and Dr. Sonawane, who was
also a recipient, was a program manager who was in charge
of managing NCEA funds). On or about June, 2004, Dr. Walker
sent a "global" email to NCEA, ORD mangers, and scientists,
expressing his concerns and asking management to look into
this matter by asking the Office of the Inspector General
to provide a reading on the issue, because on its face, it
appeared to be discriminatory and an apparent conflict of
interest.  In response to the "global" e-mail, on June 25,
2004, under the direction of Drs. Preuss and Alapas, Mr.
Charles Ris sent Dr. Walker an e-mail message admonishing,
reprimanding, and threatening him for sending it.  This e-
mail of admonishment and reprimand from Dr. Alapas and Mr.
Ris has been and is still being maintained in Dr. Walker's
file in NCEA, despite the fact that there is **no** EPA policy
that specifically addresses the proper use of e-mails.  Dr.
Walker alleges that Drs. Preuss and Alapas, and Mr. Ris
issued the e-mail and have maintained it in his file

because of retaliation for his participation in previous
EEO activity and discrimination because of his race. In
contrast to Dr. Walker's e-mail which addressed official
office business, other similarly situated employees within
Dr. Walker's Office have sent and are still sending out
"global" e-mails of personal and non-business nature, but
have not received admonishments, reprimands, or threats
from NCEA managers. Ris' e-mail has adversely impacted Dr.
Walker's ability to directly communicate with other
managers and scientists within and outside NCEA's office.

       **b.**    **Count II: Dr. Walker was not selected for a
GS-13/14 Environmental Scientist Position in
the Office of Child Health Protection because
of His Race, Sex, and Retaliation.**

15.   On or about December 1997, Dr. Walker applied for a
position as a GS-13/14 Environmental Scientist in the
Office of Child Health Protection (OCHP) at the Agency.
Ms. Kelley, a white female, was the Subject Matter Expert
responsible for rating and ranking the applicants and Ms.
Romano Trovato, a white female, who was the Director of
OCHP, was the selecting official.  Ms. Kelley, after having
received and reviewed the applications for this position,
under the direction of Ms. Trovato, changed the selection
criteria by eliminating the "health physics" requirement.
After removing that criterion, and without sending out a
new job announcement and receiving new applications, Ms.
Kelley rated and ranked the applicants, and Ms. Trovato
selected Ms. Goode, a white female, for the position.  In
doing so, these individuals violated both Agency and OPM
personnel regulations. This was done to prevent Dr. Walker
from being the most highly ranked applicant and the most
qualified for the position.  Dr. Walker had the most
experience and expertise in the health physics area, than
the entire applicant pool.  He has previously worked at the
GS-13 level, since 1984, in EPA's Office of Air and
Radiation as an Environmental Scientist, in the health
physics field and has a doctorate in radiation biophysics.
Dr. Walker alleges that Ms. Trovato and Ms. Kelley
discriminated against him because of his race and sex, by
eliminating the "health physics" criterion for the
position, after finding out that he had more experience
than any of the candidates. He also alleges that, because
Ms. Trovato was aware of his prior EEO activity in the
Office of Air and Radiation, she retaliated against him
when she circumvented rules to ensure he was not selected
for the position.

Judge Robinson's mischaracterization of his complaint may be due to her not reading it or her depending on the following untrue statement that was made by Defendant's counsel in his opposition motion:

> **"Plaintiff has not filed the broad continuous-pattern of discrimination case that he alleges in his motion to compel."**

## III. She Abused her Discretion by Ruling that J.T.W.'s Requests for Discovery were Overbroad, Irrelevant and Unduly Burdensome.

In re England, 375 F.3d 1169, 1177 (D.C. Cir. 2004), this Court has ruled that "a party resisting discovery based on relevance "bears the burden of demonstrating that the information sought is not legally relevant." Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash., 103 F.R.D. 52, 58, n.3 (D.D.C. 1984). Likewise, a party opposing discovery "must make a specific showing, supported by declaration, as to **why** the production sought would be unreasonably burdensome." Pleasants v. Allbaugh, 208F.R.D. 7, 12 (D.D.C. 2002) (citing Pro-Football, Inc. v. Harjo, 191 F. Supp. 2d 77, 80 (D.D.C.2002).

Judge Robinson abused her discretion by allowing the Defendant to merely state without proving that J.T.W.s "third, fourth, fifth and sixth requests for production of documents were overbroad and irrelevant and a search for responsive documents would be unduly burdensome."

Despite the Defendant's and Judge Robinson's assertions, J.T.W. asserts that all of the documentation that he had requested, which are related to his tenure in OAR, are relevant and would lead to the discovery of admissible evidence.

First, he filed a complaint in this Court which alleged a continuous pattern of discrimination, which includes the time period he was in both OAR and ORD. Second, his complaint implicates, Romona Trovato, who retaliated and discriminated against him while he was in ORD, due to his OAR EEO activity. Trovato was his second line supervisor in OAR and was aware of his EEO activity involving her predecessor, Margo Oge. Essentially, the basis for one of his current complaints is that she retaliated against him for his previous OAR EEO activity. Therefore, all EEO material related to his tenure in OAR is relevant, and Judge Robinson's ruling is clearly erroneous.

Defendant's and Judge Robinson assertions that the Defendant has produced all records in his possession that are responsive to J.T.W.'s first request is also erroneous. First, although the Defendant produced some of the ROIs, he did not produce the associated "case files" that the OCR generated for each of the complaints that J.T.W. filed against the Agency. The "case files' contain documentation that is not normally contained in the ROIs. The ROIs only contain information that is put into the files, pursuant to the request and want of an EEO investigator, who is paid by the OCR. to himan alleged discriminating official during his tenure in both OAR and ORD. If OCR had destroyed any of those records, then the Defendant should produce evidence of that. Furthermore, J.T.W. is not only asking for records from OCR, but all related records or documents within the Agency that he can use to defeat Defendant's dispositive motions and

prove his allegations of discrimination. He identified the kind of information that he needed in his Request for Continuance to Conduct Discovery.

## IV.    Judge Robinson's Decision will Substantially Harm J.T.W.'s Chances for Defeating Defendant's Dispositive Motions and Going to Trial.

The Court's standards for granting summary judgment are very clear. Accordingly, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits or declarations, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc.,477 U.S. 242, 248 (1986). When considering a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Id. at 255; see also Washington Post Co. v. United States Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).

The requirements needed for a non-moving party to defeat a motion for summary judgment are also clear.  On a motion for summary judgment, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-

moving party is "required to provide evidence that would permit a reasonable jury

to find" in her favor. Laningham v. United States Navy, 813 F.2d 1236, 1242

(D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not

significantly probative," summary judgment may be granted. See Anderson v.

Liberty Lobby, Inc., 477 U.S. at 249-50. To defeat summary judgment, a plaintiff

must have more than "a scintilla of evidence to support his claims."Freedman v.

MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

Regarding Judge Robinson's order denying J.T.W.'s motion to compel

discovery, this court has held that a district court's decisions regarding discovery

may be disturbed "upon a showing of substantial harm to the party seeking relief.

Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 732 (11th Cir.1984).

J.T.W. asserts that Judge Robinson's ruling denying his motion to compel

discovery will substantially harm his chances for defeating any of the Defendant's

upcoming dispositive motion, because he will not be able to obtain the needed

information that is in the Defendant's possession, whcih sets forth specific facts

showing that there are genuine issues for trial.

Pursuant to this Court's Order, J.T.W. submitted a motion to compel the

Defendant to produce the following documents:

> 1. All documents, which are in Defendant's possession, custody, or control
> that are related to all of the EEOC complaints that the Plaintiff has filed
> since 1990.
>
> 2. Personnel files of the following individuals:
>> 1. Ramona Trovato
>> 2. Margo Oge

3. Margaret Oge
4. Bob Sonawane
5. Michael Callahan
6. Paula Goode
7. Kathleen Reed
8. James T. Walker
9. Charles Ris

3. All documents from EPA's Office of Civil Rights files relating to all
EEOC complaints brought against the following individuals:

1. Ramona Trovato
2. Margo Oge
3. Margaret Oge
4. Bob Sonawane
5. Michael Callahan
6. Paula Goode
7. George Alapas
8. Charles Ris
9. David Bussard
10. Peter Preuss
11. Art Payne
12. William Farland
13. Karen Higginbotham

4. Documents from NCEA's electronic files showing all "global" emails
sent by NCEA employees (including managers) since 1995. All documents
identifying all EPA, ORD, and NCEA policies regarding the sending of
"global" emails. All documents in NCEA's possession or files that
identifies all admonishments sent by NCEA managers to NCEA employees
for sending "global" email. All notes and email correspondences made
between Charles Ris and George Alapas, Charles Ris and Peter Preuss, and
George Alapas and his upper management regarding the "global" email
issue.

5. Documents from EPA's Office of Civil Rights files relating to all EEOC
complaints brought against the US EPA by the following individuals:

1. Dr. Jane Caldwell
2. Dr. Marsha Coleman-Adebayo; and
3. Dr. Marsha Marsh.

6. Each and every document or records that the Defendant will rely on to
defend against the Plaintiff's Complaint in this case and indicate to which
Complaint the documents relate.

7. Any document or evidence, which the Defendant will/might consider admissions and/or impeaching evidence or materials.

8. Any and all documents, writings, reports, tape recording, videos, photographs, or other exhibits that the Defendant intends to offer at the trial in this matter.

Defendant, in essence, was not responsive to J.T.W.'s requests, and as illustrated below, this will substantially harm his chances for defeating any of Defendant's dispositive motions:

### a.    Discovery Request #1.

Defendant did not comply with respect to J.T.W. first discovery request and did not produce "all" the records that were in his possession and therefore was not responsive to J.T.W.'s request. J.T.W. and his wife lost their house and all EEO related records due to a tornado in 2002. Not having those records, including the "case files" from the Office of Civil Rights (OCR), will seriously harm his chances in showing/proving that he experienced a continuous pattern of discrimination, which did not change when he went from OAR to ORD. The Defendant, in his opposition motion, admitted that the ROIs are not the only records in his possession that are discoverable and related to J.T.W.'s EEO complaints. However, he refused to provide those records for review. Furthermore, J.T.W. had not only asked for records from OCR, but all related records or documents within the Agency that he can used to defeat Defendant's Motion for Summary Judgment and prove his allegations of discriminations.

Since he identified the kind of documentation and information that he needed in his Request for Continuance to Conduct Discovery, the Defendant has continuously tried to prevent him from obtaining that information:

**b.    Discovery request # II.**

Defendant also did not comply with respect to Plaintiff's second discovery request. As J.T.W. stated in his Motion to Compel Discovery, Defendant objected to this request on the grounds that Paula Goode's personnel file was no longer in his possession, custody, or control and because "Ms. Goode is no longer employed by the EPA." In response, J.T.W. argues that although Paula Goode is no longer with EPA, the Defendant still has access to her EPA files, which are in EPA storage location. Her EPA personnel records are retrievable and, therefore, should be accessible for this request. Defendant has also indicated that the Department of Defense has agreed to make select documents available to J.T.W. ,but he has not given those documents to J.T.W.  J.T.W argues that he is entitled to review all information from her files that is not "privileged" but "relevant to his claim or defense, not just those parts of the files that the Defendant "selects" and "deems" relevant. Furthermore, Defendant's argument that he does not "have no legal obligation to facilitate J.T.W.'s request" fails, because, although the Defendant cannot not facilitate his request, counsel for the Defendant can, because he represents "all" government agencies, including the DOD.

**c.    Discovery request # III.**

J.T.W.'s request for OCR records of line managers was not honored and is

very relevant to J.T.W.'s complaints. Not having those records will seriously harm his chance in showing/proving his allegations of retaliation and discrimination. This information is relevant to showing whether or not the alleged discrimination officials had discrimination complaints brought against them by other EPA staff. As he stated in his Motion to Compel Discovery, all of these individuals listed in his request were/are his line managers and played a significant "role in considering or effectuating the alleged adverse actions in question in this litigation." Furthermore, J.T.W would like access to the full files, without the Defendant selecting only information that he deems relevant.

For Ramona Trovato, Defendant asserts that she never "actually served in any supervisory capacity vis-à-vis Plaintiff's during his tenure in OAR." J.T.W. argues that this statement is incorrect. Not having Trovato's records will prevent J.T.W.'s from being able to show that Trovato was his line manager for approximately six months before he left to go to ORD. Her OPF file will confirm when she was officially assigned to and started working for OAR. Defendant also claims that Margaret Kelley's OPF "will unlikely contain any material relevant to J.T.W.s litigation." J.T.W. disagrees. He recollects that Margaret Kelley worked with Trovato, possibly as a SME, while they were in the OAR. J.T.W. also remembers reading in the record that Paula Goode worked before with both Kelley and Trovato, while they were in OAR. Not having the above requested records will prevent J.T.W. from showing that these folks worked together before Goode applied for and was selected for the position for which he had applied.

19

Furthermore, it will prevent J.T.W. from showing that Trovato and Kelley made false statements in signed affidavits saying that they did not know any of the applicants who had applied for that position.

Despite the Defendant's assertions, Margo Oge does have a connection to the instant litigation. Margo Oge was J.T.W.'s Office Director before Trovato. She was an alleged discriminating official in two of the complaints that J.T.W. had filed against the Defendant during his tenure in OAR. J.T.W. had also filed a complaint with the Office of Special Counsel against Oge for nepotism, which may explain why she was transferred to another office and was replaced by Trovato. Not having Oge's OPF files will prevent J.T.W. from confirming when she left OAR and when she was replaced by Trovato.

Kathleen Reed was a summer intern from the University of Maryland and was working under EPA's Environmental Career's Opportunity (ECO) Program. Despite Defendant's assertions, J.T.W. did not have any altercation with her. J.T.W.'s supervisor retaliated against him and issued a letter of reprimand because he sent a letter of inquiry to the University about Reed making false statements on her employment applications and attempting to influence a government official in contract related matters. Not having Reed's OPF files will prevent J.T.W from proving that she was treated differently. J.T.W alleges that she was, which is the basis for one of his complaints.

**d.    Discovery request # IV.**

J.T.W. asserts that EPA has a backup and archival system in place, which stores all emails. Furthermore, he asserts that all deleted emails are retrievable with little difficulty. Not having access to the information that was requested under this request would harm J.T.W.'s chances in showing that NCEA managers retaliated and discriminated against when, although many non-work related "global" emails were sent out by white staff in his Office, he was the only one who was admonished and given a letter of reprimand for sending a global email that was work related. Furthermore, with regards to the documents identifying EPA, ORD, and NCEA policy, not having those documents will harm J.T.W.'s chances in showing that he did not violate a policy when he sent the email. Furthermore, not having this information will harm his chances of showing that the real reason for the admonishment and the letter of reprimand was because of retaliation and discrimination.

**e.    Discovery Request # V.**

Drs. Caldwell and Marsh, like JTW, works in the National Center for Environmental Assessment and are supervised by the same Office Director, Dr. Preuss. All three individuals are scientists and have filed discrimination complaints against the same office, NCEA, based on retaliation and for failure to promote because of discrimination. Dr. Adebayo, like JTW, is a Black African-American scientist. She has also filed discrimination complaints against the EPA, one of which she has already won, making the USEPA liable for close to ½

million dollars. Not having the information that was requested from Caldwell's and Marsh's OCR files will be harmful in that JTW will not have supportive information showing or proving that he works in an Office environment that condones discrimination. Furthermore, not having access to Dr. Adebayo's OCR files will be harmful in that it will prevent JTW from having supportive information showing that there is an Agency-wide policy and pattern of discrimination against Black African-American scientists, which is condoned by the Defendant.

      **f.**     **Discovery Requests # VI, VII, VIII.**

With regards to the sixth, seventh, and eighth categories of documents, unless the defendant is stating that he will not produce any documents in support of his defense for trial, all of these documents are discoverable and required under the Federal Rules of Civil Procedures. Not having that information will prevent J.T.W. from properly preparing for trial.

**V.**    **Conclusion**

For the reasons set forth in the above, J.T.W. submits that Judge Robinson clearly erred in denying J.T.W.'s motion to compel discovery. Her ruling denying his motion to compel discovery will substantially harm his chances for defeating any of the Defendant's upcoming dispositive motions, because he was not allowed to obtain information from the Agency which sets forth specific facts showing that there are genuine issues for trial. Therefore, J.T.W. asks this Court to reconsider

and modify her Order and compel the Defendant to produce the documents in accordance with J.T.W.'s requests

Respectfully Submitted,

James T. Walker, *Pro Se*
136 West Quail Lane
La Plata, Maryland 20646

I hereby certify that I had called Defendant's counsel notifying him of this amended motion for reconsideration. He did not respond, however.

## CERTIFICATE OF SERVICE

I, James T. Walker, hereby state that, on this date March 13, 2007, I

mailed/emailed a copy of this **"Motion for Reconsideration** " to:

> Alexander Daniel Shoaibi
> Assistant United States Attorney
> 555 Fourth Street, NW
> Room E4218
> Washington, DC 20530

Email:     Alexander.d.shoaibi@usdoj.gov

James T. Walker, *Pro Se*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Dr. James T. Walker,<br><br>**PLAINTIFF**<br><br>v.<br><br><br>Stephen L. Johnson, Administrator<br>US EPA<br><br>**DEFENDANT** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action
No.1:05CV02118
Judge: <u>ESH</u>

## <u>ORDER</u>

UPON CONSIDERATION of Plaintiff's Amended Motion for Reconsideration, Defendant's Response, and Reply, and the record herein, it is on this_____ day of _____, 2007, hereby

ORDERED that Plaintiff Motion shall be, and hereby is, GRANTED.

_____
United States District Judge