### UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| JAMES T. WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-2118 (RMC) |
| ) | |
| STEPHEN JOHNSON, Administrator ) | |
| U.S Environmental Protection Agency, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendant, by counsel, submits the following reply to plaintiff's opposition to defendant's motion to dismiss or, in the alternative, for summary judgment.

## I.     There Exist No Material Disputed Facts with Respect to the Kathleen Reed Incident

Defendant submits that Plaintiff's recitation on the incident between himself and Ms. Reed does not inject any material disputed facts into the dispositive motion calculus. What transpired between him and Ms. Reed is not relevant to the question of whether his being placed on ten hours of paid administrative leave can constitute an adverse action cognizable under Title VII of the Civil Rights Act, as amended.[1] Nor is it relevant to that issue that Plaintiff's

---

[1]     Plaintiff alleges in his Opposition that he was subject to adverse actions in addition to being placed on ten hours of paid administrative leave, such as being relieved of his supervisory responsibilities vis-a-vis the Office of Research and Development's (ORD) minority internship program and being the target of an Agency workplace violence investigation with respect to the Reed incident. Neither of these alleged adverse actions was accepted by EPA for investigation, however, and only the ten hours of administrative leave was investigated. Thus, Plaintiff has failed to exhaust his administrative remedies with respect to the additional adverse actions that he alleges.

management, after Ms. Reed's assertion that Plaintiff had acted towards her in a physically intimidating manner, asked the Office of Human Resources (OHR) to examine the incident.

It would have been irresponsible, in light of Ms. Reed's obvious distress and the seriousness of her complaint, for ORD management not to refer the matter to OHR. In addition, creating a "file" pursuant to such referral was unexceptional and that the retention of that file in accordance with the Agency's record retention policies was mandatory. Furthermore, the ultimate conclusion reached by OHR was that no violence in the workplace incident had occurred. Thus, the record does not reflect negatively on Plaintiff.

With respect to Plaintiff's bald assertion that he was relieved of supervisory responsibilities vis-a-vis ORD's minority internship program, Defendant submits that Plaintiff exaggerates the case. Plaintiff was relieved only of his mentoring duties with respect to Ms. Reed, as one would expect given the level of hostility between them. In addition, Ms. Reed was scheduled to conclude her internship shortly after the incident at issue, and, thus, Plaintiff would not have served in any oversight capacity with respect to Ms. Reed for any appreciable time thereafter. Finally, by his own admission, Plaintiff claims that it was his instruction to Ms. Reed that she would have to leave the Agency imminently that instigated the incident at issue. Defendant submits that it strains credulity for Plaintiff to, in such circumstances, suggest that it was his management who relieved him of supervisory responsibilities over Ms. Reed.

With respect to one of Plaintiff's other assertions of fact, *i.e.*, that his management failed to contact anyone at the University of Maryland regarding his allegation that Ms. Reed had violated federal law, such "fact" is patently immaterial in the context of the instant litigation. Plaintiff did not suffer any adverse action as a consequence of EPA failing to instigate a criminal

2

investigation of Ms. Reed.  Defendant further submits that there exist no circumstances under

which such failing on EPA's part could have harmed Plaintiff in any way.

## II.     EPA's Imposition of Ten Hours of Paid Administrative Leave Upon Plaintiff Cannot Constitute, as a Matter of Law, a Cognizable Adverse Action Under Title VII of the Civil Rights Act of 1964, as Amended

ORD management's decision to send Plaintiff and Ms. Reed to their respective corners

for the few remaining hours of the work week does not constitute an adverse action under either a

pure discrimination or a retaliation theory concerning the Reed incident .[2]  Plaintiff suffered no

loss of income as a consequence of being sent home, nor were his promotion opportunities

adversely affected by his abbreviated absence.  In addition,  the terms or conditions of his

employment were not altered, and he did not suffer any tangible loss similar to those recognized

as a predicate for a cognizable adverse action.  Defendant submits that Plaintiff's failure to allege

such an adverse action is fatal to his *prima facie* discrimination case, and that case should be

dismissed for failure to state a claim.

With respect to Plaintiff's retaliation claim, Defendant concedes that the Supreme Court's

decision in *Burlington Northern* describes the standard for an adverse action in a retaliation

context.  Nevertheless, Defendant submits that the imposition of ten hours of paid administrative

leave cannot satisfy that *Burlington Northern* standard.  After all, the lynchpin of that standard is

_____

[2] Plaintiff alleges that Ms. Reed did not get sent home, as he did.  The record
is undisputed, however, that both Plaintiff and Ms. Reed were told not to report to
work again until the following Monday.  Each was instructed to go home with two hours
remaining on Thursday afternoon and to remain at home for the remainder of the work week.
Merely because Plaintiff claims that Ms. Reed was treated differently than him does not make
that so.  Plaintiff, being himself absent from work for the ten hours at issue, can have no personal
knowledge of Ms. Reed's whereabouts at such time, and ORD managers with such knowledge
have stated under oath that they advised her to absent herself from the office as well for that
period of time.

that the adverse action at issue must be such as would deter a reasonable person from availing himself of his Title VII participation and opposition rights.  However, Defendant submits that being asked to remain home from work, while being paid, for one day and a small fraction of a second, so that tempers may cool and arrangements can be made to preclude any further hostile interactions, would not deter anyone from asserting a Title VII claim.  Defendant submits that it simply beggars belief that such an action was within the contemplation of the Supreme Court as one that could underpin a retaliation complaint.

III.    **There Exist No Facts from which One Could Reasonably Infer that Defendant's Imposition on Plaintiff of the Ten Hours of Paid Administrative Leave was Causally related to His Protected Activity, thereby Defeating Plaintiff's *prima facie* Retaliation Case**

In order to prove a *prima facie* case of retaliation, Plaintiff must show that Defendant imposed an adverse action against him because he engaged in protected activity.  However, with respect to the administrative leave matter, Plaintiff's sole protected activity within any reasonable temporal proximity was his EEO complaint challenging his non-selection for a position with EPA's Office of Children's Health Protection (OCHP).[3]  That complaint, however, was not against any of Plaintiff's ORD managers who played a role in the Reed saga.  Rather, Plaintiff's non-selection complaint was against personnel in the Office of the Administrator (OA), and Plaintiff's ORD managers had no knowledge of nor involvement in that complaint. "Even in employment discrimination cases 'where elusive concepts such as motive or intent are at issue,' this standard compels summary judgment if the non-moving party 'rests merely upon conclusory

---

[3] Plaintiff has a long history of having filed EEO complaints against EPA, but, with the exception of this non-selection complaint, none of his previous ones was made sufficiently close in time to the administrative leave matter to raise a presumption of causality.

allegations, improbable inferences, and unsupported speculation.'" Feliciano de la Cruz v. El

Conquistador Resort, 218 F.3d 1, 5 (1st Cir. 2000) (*quoting* Medina-Munoz v. R.J. Reynolds

Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990))

Thus, the persons responsible for taking the administrative leave action against Plaintiff

lacked a motive for retaliating, insofar as none were implicated in his then extant EEO complaint

nor did any such ORD personnel even know that he had filed such a complaint against another

EPA office. Defendant submits that this want of motive and absence of knowledge on the part of

the ORD managers who placed Plaintiff on ten hours of paid administrative leave is fatal to his

*prima facie* retaliation case.

### IV.  Plaintiff Presents No Facts from which a Reasonable Person Could Infer that Defendant's Non-discriminatory/retaliatory Explanation for Its Imposition of the Ten Hours of Paid Administrative Leave Is a Pretext

Even were the court inclined to find that Plaintiff has proved a *prima facie* case of

discrimination and/or retaliation with respect to the Reed incident, Plaintiff has offered no

rebuttal to Defendant's innocent articulated reason for its imposition of the paid administrative

leave. Plaintiff cannot dispute that a heated exchange occurred between him and Ms. Reed, and

he is not competent to dispute the evidence that she exhibited severe distress when interviewed

by ORD managers and OHR personnel, because Plaintiff did not participate in that process.

Furthermore, Plaintiff does not and cannot dispute that EPA was in the midst of  a

workplace violence initiative at the time of the Reed incident and that, as a consequence, the

Agency took any problematic intimidatory behavior very seriously. Defendant submits,

therefore, that ORD's decision to refer the Reed incident to OHR was not only prudent, but

practically mandatory.[4]   Defendant further submits that Plaintiff has introduced no evidence to

the contrary nor can he show that Defendant's subsequent decision to impose a cooling off period

on both parties was anything other than a tempered and non-punitive reaction to what had

transpired between Plaintiff and Ms. Reed.  Because it is incumbent upon Plaintiff to prove false

Defendant's innocent explanation for the imposition upon Plaintiff of ten hours of paid

administrative leave, and it is indisputable that Plaintiff has produced not a scintilla of evidence

in that regard, Defendant submits that he is entitled to judgment as a matter of law with respect to

Plaintiff's retaliation claim concerning the administrative leave issue.

**V.     There Exist No Material Disputed Facts with Respect to the Letter of Reprimand
         Matter**

Plaintiff does not dispute, nor can he, that he was advised by ORD management to "let

go" of the Kathleen Reed matter.  It is also indisputable that he was told that he suffered no

disciplinary action as a consequence of the incident, that he had been exonerated of any

workplace violence offense, that his managers considered the matter closed, and that since Ms.

Reed's internship had expired and she was no longer working for EPA, he should just put the

episode behind him.  It is also undisputed that Plaintiff was unable to do so, and that his

---

[4] Plaintiff suggests that because ORD management had previously refrained from referring aggressive incidents involving two white employees, for example, that the decision to refer the Reed matter was racially motivated.  With respect to the alleged prior incidents, none of which Plaintiff identifies, Plaintiff does not contend that the employees involved in these confrontations were of a different sex,  that one of the employees claimed that he had been physically intimidated, or that the incident occurred in the midst of a workplace violence campaign.  Thus, Plaintiff has produced no evidence which suggests that he was treated disparately from similarly situated individuals.

management, sensing that, advised him not to involve EPA in his continuing crusade against Ms. Reed.

What is further indisputable is that Plaintiff, after being specifically counseled not to make EPA a party to his personal feud with Ms. Reed, sent, on official Agency letterhead, to the President of the University of Maryland (Ms. Reed's university), a correspondence in which Plaintiff intimated that Ms. Reed and her faculty advisor had committed a criminal offense against the federal government for which he was seeking evidence from the university.

What is further indisputable is that Plaintiff did not consult any of his ORD managers before sending the letter at issue, nor did he present the letter to the OGC attorney from whom he solicited advice, but rather, he only spoke to such lawyer in general terms about an employee's obligation to expose fraud and corruption.  Thus, what is transparent is that Plaintiff behaved disingenuously toward the OGC attorney, from whom he disguised the true facts, and he intentionally sent the letter behind his management's back, recognizing that they would find it objectionable.

There is no dispute that the President of the University of Maryland was upset by Plaintiff's letter and that someone high in Plaintiff's ORD chain of command became apprised of the letter.  Nor is there any dispute that the Agency was compelled to profusely apologize, that Plaintiff's management was extremely embarrassed, and that they caucused to decide an appropriate penalty.  The record evidence reflects that there was due consideration given to imposing a significant suspension upon Plaintiff, but that ultimately, his third tier manager decided only to give him a formal written reprimand.

While Plaintiff claims that what is in dispute is his alleged misrepresentation of his status as an official representative of EPA; his alleged misuse of the Agency letterhead for personal business; and his alleged violation of any EPA policy. These matters are all interpretative rather than factual; that is they are more in the nature of legal conclusions than facts. What Plaintiff did, *i.e*, sending the letter to the President of the University of Maryland, is a matter of record. That he had been expressly advised not to implicate EPA in his fight with Ms. Reed is also an established fact. That ORD management was angry and embarrassed by Plaintiff's unauthorized conduct is an undisputed fact as well, as is the existence of a caucus among ORD managers, OGC and OHR personnel to determine an appropriate disciplinary sanction.

Defendant submits that it is these undisputed material facts that are the sole ones germane to the instant litigation and that Plaintiff has failed to produce any rebuttal evidence with respect to such matters or to raise any other disputed  material facts.

## VI.    Plaintiff Has Produced No Evidence from which a Reasonable Person Could Infer that Defendant's Non-discriminatory/retaliatory Explanation for Its Issuance of the Letter of Reprimand Is a Pretext

By way of evidence, Plaintiff offers nothing other than his receipt of the letter of reprimand shortly after having filed his EEO complaint concerning the paid administrative leave matter. Defendant concedes that such timing is indisputable. However, while such temporal proximity may suffice to satisfy the causality element of a *prima facie* case, such evidence standing alone does not address the legitimacy of Defendant's articulated non-discriminatory/retaliatory justification for issuing the letter of reprimand. Defendant submits (1) that Plaintiff has introduced no evidence suggesting that such justification is false,  and (2) that absent any such evidence, Defendant is entitled to judgment as a matter of law with

8

respect to Plaintiff's letter of reprimand claim.

**VII.    There Exist No Material Disputed Facts with Respect to the Issue of Plaintiff's Non-selection for the Office of Children's Health Protection Position**

In his Opposition, Plaintiff characterizes as *disputed* a number of the material facts identified by Defendant in his dispositive motion as undisputed.  However, with respect to two such undisputed facts, Plaintiff, rather than producing rebuttal evidence, simply states that he has no way of verifying or confirming the fact at issue.[5]  Defendant does not contest that Plaintiff's assertion in such regard is correct, but Defendant submits that his inability to confirm (1) is not tantamount to a rebuttal, (2) arises because Defendant's supporting evidence is sworn testimony of the sole participants in discussions to which Plaintiff was not privy (*i.e.*, Plaintiff has no knowledge), and (3) cannot operate to transform facts that Defendant has identified as undisputed into disputed ones.

As concerns Defendant's undisputed material fact no. 4, Plaintiff's exception is both non-responsive and unsupported.  The evidence is undisputed that Ms. Kelly made her decision to revise the evaluation criteria before she received the applications of the applicants.  Furthermore, it is undisputed that Ms. Trovato never learned of any applicant's identity until after Ms. Kelly had generated the most qualified list.  Thus, the fact as articulated by Defendant is indisputably true.[6]

_____

[5] **See**, undisputed material facts Nos. 3 and 5 incorporated into Defendant's dispositive motion.

[6] Plaintiff alleges that the position was "wired," a proposition for which he offers nothing more than speculation, which Defendant submits is hardly an acceptable substitute for credible evidence.   Furthermore, the point of Ms. Kelly's and Ms. Trovato's ignorance concerning the identity of applicants at the time of the criteria change is that neither was aware that Plaintiff was an applicant, so that their revision decision could not have been

Plaintiff also challenges as disputed Defendant's undisputed material fact no. 6. With respect to such matter, Plaintiff asserts that there exists no evidence that all the applicants were evaluated based on the same criteria. Defendant, however, has produced the grading sheets compiled by the subject matter expert Margaret Kelly, which reflect that each candidate was evaluated against the same criteria. Ms. Kelly also executed a sworn affidavit attesting to the fact that she evaluated the candidates all on the same basis. Defendant submits, therefore, that Plaintiff's blanket assertion of a want of evidence is without any factual foundation.

With respect to Defendant's undisputed fact no. 7, the vacancy announcement advertised the position as a GS-13/14, which meant that anyone with one year in grade as a GS-12 was eligible to be hired as a GS-13, and that anyone with one year in grade as a GS-13 was eligible to be hired as a GS-14. The evidence reflects that Ms. Kelly evaluated the candidates on the same basis irrespective of their relative experience and then forwarded to Ms. Trovato the three applicants that she, as the subject matter expert, had scored the highest. If one of these individuals had possessed insufficient experience to be hired as a GS-14, and Ms. Trovato had decided that such person was whom she wanted to hire, then that employee would have come onboard as a GS-13.

What undisputed fact no. 7 states is that Ms. Goode, Ms. Anderson, and Mr. Cruz were identified by Ms. Kelly as "highly qualified" and their names were forwarded to Ms. Trovato for

_____

made with the intention to disadvantage him. In addition, even if the position had been "wired" for Ms. Goode, and EPA vehemently denies that such was the case, and the criteria were revised to benefit her, pre-selection itself does not constitute discrimination actionable under Title VII.

her consideration.  Ms. Kelly and Ms. Trovato have testified to such effect, the selection records reflect as much, and Plaintiff's exception has no factual foundation.

Plaintiff's response to Defendant's undisputed fact no. 9 is an acknowledgment that the fact is true.   And Plaintiff's objection to Defendant's undisputed fact no. 10 is a *non sequitur*, insofar as Defendant merely asserts what action the Agency took with respect to Plaintiff's "continuous pattern of discrimination" complaint, and Plaintiff, rather than agreeing or disagreeing with such straightforward factual averment, criticizes the reason for EPA's disposition of that complaint.  Defendant submits that such a response does not create a "disputed" fact.

With respect to Defendant's undisputed fact no. 11, the decision of the EEOC is a matter of record, and whether that decision was right or wrong is not in dispute, nor, Defendant submits, can be the fact that the EEOC's non-selection decision was favorable to EPA.

Defendant submits that Plaintiff has failed to effectively challenge any of Defendant's undisputed material facts, and that the court, therefore, is compelled to accept such matters in that light.

In his Opposition, in addition to taking exception to the undisputed material facts identified by Defendant in his dispositive motion, Plaintiff identifies facts that he would characterize as material about which he maintains there is a genuine dispute.  Though Plaintiff may consider the matters that he raises *material*, Defendant submits that they are irrelevant.  For example, in Plaintiff's statement of disputed facts nos. 2 and 3, he details ancient employment history concerning himself and Ms. Trovato.  Plaintiff ostensibly does so to suggest that Ms. Trovato had personal knowledge of his EEO history at the time of his non-selection for the

11

OCHP position.

The record, however, is undisputed that Ms. Trovato never even learned that Plaintiff was an applicant for such position until after he filed his EEO complaint. Consequently, whether or not she was aware of his EEO history is of no moment to the instant litigation.[7]

Plaintiff also suggests in his recitation of disputed facts nos. 4 and 6, which are identical, that the matter of Ms. Kelly's and Ms. Trovato's conspiracy to pervert the integrity of the selection process is in dispute because, despite Ms. Goode's being ineligible, based on time in grade, for a GS-14, she was ranked highly qualified and chosen for the advertised position in OCHP. In addition, however, to introducing no evidence of a conspiracy, Plaintiff has failed to even make an assertion that is meaningful.

As noted previously, Ms. Kelly evaluated all of the candidates on the same criteria and forwarded the three highest scoring applicants to Ms. Trovato. Ms. Kelly did not draw any distinction between the candidates based on their eligibility for a GS-13 or GS-14. Ms. Kelly regarded Ms. Goode as the premier applicant, and she selected her for the position at issue, and Ms. Goode commenced working in OCHP at whatever grade level was appropriate, given her time in grade at her prior position. Defendant submits that there is nothing underhanded or suspicious in the process just articulated and that Plaintiff's unsupported accusation of a conspiracy does not raise a material disputed fact.

Defendant would note that Plaintiff presumably intends to establish disputed facts simply

---

[7] For the record, Defendant denies that Ms. Trovato had knowledge of Plaintiff's EEO history and submits that Plaintiff has produced no evidence to rebut her sworn testimony on the matter. That Ms. Trovato, based on her predecessor's binding commitment, formally signed off for the Office of Air and Radiation on Plaintiff's reassignment to ORD, does not prove that Ms. Trovato was privy to the reason for such reassignment.

by taking exception with the sworn testimony of Agency affiants.[8]  Plaintiff, however, fails to produce rebuttal affidavits or even documentary evidence from which the truthfulness of EPA affiants may be challenged.  Instead, Plaintiff merely relies on speculation and unsupported assertions of "fact" to establish a "dispute."  Defendant submits that such efforts on Plaintiff's part do not a dispute create. Plaintiff's speculation as to management's motives without any corroborating evidence is insufficient to defeat a well-supported motion for summary judgment. See, e.g., Brown v. Brody, 199 F. 3d 446, 458-59 (D.C .Cir.1999)(a plaintiff's mere speculations are insufficient to create a genuine issue of fact regarding an employer's articulated reasons for its decisions and avoid summary judgment).

Plaintiff's statement of disputed facts fails to identify any material matters about which there is a genuine dispute.  For that reason, Defendant submits, consistent with his Motion for Summary Judgment, that Plaintiff has failed to prove a *prima facie* case concerning his non-selection, and that  Defendant is entitled to judgment as a matter of law concerning such issue.

## VIII.  There Exist No Material Disputed Facts with Respect to the Issue of Plaintiff's Receipt of an Admonishment Notice

Plaintiff concedes that he did not first contact an EEO counselor until approximately a year after he received the admonishment notice at issue.  In light of Plaintiff's lengthy EEO history and his penchant for filing discrimination complaints based on minimal provocation (e.g., such as for his being placed on ten hours of paid administrative leave as a cooling off period), his suggestion that he lacked a subjective basis to regard the notice of admonishment as a discriminatory/retaliatory action is difficult to accept.

---

[8] **See**, Plaintiff's statement of disputed facts nos. 5, 7, 14, and 23.

Defendant submits that Plaintiff had every reason, based on his past EEO practices, to determine in his own mind that the admonishment notice was motivated by a discriminatory/retaliatory animus, yet he, by his own admission, made no effort to contact an EEO counselor for almost an entire year after his receipt of such notice.  Defendant further submits that such delinquency should be fatal to this particular claim; that the doctrine of equitable tolling has no application in the instant circumstances; and that the court should dismiss this count of Plaintiff's complaint.[9]

## IX.    There Exist No Material Disputed Facts with Respect to the Issue of Ris' and Callahan's Refusal to Prematurely Remove the Letter of Reprimand

The undisputed facts concerning the letter of reprimand are as follows: the letter of reprimand was issued to Plaintiff in December 1998; EPA disciplinary guidance recognizes that a letter of reprimand is to remain in an employee's OPF for up to two years; in October 2000, ORD management advised Plaintiff of their intention to immediately remove the letter of reprimand from his OPF.  Through an apparent administrative error, undiscovered until October 2000, Plaintiff's letter of reprimand was never placed in his OPF.  In October 2000, Plaintiff was advised that his letter of reprimand was not in his OPF and apparently had never been filed there.

Plaintiff does not and cannot dispute such facts, thus his unsworn assertion that someone had given him a promise of premature removal is not a material fact.  For the record, EPA denies that, prior to October 2000, any ORD manager in Plaintiff's chain of command had advised him that the letter of reprimand would be removed from his OPF prior to the maximum two-year

---

[9] With respect to Plaintiff's admonishment notice, he has failed to exhaust his administrative remedies by not timely making contact with an EEO counselor.  In addition, he has failed to state a claim, insofar as the admonishment notice at issue cannot qualify under either a pure discrimination or retaliation standard as a cognizable adverse action.

14

period.  Defendant also denies that either Mr. Ris or Mr. Callahan expressly informed Plaintiff or

intimated to him that the decision to retain the letter of reprimand in his OPF was predicated on

his continued EEO activity, as opposed to the seriousness of his misconduct that warranted its

issuance as a threshold matter.

**X.     There Exist No Material Disputed Facts with Respect to the Issue of EPA's
        Disclosure of the Letter of Reprimand to the EEOC in Connection with Plaintiff's
        Class Action Litigation**

Defendant concedes that Mr. Ris made a copy of the letter of reprimand available to

Charles Starrs, the  Office of General Counsel (OGC) attorney who was defending Plaintiff's

class action complaint.  Defendant further concedes that Mr. Starrs, in his brief to the EEOC

challenging Plaintiff's class action law suit and his standing as the class agent, appended such

letter of reprimand.  Defendant would note, however, that Plaintiff's prior EEO history was

relevant background material with respect to Plaintiff's fitness to serve as a class agent, and that,

as such, Mr. Starrs had unfettered access to such history, which was being maintained by both the

Office of Civil Rights (OCR) and to some degree by Agency counsel's colleagues in OGC.[10]

Because Mr. Starrs' acquisition of the letter of reprimand was entirely appropriate, and

his disclosure of that disciplinary sanction to the EEOC was legitimate in the context of

defending Plaintiff's class action, Defendant submits that no Agency official may be

characterized as having perpetrated an adverse action against Plaintiff.  Absent such an adverse

_____

[10] At the same time that Plaintiff filed his class action suit, he had outstanding his letter of
reprimand complaint, which another OGC lawyer was defending.  Thus,
when Mr. Starrs acquired the letter of reprimand from Mr. Ris, he could have just as easily and
legally secured it through his OGC colleague or the OCR.

action, Plaintiff has failed to state a claim, and Defendant submits that this final piece of his

district court complaint should be dismissed with prejudice for that reason.

<u>Conclusion</u>

For the reasons stated above and in Defendant's Motion to Dismiss or, in the Alternative,

Motion for Summary Judgment, Defendant moves that Plaintiff's Complaint be dismissed with

prejudice and that summary judgment be entered for Defendant.


Respectfully submitted,

_____/s_/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
        Assistant United States Attorney


___/s/_____
ALEXANDER D. SHOAIBI,
Assistant United States Attorney
501 Third Street, N.W., Rm E-4218
Washington, D.C.  20530
(202) 514-7236